**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *Ex rel.* Michael J. Fisher and Brian Bullock, § <br> and Michael Fisher Individually, and Brian § <br> Bullock Individually, § <br> § <br>     Plaintiffs, § <br> § <br> vs. § <br> § <br> Ocwen Loan Servicing, LLC § <br> § <br>     Defendant. § | **Case No. 4:12-cv-543-ALM** <br><br> JURY TRIAL DEMANDED |

**RELATORS' RESPONSE TO NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES' OPPOSED MOTION FOR A PROTECTIVE ORDER**

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   ARGUMENT AND AUTHORITIES ................................................................................ 3

    A.   The New York state-law privilege is inapplicable in this federal question case. ... 3

        1.   New York recognition of the state banking privilege is not sufficient reason for federal court recognition in this FCA case. ............................... 4
        2.   The privilege is not intrinsically meritorious in a federal FCA case. .......... 6

    B.   The Court should not apply the discretionary federal bank examination privilege. ................................................................................................................ 11

    C.   NYDFS has waived any purported privilege. ....................................................... 12

    D.   The responsive documents are highly relevant to this case. ................................ 14

    E.   Ocwen has no standing for its broad assertion of privilege. ................................ 15

III.   CONCLUSION .................................................................................................................. 15

Relators Michael J. Fisher, Brian Bullock and Michael Fisher, Individually and Brian Bullock, Individually, ("Relators") file this response to the Opposed Motion for a Protective Order ("Motion") of the New York State Department of Financial Services ("NYSDFS") and respectfully show the Court as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

NYDFS hired compliance monitors (Boston Portfolio Advisors, Inc. and StoneTurn Group LLP, collectively "monitors") to audit Ocwen in 2012. The audit resulted in a 2014 Consent Order signed by NYDFS and Ocwen, in which Ocwen admitted numerous servicing violations, agreed to pay a $150,000,000 fine, and agreed that its founder and chairman William Erbey would resign.[1]

Relators served subpoenas requesting eight categories of documents from the monitors related to their audits of Ocwen.[2] The monitors filed motions to quash, resisting discovery on the basis of burdensomeness and work product privilege.[3] Ocwen filed a motion[4] seeking to prevent discovery based on the New York state bank examination privilege, the federal common law bank examination privilege, and Federal Rule of Evidence 408.[5] NYDFS was allowed to intervene "for the limited purpose of protecting its bank examination privilege codified under New York Banking Law § 36(10)."[6]

NYDFS seeks to prevent the monitors from producing documents purportedly subject to the New York state bank examination privilege, and in the alternative, the federal common law privilege. Regarding the New York state bank examination privilege, NYDFS (unlike Ocwen)

---

[1] 2014 New York Consent Order, attached hereto as Ex. A.
[2] Subpoenas to StoneTurn and Boston Portfolio, attached hereto as Exs. B, C.
[3] 15-mc-00014 (Dkt. 1); 15-mc-00013 (Dkt. 8). More detailed background material is included in Relators' responses to the monitors' motions (15-mc-00014 (Dkt. 10); 15-mc-00013 (Dkt. 10), and Ocwen's motion (Dkt. 128). The Court has set all three motions for hearing on June 4, 2015. (*See* Dkt. 151).
[4] Dkt. 116.
[5] It is noteworthy that NYDFS does not assert the purported Rule 408 privilege Ocwen asserts.
[6] Dkt. 153.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 1**

implicitly concedes that Federal Rule of Evidence 501 requires the application of federal privilege law in federal question cases, such as this one. (*See infra* **Part II(A))**. Despite this black letter rule, in rare cases a federal court in a nondiversity case can "adopt" a state law privilege for compelling policy reasons. But because of the countervailing, compelling interest in uncovering the truth in support of a federal FCA case seeking to redress fraud on the taxpayers, here NYDFS falls well short of meeting the very high threshold.

