IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *Ex rel.* Michael J. Fisher, Brian Bullock and Michael Fisher, Individually and Brian Bullock, Individually,<br><br>         Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>         Defendant. | Civil Action No. 4:12-cv-00543-ALM |

**DECLARATION OF PETER DEAN IN SUPPORT OF THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES' MOTION FOR A PROTECTIVE ORDER**

  I, Peter Dean, hereby declare as follows:

  1. I am General Counsel for Banking at the New York State Department of Financial Services.

  2. Relators seek discovery from the Monitor in support of the allegations alleged in this action. A copy of Relators' Fourth Amended Complaint is attached hereto as Exhibit A.

  3. Setting aside allegations of violations of the laws of other states, Relators' Fourth Amended Complaint alleges that Ocwen violated various Federal Housing Administration loss mitigation requirements, Consumer Financial Protection Bureau single point of contact requirements, Real Estate Settlements Practices Act, the Truth In Lending Act, and Regulation Z. Moreover, Relators alleged violations of 3 NYCRR § 419.11 — part of the "Servicing Mortgage Loans: Business Conduct Rules" regulations

promulgated by the Department in 2010. Regarding the violations of the Department's regulations, Relators allege that Ocwen failed to provide modifications that were "affordable and sustainable" and to accurately disclose the costs and risks associated with these modifications. Specifically, Relators allege that:

> Based on the evidence directly witnessed by Relators, the Servicer did not adhere to these guidelines and, instead, provided modifications that were not affordable or sustainable, resulting in many borrower failures to perform the terms and conditions of the modified note. Thus, Ocwen's initial and annual SPA certifications/representations, that it was "in compliance with all applicable Federal, state and local laws, regulations…requirements…and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices…" were **knowingly false**. These certifications were express conditions of payment and material to the government's decision to make HAMP incentive payments.

Exhibit A at ¶ 177.

4. Relators further describe Ocwen's alleged violations of New York law as follows:

> OLS did not act in good faith, however, when it provided terms that were not conducive to the borrower avoiding foreclosure and saving the home on a long term basis. Similarly, the Servicer's pervasive **failures**, upon information and belief, to provide the mandated, written disclosures clearly disclosing the "**material terms, costs and risks**," constituted the second major prong for New York modification violations. *See* 3 NYCRR § 419.11(d). These New York state law violations, again, **rendered knowingly false** Ocwen's initial and annual SPA certifications/representations that it was "in compliance with all applicable Federal, state and local laws, regulations…requirements…and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices…." **These false certifications/representations** fraudulently induced the U.S. to approve the SPA and purchase the Financial Instrument, and each was a false statement or record which OLS used to obtain huge incentive payments each year thereafter, when OLS falsely re-certified legal compliance with federal and state laws to Fannie Mae.

Exhibit A at ¶ 179.

2

5. Thereafter Relators describe two loans on New York properties that purport to evidence these violations of law.

6. The focus of the Monitors review is substantially different from the allegations contained in Relators' complaint. The Monitor's review identified a number of issues that led the Department and Ocwen to enter into a second consent order dated December 19, 2014 ("Second Consent Order"). A copy of the Second Consent Order is attached hereto as Exhibit B. The Second Consent Order explained the issues with Ocwen's servicing practices identified by the Monitor:

> In the course of the Compliance Monitor's review, it identified numerous and significant violations of the 2011 Agreement, as well as New York State laws and regulations…. For example, a limited review by the Compliance Monitor of 478 New York loans that Ocwen had foreclosed upon revealed 1,358 violations of Ocwen's legal obligations, or about three violations per foreclosed loan. These violations included:
>
> - failing to confirm that it had the right to foreclose before initiating foreclosure proceedings;
> - failing to ensure that its statements to the court in foreclosure proceedings were correct;
> - pursuing foreclosure even while modification applications were pending ("dual tracking");
> - failing to maintain records confirming that it is not pursuing foreclosure of servicemembers on active duty; and
> - failing to assign a designated customer care representative.

Exhibit B at ¶¶ 11-12.

7. In addition, the Monitor identified issues involving Ocwen's use of legacy information technology systems and conflicts of interest between Ocwen and its related parties. See Exhibit B at ¶¶ 14-19 and 20-23 respectively.

8. The Monitor did not analyze Ocwen's compliance with any law alleged in the Complaint except for 3 NYCRR § 419.11. As provided in the overview in the Second Consent Order set forth above, the issue the Monitor identified with 419.11 involved

3

problems with the foreclosure process, not whether Ocwen offered affordable and sustainable loans.

9. The Monitor looked at Ocwen's assignment of a single point of contact, "In-Flight Modifications" and dual tracking, for compliance with a 2011 agreement between Ocwen and the Department. A copy of the 2011 servicing agreement is attached hereto as Exhibit C. The standards in the 2011 agreement are different from the CFPB regulations cited by Relators, and the Monitor's analysis does not overlap with Relators' allegations.

10. For example, the Monitor's review of Ocwen's use of SPOCs focused on whether Ocwen provided borrowers with the name and contact information for their assigned SPOC in accordance with the timeframes set forth in the 2011 agreement. See Exhibit C at ¶ 19. These timeframes are different from those set forth in the CFPB's regulations. In fact, the relevant CFPB regulation was promulgated after the Monitor developed its tests.

11. The only other analysis performed by the Monitor that could arguably relate to the allegations in the complaint involves Ocwen's loan modification algorithm. The Monitor did not, however, analyze whether Ocwen's model was designed, provided with inputs, or generated proposed loan modifications that were affordable and sustainable. Instead, the Monitor reviewed Ocwen's loan modification program to understand the components of the model – not whether it generated modifications that were affordable and sustainable.

12. Otherwise, the Monitor may have received Ocwen business records that relate to Relators' allegations, or identified an issue similar to one alleged in the

complaint – such as a borrower being required to submit documents over and over again – but such relevant material, particularly in the core examination materials, are minimal and what information would be there all came from Ocwen.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States, as provided in 28 U.S.C. § 1746.

Executed on this 29th day of May, 2015.

/s/ Peter Dean
Peter Dean

5