# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel*. Michael J. Fisher, Brian Bullock and | § | |
| Michael Fisher, Individually and Brian | § | |
| Bullock, Individually, | § | |
| | § | **CASE NO. 4:12-CV-543-ALM** |
| Plaintiffs, | § | |
| | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| Ocwen Loan Servicing, LLC, | § | |
| | § | |
| Defendant. | § | |

## RELATORS' EMERGENCY MOTION TO COMPEL 30(b)(6) TESTIMONY AND THE PREDICATE DOCUMENT PRODUCTION

Dated:  June 25, 2015

By*: /s/ Samuel L. Boyd*
Samuel L. Boyd
sboyd@boydfirm.com
Texas SBN: 02777500
Catherine C. Jobe
Texas SBN: 10668280
**BOYD & ASSOCIATES**
6440 North Central Expressway, Suite 600
Dallas, Texas 75206-4101
Tel (214) 696-2300
Fax (214) 363-6856

By: */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
txm@fr.com
Texas Bar No. 13922550
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile*)*

Respectfully submitted:

William T. "Tommy" Jacks
jacks@fr.com
Texas Bar No. 10452000
**FISH & RICHARDSON P.C.**
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

*Counsel for Qui Tam Plaintiffs/Relators*

By: */s/Roger D. Sanders*
Roger D. Sanders
TX SBN 17604700
J. Michael Young
TX SBN 00786465
Sanders, O'Hanlon, Motley & Young, PLLC
III South Travis
Sherman, TX 75090
(903) 892-9133 (Tel.)
(903 892-4300 (Fax)
**Local Counsel for Relators**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. SUMMARY OF REQUESTED RELIEF ............................................................................. 3

III. BACKGROUND .................................................................................................................. 3

    A. Relators Served Five 30(b)(6) Deposition Notices. .................................................. 3

    B. Ocwen's Document Production Delay ....................................................................... 4

    C. Ocwen Refuses to Proffer Witnesses for Any Topics. ............................................... 6

IV. ARGUMENT AND AUTHORITIES ................................................................................... 7

    A. The Deposition Notices Seek Highly Relevant Information and Are Reasonably Tailored. ........................................................................................................ 7

    B. The Deposition Notices are Procedurally Proper. .................................................... 10

    C. Ocwen's Delay Jeopardizes the Court's Schedule. .................................................. 10

V. CONCLUSION AND PRAYER FOR RELIEF ................................................................. 15

Relators Michael J. Fisher and Brian Bullock ("Relators") file this Emergency Motion to Compel 30(b)(6) testimony and the production of predicate documents, and respectfully show the Court as follows:

## I. INTRODUCTION

On behalf of the United States government, this lawsuit seeks to recoup the nearly two billion dollars[1] the government has paid as a result of Ocwen's misrepresentations related to government programs designed to help struggling homeowners, including the Home Affordable Modification Program ("HAMP"). To expose the fraud, Relators seek additional evidence of Ocwen's violations of state and federal laws and regulations meant to protect borrowers from predatory lenders. Because Ocwen has completed over 550,000 loan modifications since 2008 and more HAMP-sponsored modifications than any other servicer,[2] Ocwen's diverse violations generate voluminous relevant documents. It is also necessary for Ocwen witnesses to provide testimony on the company's behalf concerning Ocwen's operations, policies, the resulting violations, and related issues, including testimony regarding the documents that evidence the violations.

Against the backdrop of this case of massive significance to U.S. taxpayers and homeowners, Ocwen has responded with consistent delay and resistance at every step. Relators served four 30(b)(6) deposition notices (Relators' Second through Fifth notices) covering 66 topics, and Ocwen has refused to provide witnesses for a single topic. Ocwen has provided two (invalid) reasons for failing to provide a witness.

---

[1] *See* Treasury HAMP report, attached as Ex. E, at 52.
[2] *See* Ocwen's 2015 10-K, attached as Ex. F. Ocwen's SEC filings indicate Ocwen has completed more than 559,000 loan modifications since January 2008 and Ocwen has completed 20% of all HAMP-sponsored modifications, 45% more than the next highest servicer.