As a fallback position, NYDFS asserts the *federal* common law bank examination privilege, which no Fifth Circuit court has adopted. (*See infra* **Part II(B))**. Even when applied, the federal bank examination privilege is extremely narrow because it applies only to intragovernmental opinions and recommendations.[7] NYDFS's brief consistently conflates the federal and New York state privilege, even though they have far different scopes. Furthermore, the federal privilege is discretionary and requires an individualized balancing test that neither Ocwen nor NYDFS has attempted to undertake. As a practical matter, the monitors have not purported to possess any intragovernmental opinions and recommendations, which is likely why Ocwen's reply brief abandoned this privilege.

The New York and federal bank examination privileges should not apply. But if the Court finds that they apply, NYDFS (which alone has standing to raise the privileges) has waived them by disclosing the 2014 Consent Order and numerous other documents concerning the audit. (*See infra* **Part II(C))**.

As a further fallback position, NYDFS argues that the Court should "narrowly tailor" the allowable discovery because Relators seek irrelevant documents. (*See infra* **Part II(D))**. NYDFS's sole support for this argument is a misunderstanding of the FCA public disclosure bar,

---

[7] *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734, 2006 WL 2927161l, at *4 (E.D.N.Y. 2006).

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 2**

confusing the public disclosure standard with the standard for permissible discovery under the Federal Rules.

Finally, as Ocwen lacks standing to raise the privileges, its arguments should be disregarded. (*See infra* **Part II(E)**).

## II. ARGUMENT AND AUTHORITIES

**A.    The New York state-law privilege is inapplicable in this federal question case.**

As an initial matter, unlike Ocwen, NYDFS acknowledges that under Federal Rule of Evidence 501, federal privilege law applies in this federal question case. Because federal privilege law governs, NYDFS correctly concedes that it must meet the test in *American Civil Liberties Union v. Finch*,[8] to show the court must adopt the state privilege. NYDFS nonetheless fails to address the high threshold for justifying the adoption of a state privilege.[9] State law privileges should not typically be recognized in federal question cases because "[e]videntiary privileges in litigation are not favored."[10] Additionally, the Supreme Court instructs that "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for truth."[11]

As the Fifth Circuit has stated, "[t]hat the courts of a particular state would recognize a given privilege will *not often* of itself justify a federal court in applying that privilege."[12] Federal courts, thus, have declined to recognize numerous state privileges.[13]

---

[8] 638 F.2d 1336, 1343 (5th Cir. 1981).
[9] *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990).
[10] *Herbert v. Lando*, 441 U.S. 153, 175 (1979).
[11] *United States v. Nixon*, 418 U.S. 683, 710 (1974).
[12] *Am. Civil Liberties Union*, 638 F.2d 1336, 1343 (5th Cir. 1981) (emphasis added).
[13] *See, e.g., Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (declining to recognize psychiatrist-patient privilege provided by Georgia law); *United States v. One Parcel of Prop.*, 930 F.2d at 141 (holding that state law protecting disclosure of erased arrest records would not be recognized as federal privilege); *Coastal Fuels of P.R., Inc. v. Caribbean Petrol. Corp.*, 830 F. Supp. 80, 81 (D.P.R. 1993) (refusing to apply state law accountant-client privilege that had not been recognized by federal courts); *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 689–90 & 695 (E.D. Cal. 1993) (declining to recognize California physician-patient and medical peer review privileges).

---

"In *ACLU of Mississippi v. Finch*, the court formulated the policy-balancing test into two distinct analytical inquiries: First, does the fact that the courts of [a state] would recognize the privilege itself create good reason for respecting the privilege? Second, is the privilege intrinsically meritorious in the court's independent judgment?"[14] In this case, the answer to both questions is *no*.

1. **New York recognition of the state banking privilege is not sufficient reason for federal court recognition in this FCA case.**

Because federal questions play a predominant role in this federal FCA case, the first question must be answered in the negative. The Eastern District of Texas *Fairchild* court explains why "[t]he first question almost always is answered in the negative":

> That the courts of a particular state would recognize a given privilege will not often of itself justify a federal court in applying that privilege." *Id.* Courts should apply state privileges when there is no substantial cost to federal substantive policy, but *there is almost always such a cost*, as privileges hinder the "special federal interest in seeking the truth." *Id. When federal questions or issues play a predominant role in the litigation, the federal interest is very strong*. *Id.*[15]

The primary purpose of the FCA "is to indemnify the government—through its restitutionary penalty provisions—against losses caused by a defendant's fraud."[16] This compelling federal purpose is thwarted when defendants can hide behind a state privilege to shield the protection of relevant documents that would aid the government in recouping those funds. Thus, even more so than in most cases, question one must be answered in the negative in this FCA case.