**RELATORS' EMERGENCY MOTION TO COMPEL – PAGE 1**

First, Ocwen argues (without discussing any specific topics) that the "sheer number of topics" is improper. The topics in fact all seek information central to this case, including Ocwen's modification procedures (Relators' Second Notice), certifications of compliance to HAMP (Relators' Third Notice), violations (Relators' Fourth Notice), and financials (Relators' Fifth Notice). The notice concerning violations includes 34 topics, a number which is consistent with Ocwen's broad and diverse illegal modification practices, as detailed in Relators' complaint.

Second, Ocwen argues that the notices are technically deficient because, in addition to a date certain, the notices state that the depositions would need to be postponed if Ocwen did not substantially complete its document production. To date, over five months after Relators served their initial document requests on January 15, Ocwen has served only 14 (woefully deficient) sample loan files and approximately 707 internal "business documents" (*i.e.*, everything other than loan files), in addition to some of Relator Bullock's emails. Ocwen has millions of relevant documents, and trickling them out in tens and hundreds at a time does not comport with this Court's schedule, this District's discovery practice or with modern discovery protocol. Ocwen must not be allowed to hide the ball.[3]

As a predicate to the 30(b)(6) depositions, Relators request that the Court order Ocwen to substantially complete the production of its business documents (*i.e.*, the responsive documents except loan files; Relators intend to file a separate motion to compel regarding the loan files) within 10 days of the Court's order. Next, Relators request that the Court order Ocwen to

---

[3] As discussed below (*infra* Part IV(C)), Ocwen's delay in this case conforms to its resistance to the similar legitimate discovery efforts of California regulators. Ocwen repeatedly failed to comply with California's requests for loan servicing documents, resulting in a $2,500,000 fine and the loss of Ocwen's right to take new California customers.

**RELATORS' EMERGENCY MOTION TO COMPEL** <span style="float:right">Page 2</span>

produce witnesses for the noticed 30(b)(6) topics, between 45 and 60 days after completion of the production (to allow Relators a reasonable time for review and analysis of the documents).

## II. SUMMARY OF REQUESTED RELIEF

For the reasons explained below, Relators respectfully request that the Court order the following:

(1)  Ocwen must complete its production of business documents (all responsive documents except loan files) by 10 days from the Court's Order; and
(2)  Ocwen must provide dates for the requested 30(b)(6) depositions between 45 and 60 days of the Court's Order.

An alternative to (1) that this Court may wish to consider so that delay is minimized and this case can move more efficiently through discovery, is to enter an order requiring all parties to simply produce all documents reasonably bearing on a claim or defense by a date certain (*e.g.*, twenty days form the date of the order). Such an order would expedite production of information, eliminate the objections process and move this case along. As the Court is well aware, some courts within this judicial district utilize such a disclosure process to expedite discovery and eliminate delay and for many years under the Civil Justice Expense and Delay Reduction Plan, such a disclosure process was indeed the rule for the district as a whole. Given the time constraints in this case and the delay to date, the Court would be well within its discretion to enter such an order to put this case back on track.

## III. BACKGROUND

### A. Relators Served Five 30(b)(6) Deposition Notices.

In March 2015, Relators served five 30(b)(6) deposition notices. The first notice focuses on Ocwen's electronic systems for storing loan modification files. After an informal call with an

Ocwen representative, Relators are not pressing the first notice at this time.[4] The subsequent four notices, each served on March 24, 2015 are the subject of this motion and generally cover the topics summarized below:

| 30(b)(6) Notice | Summary of Topics | # of Topics | Topics with subparts |
|---|---|---|---|
| Second Notice[5] | (1) Corporate and organizational structure; (2) Loan modification processes, policies, procedures, and compliance responsibilities; (3) Hiring, firing, training, and incentives for loan modification employees; and (4) Outsourcing loan modification functions | 14 | 2 |
| Third Notice[6] | (1) Ocwen's entry into HAMP program (2) Representations and certifications in Servicer Participation Agreement and related compliance responsibilities (3) Management knowledge of violations and Ocwen's responses to reported violations; and (4) Information regarding Relators. | 9 | 0 |
| Fourth Notice[7] | (1) Policies, procedures, and practices related to alleged violations; (2) Audits, investigations, and reports regarding alleged violations; (3) Communications with New York or California regulators regarding alleged violations; and (4) Fees charged to borrowers by entities with conflicts of interest as found by New York regulators | 34 | 7 |
| Fifth Notice[8] | (1) Financial figures and reporting regarding HAMP program and other federal program modifications (2) Policies used to increase HAMP revenue; and (3) Valuations of loan portfolios | 9 | 0 |