NYDFS argues disrespecting the state privilege is unnecessary because Relators can obtain Ocwen's business records from Ocwen. This argument fails for several reasons. First, it ignores that the monitors also have numerous documents that Relators cannot obtain from other

---

[14] *Fairchild v. Liberty Indep. Sch. Dist.*, 466 F.Supp.2d 817, 821 (E.D. Tex. 2006).
[15] *Id.* (citing *Finch*, 638 F.2d at 1344) (emphasis added).
[16] *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304–05 (3d Cir. 2011) (citations omitted).

sources, including the monitors' reports and communications with Ocwen. These documents are indisputably highly relevant, because they show Ocwen's *knowledge* of its violations (and thus of its false statements, records, and certifications). *See, e.g.*, *Wultz v. Bank of China Ltd.*[17] In *Wultz*, the court noted that the "OCC might be the only external entity in a position to have put BOC on notice of problems with its AML/CTF practices. *There is no substitute for the requested non-factual portions of the OCC's Communications.*"[18] Ocwen's knowledge of its violations is an indispensable element of Relators' FCA claims and there might be no substitute for the communications with the monitors and the monitors' reports evidencing Ocwen's knowledge and admissions. Further, asserting the privilege as to Ocwen's business records is simply baseless. (*See infra* Part II(E)). Moreover, the documents are independently relevant because they form the basis for Ocwen's admission of culpability and its knowledge of violations.

NYDFS also fallaciously argues that the federal interest in this case is slight because "the substantive rule of decision is nominally federal but incorporates state law by reference," citing *Finch*.[19] But NYDFS provides no authority for the proposition that a federal FCA case is "nominally federal" for purposes of the *Finch* analysis. In fact, the federal interest is uniquely strong in an FCA case. Furthermore, NYDFS's assertion that "[w]hether Relators ultimately success in proving these alleged violations depends solely on New York State Law" is completely erroneous.[20] First, the FCA is a federal cause of action with other elements unrelated to New York state law, such as causation and knowledge. Second, Relators assert violations of numerous *federal* laws and regulations (*e.g.*, Dodd-Frank, TILA, HAMP, FHA),[21] in addition to

---

[17] No. 11 Civ. 1266(SAS), 2013 WL 1453258, at * (S.D.N.Y. Apr. 9, 2013) (noting that "the opinions, analysis, and deliberations communicated by the OCC to BOC are themselves relevant to the issue of scienter under the ATA").
[18] *Id.* (emphasis added).
[19] Mot. at 5.
[20] Mot. at 6.
[21] *See* Dkt. 59.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 5**

the laws and regulations of other states (*e.g.*, Texas, Massachusetts). Thus, applying New York's state privilege here would impede the compelling federal interest in seeking the truth as it pertains to violations of numerous federal and states laws, as well as to the ultimate questions of the falsity of Ocwen's certifications and their knowledge of wrongdoing.

Finally, NYDFS argues that the federal interest is diminished because the government has not intervened. Courts universally understand that relators stand in the shoes of the government, regardless of whether it has intervened.[22] In this case, the Department of Justice continues to actively monitor this case and retains the right to intervene in the future. In any case, the decision whether to adopt the privilege should not turn on whether the government has intervened, which would create a rule at odds with the statutory scheme allowing and encouraging relators to proceed on the government's behalf absent intervention.