### B. Ocwen's Document Production Delay

Ocwen's delay in producing documents is closely tied to the timing of the requested depositions. Although Relators served comprehensive discovery requests on January 15, 2015

---

[4] The purpose of the first notice was in part to understand Ocwen's data systems as a way to facilitate additional discovery requests. It is possible that the other depositions and discovery will obviate the need for this deposition. Relators are not pressing for it at this time, but reserve the right to do so if the other discovery is insufficient.
[5] Relators' Second 30(b)(6) Notice, attached as Ex. A.
[6] Relators' Third 30(b)(6) Notice, attached as Ex. B.
[7] Relators' Fourth 30(b)(6) Notice, attached as Ex. C.
[8] Relators' Fifth 30(b)(6) Notice, attached as Ex. D.

and February 15, 2015, by the time of the service of the Rule 30(b)(6) notices on March 24, 2015, Ocwen had produced only approximately 707 business documents and to date that remains the extent of business documents produced.[9] All but 14 of Ocwen's hundreds of thousands of loan files, critical to Relators' analyses, are being withheld for no justifiable reason. Relators' repeated requests for smaller samplings to *jump start the process* have fallen on deaf ear. For example, all of Boston Portfolio's examined files, requested by Relators, continue to be withheld by Ocwen.

As a result, Relators noticed the depositions for April 21-24, but also noted that "if Ocwen has not made a substantial production of documents pursuant to Relators' First and Second Requests for Production by March 27, Relators will need 30 days from the production of documents prior to the deposition." Defendant produced no additional documents by March 27.

More than five (5) months after the first request for production, Ocwen has produced just over 700 business documents, less than 1% of estimated responsive documents, and has withheld numerous categories of essential relevant documents. To illustrate, as of the date of this motion, Ocwen has produced almost no documents that would relate to the alleged violations, including:

(1) No internal audits, reports, or metrics tracking potential violations;

(2) No emails[10] or other communications concerning potential violations or compliance issues; and

(3) No business or strategic plans.

Having these documents and adequate time to review them is a predicate to taking meaningful 30(b)(6) depositions. Relators also need these documents before they can conduct

---

[9] Walker Aff., attached as Ex. G, ¶¶ 2–3. Ocwen also produced 14 loan files consisting of 471 scanned documents (a format inconsistent with the Protective Order), a so-called "database schema," numerous emails from Relator Bullock, and some emails from former chairman William Erbey. *Id.* ¶3.

[10] The only potential exceptions are the possibly relevant emails from or to Relator Bullock recently produced by Defendant.

additional, necessary depositions, including depositions of current and former Ocwen employees that can expound on the produced documents. Relators' experts also need time to review and analyze the produced documents, which is a time-consuming and complex task.

At the June 4, 2015 hearing, Ocwen promised the Court that in two weeks it would have produced substantially more documents. As of the filing of this motion, Ocwen's only additional production is (1) the 14 loan files that are themselves riddled with problems reflecting a woefully deficient sample production, (2) a database schema, (3) a sampling of William C. Erbey's emails and, (4) Relator Bullock's (one employee's) emails.[11]

C.   **Ocwen Refuses to Proffer Witnesses for Any Topics.**

The parties conducted a meet and confer call regarding the deposition notices on April 20. On the call, Ocwen's counsel argued that the notices were improper because of the "sheer number of requests" and because the dates were contingent upon a substantial document production.[12] Relators' counsel invited Ocwen's counsel to explain what specific topics they thought were overbroad, and Ocwen refused to provide specifics. Ocwen's counsel promised to follow up with a "more detailed response" to the notices by April 29. Ocwen did not provide a more detailed response by that date, but sent a letter on May 8, 2015, addressing the 30(b)(6) notices,[13] along with other outstanding discovery issues raised by Relators' April 29 letter.[14] Ocwen's May 8 letter reiterates its objections to the breadth of topics and the contingent dates.