## 2. The privilege is not intrinsically meritorious in a federal FCA case.

Regarding the second question, it "involves four salient conditions":

(1) whether communications originate in a confidence that they will not be disclosed, (2) whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties, (3) whether the relation is one which in the opinion of the community ought to be sedulously fostered, and (4) whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit thereby gained for the correct

---

[22] When relators file FCA claims, they prosecute the case *on behalf of the government*. *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 788 (citing 31 U.S.C. § 3730(b)(1), (d)(1)-(4)). Courts recognize that the FCA effectively *assigns* the government's claim to the *qui tam* relator, who may then sue based on the injury to the government. *See United States ex rel Thompson v. Columbia / HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1029 (S.D. Tex. 1998) (*citing United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993)). *Kelly* held that "the FCA effectively assigns the government's claims to qui tam plaintiffs . . . ." *Kelly*, 9 F. 3d 743, 748. It further explains that "[s]everal courts and commentators have embraced this assignment theory." *Id.* Further, the court was "unconcerned that the assignment of the government's claim is contingent on a *qui tam* plaintiff filing suit, that the *qui tam* plaintiff is only assigned part of the government's claim, and that the government retains the right to intervene." *Id.*

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 6**

disposal of litigation.[23] Importantly, in the Fifth Circuit (and as acknowledge by the Eastern District of Texas), "*all four conditions must be present* before a federal court will apply a state law evidentiary privilege."[24] In other words, these are not "four factors" to balance as NYDFS argues, but four *elements*, each of which must be met. In this federal FCA case, NYDFS fails to establish a single element, much less all four.

>  (a) The communications did not originate in confidence that they will not be disclosed in an FCA case

NYDFS fails to show any documents given to the monitors (much less Ocwen's business records), were given with the expectation that they would not be shared with the government in an FCA case. It is common knowledge that law enforcement agencies often share information and aid each other's investigations. As in *Fairchild*, "although defendants may have had some limited expectation of privacy, at best, they only had an expectation that that the tapes and their contents would not be released to the general public," *not from the United States*.[25]

NYDFSS cites the agreement between the monitors and Ocwen that information provided are subject to New York Banking Law § 36.10, but this agreement has no effect on the parties' reasonable expectations of disclosure in an FCA. First of all, parties cannot contractually create a privilege. The universe and scope of privileges is determined by the governing law (and in this case federal common law under FRE 501), and the parties cannot create or expand the scope of privileges. Thus, Ocwen could not have any reasonable expectation that the New York banking privilege would apply, particularly when *no federal court has ever adopted the New York State privilege in a federal question case*, much less in an FCA case. To illustrate, imagine that criminals

---

[23] *Id.* at 823.
[24] *Fairchild v. Liberty Indep. Sch. Dist.*, 466 F. Supp. 2d 817, 821 (E.D. Tex. 2006) (emphasis added) (discussing *ACLU of Mississippi v. Finch*, 638 F.2d 1336 (5th Cir. 1981)).
[25] 466 F.Supp.2d at 823.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 7**

perpetrating a bank fraud contractually committed that the documents consummating their scheme were confidential and not subject to any criminal or civil proceedings. Obviously such an agreement is not enforceable, does not affect the scope of any privilege, and cannot create any reasonable expectation of confidentiality. Thus, NYDFSS has failed to show that the first element is met, which is a sufficient basis for not applying the state privilege in this FCA case.

> **(b) Keeping documents from the federal government is not essential to the relationship between NYDFS and the regulated entities and would not harm the relationship**

Regarding the second and third elements, NYDFS has not shown confidentiality is necessary to the full and satisfactory maintenance of the relationship between regulated banks and NYDFS and that it would harm the relationship to require production. NYDFS grossly exaggerates the effect that not failing to adopt a new state privilege in a federal FCA case would have on future relationships between monitors and banks.