---

[11] Relators' January 15 Requests for Production requested the loan files provided to the New York monitors and the loan files from give specified Texas counties. (Relators' First RFP, attached as Ex. H, reqs. 64, 67). After it became clear Ocwen would not produce all the requested loan files, on April 29 Relators requested a very small sample of loan files so that the parties could agree on a format for producing loan files and attempt to negotiate a larger production. Ocwen sent a list of loan numbers on May 15, requesting that Relators select 10-12 specific loan numbers for the sample. After consulting with its experts, Relators provided a list of 14 representative loan files from the list on May 20, 2015. Ocwen produced the 14 loan files on June 11, 2015 in the form of 471 scanned documents. The parties are currently discussing deficiencies in that production and Relators have requested more complete loan files. Relators intend to file a separate motion to compel regarding the loan files.
[12] Ex. G, Walker Decl., ¶ 5.
[13] May 8 Letter from Twiford to Walker, attached as Ex. I.
[14] April 29 Letter from Walker to Twiford, attached as Ex. J.

The letter cites several cases holding that noticed deposition topics were overbroad, but fails to discuss any specific topics or provide a basis as to why any individual topic is overbroad.[15]

On May 28, 2015, Relators counsel called the Court to schedule a telephonic conference to discuss the notices, pursuant to the Court's scheduling order.[16] At that time, the Court instructed Relators file a motion to compel. On the same day, Relators provided a letter to Ocwen explaining why the noticed topics are not overbroad and that the cases Ocwen provided are inapposite to the present case.[17] On June 2, Ocwen's counsel sent a letter indicating "Ocwen and Homeward stand on their previous statements made in prior correspondences in response" regarding the 30(b)(6) noticed topics.[18]

## IV. ARGUMENT AND AUTHORITIES

### A. The Deposition Notices Seek Highly Relevant Information and Are Reasonably Tailored.

All four deposition notices seek highly relevant information, and Ocwen has never asserted relevancy challenges for any specific topics.[19] As described above in greater detail, the Second Notice seeks information related to Ocwen's corporate and organizational structure, which is relevant to, among other things, Relators' *alter ego* theory of liability for Ocwen Financial Corporation.[20] Similarly, Ocwen's loan modification procedures, and its hiring and firing practices are predicate information to understanding the reasons for Ocwen's pervasive

---

[15] Ex. I, May 8 Letter, at 6–7.
[16] *See* Scheduling Order, Dkt. 123, at 4 ("Discovery Disputes").
[17] May 28 Letter from Walker to Twiford, attached as Ex. K.
[18] June 2 Letter from Twiford to Walker, attached as Ex. L (Ocwen owns Homeward, the defendant in a parallel motion to be filed, and many discovery issues are applicable to both cases.)
  California Consent Order, attached as Ex. M..
[19] In fact, Ocwen's Initial Disclosures concede that a corporate representative would have material information concerning essentially all the noticed topics, including "The allegations in the complaint; the requirements of the HAMP program; Ocwen's policies and procedures pertaining to loss mitigation; Ocwen's compliance programs as they pertain to loss mitigation; and Ocwen's HAMP certifications." Ocwen's Initial Disclosures, attached as Ex. N.
[20] Ex. A, Relators' Second 30(b)(6) Notice, topics 1–5.

violations.[21] The Third Notice focuses on the Servicer Participation Agreements that include the false certifications/representations of compliance that are central to Relators' claims, as well as Ocwen's efforts to ensure compliance with its promises, and its knowledge of violations that render its certifications/representations false.[22] The Fourth Notice includes the most topics because it focuses on Ocwen's policies and practices regarding the specific violations, including audits and reports uncovering potential violations. It also includes the state investigations that concerned and uncovered related violations.[23] Finally, the Fifth Notice covers financial topics concerning the HAMP and VA programs to support Relators' damages theories.[24]