First, banks are required by law to cooperate with their regulators, which along with NYDFS's severe enforcement authority, is the real grounds for bank cooperation. The NYDFS has considerable leverage to seek documents from regulated entities through the monitors, as evidenced by the fact that NYDFS had the power to force Ocwen to pay $150,000,000 and force its chairman to resign from Ocwen and four other public companies. (Ex. A). Far from coming to regulators meekly with its hat in its hand, NYDFS wields compelling authority to institute fines, terminate employees, and shut down a business.[26]

---

[26] *See, e.g.*, Robert Anello, "A Small Barracuda in a Big Pond: New York's Department of Financial Services," Forbes.com (Feb. 26, 2015), available at http://www.forbes.com/sites/insider/2015/02/26/a-small-barracuda-in-a-big-pond-new-yorks-department-of-financial-services/ ("Throughout the past three years, NYDFS has extracted more than $3 billion in fines from global banks."); Press Release, "NYDFS Announces Barclays to Pay $2.4 Billion, Terminate Employees for Conspiring to Manipulate Spot FX Trading Market," Department of Financial Services (May 20, 2015), available at http://www.dfs.ny.gov/about/press/pr1505201.htm; Greg Farrell, "Standard Chartered Said to Agree to N.Y. Monitor Demand," Bloomberg Business (Aug. 11, 2012), available at

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 8**

Second, banks willing to take the risk of withholding relevant information are unlikely to be swayed by whether their communication with the examiner is privileged, as opposed to merely confidential. Third, protective orders, such as the one in this case, should be sufficient to protect the bank's legitimate interest in confidentiality.[27] Fourth, permitting banks to avoid discovery would create a perverse incentive for financial institutions to voluntarily submit documents to state regulators just to avoid discovery from the federal government, where the banks' risks are significantly greater.

To support the need for confidentially, NYDFS's relies primarily on cases applying the *federal common law privilege*, which is considerably narrower than the New York state privilege, and thus, causes a less severe harm to the federal interest. (*See infra* Part II(B)). For example, NYDFS relies extensively on *Shirk v. Fifth Third Bancorp*,[28] which is distinguishable because it applies the federal privilege, and on other grounds. First, the court found the documents sought "were well outside the time period of the alleged malfeasance at issue."[29] The court reasoned that the lack of relevance "militate[d] heavily against" the production of the documents.[30] Far from irrelevant, here the documents are highly important, including because they can show Ocwen's violations, knowledge, and motive. Second, *Fifth Third* involved an ERISA action "[b]etween private litigants," which does not implicate the serious policy concerns of impeding a case to recover for a monumental fraud against the federal government.[31] In short, NYDFS's citation to inapplicable case law grossly exaggerates the realities of the effect that

---

http://www.bloomberg.com/news/articles/2012-08-11/standard-chartered-said-to-agree-to-n-y-monitor-demand
("The New York regulator has grounds to shut [down] Standard Chartered in the state even if he accepts the firm's argument that it illegally laundered only a fraction of the $250 billion he claims. As the state's top banking regulator, Lawsky has power to act in his discretion against any financial institution he deems untrustworthy, according to the charter of his year-old department.").
[27] *See* Dkt. No. 98.
[28] 2008 WL 2661955 (S.D. Ohio July 2, 2008).
[29] *Id.* at *2.
[30] *Id.*
[31] *Id.*

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 9**

continuing the status quo (*i.e.*, failing to adopt a new state privilege for FCA cases) would have on its relationship with regulated entities.

      **(c)**     **The relationship between NYDFS and banks should not be fostered at the expense of a case seeking to recover for massive fraud on the government**

Regarding the fourth condition, even if the relationship between NYDFS and banks should be "sedulously fostered," it should not come at the expense of a federal FCA action seeking to recover for a massive fraud on the government. In FCA cases the government and the public have a substantial interest in obtaining the discovery of documents that are also the subject of state investigations. The contrary rule would allow and encourage states to enact privilege rules that benefit only the state government, at the expense of other state governments and the federal government. In this case, the State of New York has already recovered $150,000,000 for Ocwen's violations as to New York laws, but the federal government has not yet been compensated for the massive harms to its fisc, and on behalf of the borrowers harmed throughout the United States. Banks had no reasonable basis in the past to think their audit documents could not be turned over the government in an FCA case, and it has not hampered NYDFS in the least, as demonstrated by NYDFS's stellar track-record with the use of monitors.[32] There is no need to disturb the status quo by becoming the first federal court to adopt the New York state banking privilege in an FCA case.