Ocwen's primary stated reason for failing to proffer a witness as to a single topic is the "overbreadth" of the topics.[25] Relators' Second, Third, and Fifth Notices contain 14, 9, and 9 topics, respectively, and are facially narrow. The Fourth Notice contains 34 topics, but the number of topics is primarily a function of the breadth of alleged violations in the case. Relators' Third Amended Complaint alleges numerous distinct violations related to loan modification practices, including pretextual and other improper modification denials, untimely reviews, capitalizing unloaned principle, capitalizing escrow without credits, improper foreclosures, improper offshore underwriting and modification reviews, false affidavits, providing false or incomplete information to borrowers, and numerous other violations.[26] Although concededly substantial, the burden of preparing witnesses for these topics is consonant with a case alleging billions of dollars in ill-gotten gains from a national, company-wide, and systematic scheme to defraud the federal government. As a practical matter, preparation for numerous topics will

---

[21] *Id.*, topics 6–14.
[22] Ex. B, Relators' Third 30(b)(6) Notice.
[23] Ex. C, Relators' Fourth 30(b)(6) Notice.
[24] Ex. D, Relators' Fifth 30(b)(6) Notice.
[25] Ex. I, May 8 Letter, at 6.
[26] Relators' Third Am. Complaint, Dkt. 59, at 19–100.

likely substantially overlap. For example, almost half the topics in the Fourth Notice concern Ocwen's audit practices and findings. Because it is likely that any audits would have tracked numerous violations, investigating Ocwen's knowledge regarding the audits will encompass numerous topics related to violations. In any case, Ocwen has never argued it would be unable to prepare witnesses for any particular noticed topic.

Ocwen's May 8 letter cites several inapt cases holding that noticed deposition topics were overbroad.[27] The 66 topics broken up into four notices by subject matter in this case are far different from the 229-topics noticed in the *Apple v. Samsung* case Ocwen discusses, which the court found taken together "*border[ed] on* extreme" and for which Samsung could not explain how a witness could possibly be prepared to testify about them.[28] In contrast, Relators' noticed topics here are manageable and consistent with the breadth of the alleged violations. Even in *Apple,* the Court noted that "Apple could and perhaps should have offered one or more witnesses on a selection of the more discrete topics noticed."[29] Ocwen has refused to discuss objections to specific topics, much less provide a witness for topics it does not consider overbroad.

Ocwen's May 8 letter also cites cases granting protection based in part on the fact that the notices at issue included irrelevant and duplicative topics and topics not described "with reasonable particularity."[30] Ocwen has made no such objections in this case, and at this point such objections are waived by failing to timely provide them. Notably, even with these defects in

---

[27] Ex. I, May 8 Letter, at 6–7.
[28] *Apple,* 2012 WL 1511901, at * 2.
[29] *Apple*, 2012 WL 1511901, at * 3.
[30] Ocwen's May 8 letter (Ex. I) cites the following inapt cases on pp. 6-7: *Gulf Prod. Co. v. Hoover Oilfield Supply, Inc.*, No. 08-05016, 2011 WL 2669294, at *4-5 (E.D. La. July 7, 2011) (finding, unlike here, many topics "seek irrelevant information" and are "duplicative"); *E.E.O.C. v. The Vail Corp.*, No. 07-2035, 2008 WL 5104811, at * 2 (D. Colo. Dec. 3, 2008) (finding, unlike here, that many of the noticed topics were "irrelevant or duplicative" but nevertheless ordering the deposition to go forward on a limited basis); *Krasney v. Nationwide Mut. Ins. Co.*, No. 06-1164, 2007 WL 4365677, at * 3 (D. Conn. Dec. 11, 2007) (finding the noticed topics extended beyond the plaintiff to "virtually the entire federal government" and required the production of documents which were "of marginal, tangential, or dubious relevance," but nevertheless ordering the deposition to go forward on most of the noticed topics).