NYDFS fallaciously argues that requiring production of the documents will require they be turned over to "any class-action" or "derivative" suit plaintiff. *Id.* This argument fails to recognize the distinction between private cases for private wrongs and the government's FCA

---

[32] *See* Mot. at 10.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 10**

case to recover fraudulently obtained taxpayer funds. In fact, even the *Fifth Third* case NYDFS cites recognizes the significance of the fact the government was not involved in that case.[33]

NYDFS argues that Relators will suffer no meaningful burden if this court adopts the New York state privilege. But the burden in fact would be substantial. First, the monitors have several categories of highly relevant documents that Relators are unlikely to obtain from other sources, including documents relevant to Ocwen's violations, knowledge, and motive. Second, applying the privilege would cause Relators to undergo significant, unnecessary expenses. Furthermore, applying the privilege would impede the search for the truth in future FCA cases.[34]

Thus, both questions should be answered in the negative, and not a single of the four conditions is satisfied, all four of which NYDFS was required to satisfy. In short, NYDFS has fallen well short of meeting its high burden of establishing the necessity of adopting a state privilege in a federal question case.

**B.     The Court should not apply the discretionary federal bank examination privilege.**

NYDFS argues in the alternative, that the federal common law bank examination privilege should apply. As an initial matter, this Court's allowed NYDFS to intervene "for the limited purpose of protecting its bank examination privilege codified under New York Banking Law § 36(10)."[35] Thus, NYDFS should not be permitted to raise this privilege.

Assuming, *arguendo*, that the Court allows NYDFDS to assert the federal privilege, NYDFS provides no authority for applying this privilege in the Fifth Circuit, and it should not be applied here because of the strong interest in allowing the full and fair prosecution of a federal FCA case. Furthermore, as the *Rouson* case that Ocwen cites to support the privilege states,

---

[33] *Fifth Third*, 2008 WL 2661955, at * 2 (noting "the role of the government in the litigation" is one of the relevant factors).
[34] NYDFDS also argues in this section that the evidence is unnecessary because Relators are original sources of the information. Relators explain the fallacy of this argument in Part II(D).
[35] Dkt. 153.

"[t]he privilege protects *only expressions of opinion or recommendations in **intragovernmental** documents*; it does not protect purely factual material."[36] Thus, NYDFS can provide no support for applying this privilege to every single document that Ocwen provided to the monitors, much less to the business records created in the ordinary course of Ocwen's daily business. If this privilege applies to any documents, it is only to NYDFS internal opinions and recommendations or those of its agent, the Monitor, and only to ***intragovernmental*** documents.

Furthermore, "[e]ven with respect to opinions and recommendations, the privilege is not absolute: *The privilege is a discretionary one that depends upon ad hoc considerations of competing policy claims*."[37] Thus, if it turns out the monitors possess any NYDFS opinions and recommendations, NYDFS has not met its burden of showing that the very narrow bank examination privilege should apply, particularly in light of the compelling federal interest in this FCA case. If the Court applies the privilege and the monitors possess any purportedly privileged documents, they should note their existence in a privilege log when they produce the other responsive documents.

### C.   NYDFS has waived any purported privilege.

Assuming, *arguendo*, that any privilege asserted by NYDFS is valid and applicable, NYDFS has waived the privilege by extensive disclosure of subject-matter-related documents.

NYDFS published on its internet page the detailed consent decree entered between itself and Ocwen in December of 2014, containing detailed factual stipulations and agreements by Ocwen regarding wrongful servicing practices, which violates not only New York law but also laws of other states and federal laws and regulations.[38] NYDFS also issued a press release with a

---

[36] *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734, 2006 WL 2927161l, at *4 (E.D.N.Y. 2006) (emphasis added).
[37] *Id.*, at *5 (emphasis added).
[38] http://www.dfs.ny.gov/about/ea/ea141222.pdf.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 12**

link to the agreement:[39] Additionally, NYDFS issued a press release in 2012 regarding a consent order pursuant to which a previous monitorship was implemented as a result of Ocwen's violation of still another, 2011, consent order.[40] Finally, NYDFS published on the internet numerous regulatory letters detailing Ocwen's violations leading up to the 2014 consent order.[41]