Ocwen's cited cases (rendering them inapplicable), two of the courts still found that the noticed party was required to provide a witness for at least some of the noticed topics.[31] Ocwen can provide no authority for its wholesale unwillingness to engage in compromise discussions and provide a witness for at least some of the topics and production of the associated documents.

### B. The Deposition Notices are Procedurally Proper.

Ocwen's meet and confer letters take issue with the conditioning of the deposition dates on the substantial completion of their document production. Contrary to Ocwen's assertions, the notices do in fact provide dates certain, with the common sense proviso that the depositions should occur after the substantial production of documents.[32] Ocwen has cited no authority indicating this approach is improper. In fact, as this Court is aware, it is common for parties to negotiate mutually agreeable dates for depositions. It is also common and reasonable for parties to wait until the production of predicate documents before scheduling a deposition, particularly when it obviates the need for multiple depositions of the same witness(es) on the same topic(s).

It is incongruous for Ocwen to delay its document production while arguing a notice is technically deficient for postponing the dates until the adequate production is complete. Relators would of course be willing to go through with the depositions at any time, provided Ocwen does not object to subsequent depositions after the substantial completion of its deficient document production—although, to do so would be wasteful.

### C. Ocwen's Delay Jeopardizes the Court's Schedule.

On multiple occasions Relators have invited Ocwen to point out with specificity any requests that it finds objectionable, so that Relators can obtain the most relevant information while avoiding Court intervention. Ocwen has flatly refused to engage in the "trading and

---

[31] The *E.E.O.C.* and *Krasney* courts ordered the depositions to go forward with limitations.
[32] Notices, Exs. A–D.

**RELATORS' EMERGENCY MOTION TO COMPEL**                                                    Page 10

compromising that is and should be typical of" the process of "negotiating the topics for the Rule 30(b)(6) depositions."[33] Ocwen cannot reasonably think that it can ultimately avoid providing witnesses for these topics that are typical for complex cases, so the only benefit of its tactics is delay.

Ocwen's refusal to proffer 30(b)(6) witnesses is consistent with and exacerbated by its delay in producing documents. As discussed above, Ocwen has produced just over 700 business documents to date.[34] Relators need a substantially complete production of business documents before they can conduct meaningful 30(b)(6) depositions (unless the depositions are repeated on the same topics). Ocwen's meet and confer letters describe a painstaking multi-tiered, document-by-document review process that would have been unnecessary even in the era before electronic discovery, much less in 2015.[35] Following this archaic approach would make modern electronic discovery impossible in a case of any complexity. Given the robust Clawback Order in this case, Ocwen should have produced all the relevant documents months ago, having run only privilege cull terms, as is consistent with modern electronic discovery practice.[36]

A brief description of Relators' discovery plan illustrates the prejudice caused by Ocwen's delay. Relators intend to prove numerous violations of laws and regulations related to loan modifications by Ocwen, and the necessary discovery must occur to a certain extent in sequential steps.

---

[33] *Kubicki on behalf of Kubicki v. Medtronic*, Civ. Action No. 12–734, 2014 WL 7351938, at *3 (D.D.C. Dec. 23, 2014).
[34] Ex. G, Walker Decl., ¶ 3.
[35] Ex. I, May 8 Letter, at 3.
[36] Agreed Clawback Order, Dkt. 120. Having the small number of documents already produced, it appears a substantial amount of time is being taken to provide unnecessary redactions, such as loan numbers and borrower names. Calling a halt to this practice, which is improper and unnecessary where a protective order governs documents, would likely speed up the production process.

**RELATORS' EMERGENCY MOTION TO COMPEL**  Page 11

First, Relators need to review many thousands of Ocwen loan files to determine the nature and extent of violations. This process requires the involvement of multiple experts and will require a detailed review of each file. Ocwen has produced only 14 sample loan files to date, and even those were grossly inadequate and in an unusable format.[37] Simultaneously, Relators must review Ocwen's business plans, emails, and other internal business documents that corroborate and further explain the evidence from the loan files. Ocwen has produced essentially no relevant business documents.[38] Relators would ideally like to provide the Court with a specific list of documents Ocwen has failed to produce, but Ocwen's production has been so sparse (consisting primarily of sanitized policies and procedures) that Relators have little knowledge about the kinds of documents Ocwen has. Some priority documents (without prejudice to seeking all the documents requested in Relators' requests for production)[39] would include the following documents showing Ocwen's *actual conduct and practices*, rather than the sanitized policies and procedures it has partially produced:

(1) Audits, reports, summaries, evaluations or similar documents tracking or evidencing potential and/or actual servicing violations and compliance issues;[40]

(2) Emails or other written communications involving Home Retention or loss mitigation managers and/or other Ocwen or subcontractor employees discussing potential, perceived and/or actual violations of (a) the SPA, including attachments, or (b) federal or state laws, regulations, rules and/or requirements governing Ocwen's servicing business;

---

[37] The parties are continuing to work out a protocol for the loan files at Ocwen's typical pace.
[38] The majority of the produced documents are sanitized policy and procedure documents, along with some a small number of emails from the former Chairman, Mr. Erbey.
[39] Ex. H, Relators' First Requests for Production; Ex. P, Relators' Second Requests for Production.
[40] This should include, but is not limited to, any documents reflecting compliance or non-compliance with Ocwen's certifications, representations, warranties, agreements and/or obligations (a) contained in its Servicer Participation Agreements (SPA), including attachments or (b) arising from federal or state laws, regulations, rules and/or requirements for federal lending or servicing programs under HUD or other agencies of the United States or the several States thereunder. It should also include self-reporting to reporting to federal and/or state agencies.

**RELATORS' EMERGENCY MOTION TO COMPEL** Page 12

(3)  Business plans and executive level documents (*e.g.*, Board of Directors' meeting minutes, Executive Committee reports, consulting reports) that discussed Ocwen's potential and/or actual violations or compliance issues.

Second, after reviewing and analyzing the documents and the violations found therein, Relators will need to conduct numerous depositions concerning the documents. This will require 30(b)(6) depositions (at issue in this motion), depositions of current and/or former Ocwen employees, and depositions of witnesses related to the HAMP and/or FHA programs.

Third, based on the depositions, Relators will inevitably need to seek additional documents to supplement Ocwen's production, which will in turn require additional analysis.

Fourth, Relators' experts need to evaluate the written and testimonial discovery, so that they can form opinions regarding the nature and extent of Ocwen's violations and provide reports.

If Ocwen were fully cooperative, the discovery process would still take several months because of the sheer scale of the violations, volume of relevant documents and number of relevant witnesses. At Ocwen's current pace of trickling out small, piecemeal productions, a full production could take literally a decade. Ocwen's delay and misuse of the meet and confer process also results in mounting, unnecessary legal costs. More importantly, Ocwen's delay has made the Court's current schedule unworkable, which is the primary reason for the parties' recent Joint Motion to Amend Scheduling Orders (Dkt. 173), which the Court denied in part and granted in part. The current dispositive motion deadline is August 21, 2015.[41] The current expert deadline is August 28, 2015. Defendants' delay has undermined the Relators' rights to reasonably review and evaluate a complete discovery production prior to these deadlines, which is why Relators are filing this as an emergency motion.

---

[41] Scheduling Order, Dkt. 123.

**RELATORS' EMERGENCY MOTION TO COMPEL**  Page 13

Ocwen's current discovery game is not new; it is standard operating procedure for the company, which is trying to avoid liability via discovery games. In January 2013, the California Commissioner of Business Oversight ("the Department") commenced a regulatory examination of Ocwen's loan servicing practices.[42] As part of the examination, the California regulators "made reasonable requests to Ocwen . . . for the production of information and documents for borrower loan files." Eventually, as a result of "Ocwen's repeated failure to timely and fully comply with the Commissioner's requests for information and documentation, the Department initiated an action . . . to suspend Ocwen's license." Even with its California servicing license at stake, Ocwen "fail[ed] to timely and fully comply with the Commissioner's requests for information and documents . . . ." Ocwen continued to fail to produce loan files after "a California administrative law judge" ordered their production. "Ocwen's repeated failure to timely produce all the information and documents requested by the Department [ ] caused unnecessary delay of the Department's examination." As a result, Ocwen voluntarily entered into a consent order stating "[u]pon the effective date of this Consent Order, Ocwen will cease acquiring any additional mortgage servicing rights, from any source, for loans secured by properties in California until the Department is satisfied that Ocwen can satisfactorily respond to the requests for information and documentation made in the course of the regulatory exam." "For its repeated failure to timely produce the information and documents requested," Ocwen agreed to pay a $2,500,000 penalty, plus the Department's examination costs. We respectfully request that the Court intervene to stop Ocwen's similar games in this case so that discovery may truly commence, information can be fairly exchanged and reviewed, and this case can continue toward trial.

---

[42] California Consent Order, attached as Ex. M.

**RELATORS' EMERGENCY MOTION TO COMPEL** Page 14

Ocwen's refusal to give the discovery process in this case the attention it deserves, as if it were a mere "nuisance case" requiring *de minimis* efforts, is inconsistent with its prior admission to widespread servicing violations. In particular, Ocwen already "agreed" that New York regulators found "numerous and significant violations of . . . New York state laws and regulations," including 1,358 violations from a review of only 478 New York loans.[43] Ocwen also agreed that New York "uncovered a number of conflicts of interest between Ocwen and other public companies."[44] As a result of these agreed facts, Ocwen paid $150,000,000, including a $100 million civil monetary penalty and its Chairman (who had multiple conflicts of interest) was forced to resign.[45] The United States Government did not receive any compensation for the misconduct related to the New York loans, nor has it been compensated for servicing misconduct in the 49 other states. The Court, the government, the Relators, and the taxpayers deserve complete and timely discovery responses, not endless delay.

## V. CONCLUSION AND PRAYER FOR RELIEF

Based on the foregoing, Relators respectfully request that the Court order the following:

(1) Ocwen must complete its production of business documents (all responsive documents except loan files) by 10 days from the Court's Order; and

(2) Ocwen must provide dates for the requested 30(b)(6) depositions between 45 and 60 days of the Court's Order.

As an alternative to (1), the Court may wish to consider an order requiring all parties to produce all documents reasonably bearing on a claim or defense by a date certain (*e.g.*, twenty days form the date of the order).

---

[43] New York Consent Order, Ex. O, at 5.
[44] *Id.* at 8.
[45] *Id.* at 20.

Dated: June 25, 2015  Respectfully submitted,

By: */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
M. Brett Johnson
johnson@fr.com
Texas Bar No. 00790975
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

William T. "Tommy" Jacks
Texas Bar No. 10452000
jacks@fr.com
David S. Morris
Texas Bar No. 24032877
dmorris@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

Samuel L. Boyd
sboyd@boydfirm.com
Texas State Bar No. 02777500
Catherine C. Jobe
cjobe@boydfirm.com
Texas State Bar No. 10668280
**BOYD & ASSOCIATES, PC**
6440 North Central Expressway
Suite 600
Dallas, Texas 75206-4101
(214) 696-2300 (Telephone)
(214) 363-6856 (Facsimile)

>Roger D. Sanders
>Texas State Bar No. 17604700
>roger.sanders@somlaw.net
>J. Michael Young
>Texas State Bar No. 00786465
>michael.young@somlaw.net
>**SANDERS, O'HANLONG, MOTLEY & YOUNG, PLLC**
>III South Travis
>Sherman, Texas 75090
>(903) 892-9133 (Telephone)
>(903) 892-4300 (Facsimile)
>
>**Counsel for Relators/*Qui Tam* Plaintiffs**

### **CERTIFICATE OF CONFERENCE**

I hereby certify that on numerous occasions, including through the letters and phone calls referenced above, I conferred with counsel for Defendant in good faith regarding the matters at issue in this motion. Counsel for the parties were unable to resolve the issue relating to this Motion to Compel, and filed the Motion pursuant to the Court's instruction in reference to the Scheduling Order procedure.

>*/s/ Chad B. Walker*
>Chad B. Walker

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 25, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

>*/s/ Thomas M. Melsheimer*
>Thomas M. Melsheimer