It is well established that disclosure of privileged materials to third parties waives relevant privileges as to, at a minimum, the disclosed material.[42] Moreover, courts often hold that such disclosure waives privilege as to the *entire subject matter* of the disclosed information.[43]

> It bears emphasis that these cases do not require the discovering party to demonstrate prejudice, such as, for example, proof that the privilege holder has disclosed only favorable materials. They also do not require the discovering party to demonstrate that the privilege holder is putting the privileged communications in issue in the litigation. *It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others*..[44]

While it appears no federal court has addressed the question of waiver by disclosure of material protected by a state-law or the federal common-law bank examination privilege, the general waiver principles should apply here, particularly because the asserted privileges already

---

[39] http://www.dfs.ny.gov/about/press/pr1412221.htm.
[40] http://www.dfs.ny.gov/about/press/pr1212051.htm;http://www.dfs.ny.gov/about/ea/ea121205.pdf (2012 consent order); http://www.dfs.ny.gov/insurance/press/2011/p1109011.htm (press release regarding 2011 agreement); http://www.dfs.ny.gov/about/letters/clocwen.pdf (2011 consent order).
[41] See http://www.dfs.ny.gov/about/press2014/pr140804-ocwen-letter.pdf, August 4, 2014 letter to Ocwen General Counsel Timothy Hayes from Benjamin Lawsky, NYDFS Superintendent; http://www.dfs.ny.gov/about/press2014/pr141021-ltr.pdf, October 21, 2014 letter to Hayes from Lawsky; (all last accessed 05/23/2014); April 21, 2014 letter to Hayes from Lawsky, attached hereto as Ex. D (discussing Mr. Erbey's conflicts of interest) ;February 26, 2014 letter to Hayes from Lawsky, attached hereto as Ex. E (discussing same).
[42] *First South Bank v. Fifth Third Bank*, *N.A.*, 2013 U.S. Dist. LEXIS 62238 (D.S.C. May 1, 2013) ("When a party claiming the attorney-client privilege 'voluntarily disclose[s] confidential information on a given subject' to a third party, the disclosing party generally waives any attorney-client privilege that would attach to the information.") (citing *Hanson v. U.S. Int'l Dev.*, 372 F.3d 286, 293-94 (4th Cir. 2004)).
[43] *Anaya v. CBS Broad., Inc*., 2007 U.S. Dist. LEXIS 55164 (D.N.M. Apr. 30, 2007) (citing cases); *In re Grand Jury Proceedings*, 219 F.3d 175, 184 (2d Cir. 2000); *Robbins & Myers, Inc. v. J.M. Huber Cor*p., 274 F.R.D. 63, 95-96 (W.D.N.Y. 2011) (citing cases); *Bowne of New York City, Inc. v. AmBase Corporation*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) (citing cases).
[44] *Bowne, Inc. v. AmBase Corp*., 150 F.R.D. 465, 484-485 (S.D.N.Y. 1993) (citations omitted) (footnotes omitted).

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 13**

stand on tenuous ground. For example, the New York state privilege has never been applied in an FCA case, and the Federal bank examination privilege is a "discretionary one that depends upon ad hoc considerations of competing policy claims."[45] Thus, if the Court finds any privileges applies, it should find NYDFS has waived the privilege with respect to the subject matter of its audit of Ocwen. Moreover, NYDFS's practice of disclosing similar documents in connection with its examinations of other entities belies its purported concern about disclosure chilling its communications with regulated entities.

**D.     The responsive documents are highly relevant to this case.**

In arguing for the "narrow tailoring" of any materials that the Court requires the monitors to produce, NYDFS erroneously argues that "Relators acknowledge that the Monitor's work is not entirely relevant to their allegation."[46] In particular, NYDFS point to Relators' argument that the Consent Order does "not overlap with all of the transactions or allegations in the TAC and are therefore not public disclosures."[47]

One major fallacy of NYDFD's argument is that Relators are not seeking the disclosure of the already public 2014 Consent Order,[48] but of documents in the monitors' possession relevant to its audit. Merely because the Consent Order is insufficient to meet the high standard of qualifying as a public disclosure (because it does not establish each "essential element" of Relators' claims),[49] does not mean the monitors do not possess relevant documents pursuant to its underlying audit that culminated in the Order. As previously explained, these documents are

---

[45] *Eicoff*, 2006 WL 2927161l, at *4.
[46] Mot. at 13.
[47] *Id*.
[48] It should also be noted the Consent Order is not a qualifying public disclosure because *the federal government is not a party to the agreement*. 31 U.S.C. § 3730(e)(3).
[49] *See, e.g., United States ex rel. Springfield Term. Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) (explaining that disclosure does not qualify unless it discloses each "essential element"); *United States ex. rel. Wright v. Agip Petroleum Co.*, 5:03-CV-264-DF, 2005 U.S. Dist. LEXIS 16270, at *21 (E.D. Tex. Jan. 4, 2005) (following the widely approved *Quinn* rule).

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 14**

highly relevant, to highlight Ocwen's violations, its knowledge of those violations, and its motive. And nothing in Relators' arguments concedes the audit is irrelevant to this litigation.[50] To the contrary, all the responsive documents the monitors possess are highly relevant to this case, for all the reasons previously discussed.

### E. Ocwen has no standing for its broad assertion of privilege.

"The bank examination privilege belongs solely to the . . . banking regulatory entities, and may not be asserted by third parties on behalf of the banking agencies."[51] Thus, Ocwen has *no* standing to assert the New York State privilege or the much narrower federal common law privilege.

The privileges also do not attach to documents Ocwen created in the ordinary course of its business, as at least Ocwen asserts they do. With respect to the New York state privilege, even if it applies, it only protects "all reports of examinations and investigations, correspondence and memorandum concerning or arising out of such examination and investigation."[52] Thus, even if the court holds one of the privileges applies in this FCA case, the Court should order the production of Ocwen's business records and purely factual documents.[53]

### III. CONCLUSION

For the aforementioned reasons, Relators respectfully request that the Court deny NYDFS's motion.

---

[50] Dkt. 84, at 5.
[51] *Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997).
[52] NY Banking Law § 36(10); (*see also* Ocwen's Mot. Dkt. at 6). Similarly, the federal common law privilege does not protect "purely factual material." *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734, 2006 WL 2927161l, at *4 (E.D.N.Y. 2006) (emphasis added).
[53] Relators agree with NYDFS that the privilege issues for any purportedly privileged documents have not been properly presented to the Court because the monitors have not served any privilege logs. But since the issue is before the Court and ripe for decision, it should rule that the New York state privilege does not apply in this federal question case. If the Court upholds the applicability of the very narrow federal common law privilege, the monitors should produce a privilege log to Relators and the NYDFS concurrently with producing the responsive documents.

**RELATORS' RESPONSE TO NYDFS MOTION FOR PROTECTIVE ORDER – PAGE 15**

Dated: May 25, 2015          Respectfully submitted,

               By:    */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

William T. "Tommy" Jacks
Texas Bar No. 10452000
jacks@fr.com
David S. Morris
Texas Bar No. 24032877
dmorris@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

Samuel L. Boyd
sboyd@boydfirm.com
Texas State Bar No. 02777500
Catherine C. Jobe
cjobe@boydfirm.com
Texas State Bar No. 10668280
**BOYD & ASSOCIATES, PC**
6440 North Central Expressway
Suite 600
Dallas, Texas 75206-4101
(214) 696-2300 (Telephone)
(214) 363-6856 (Facsimile)

Roger D. Sanders<br>
Texas State Bar No. 17604700<br>
roger.sanders@somlaw.net<br>
J. Michael Young<br>
Texas State Bar No. 00786465<br>
michael.young@somlaw.net<br>
**SANDERS, O'HANLONG, MOTLEY & YOUNG, PLLC**<br>
III South Travis<br>
Sherman, Texas 75090<br>
(903) 892-9133 (Telephone)<br>
(903) 892-4300 (Facsimile)

**Counsel for Relators/*Qui Tam* Plaintiffs**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 25, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer