# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| MICHAEL J. FISHER, *et al.* | § | |
| | § | |
| v. | § | CASE NO. 4:12-cv-543 |
| | § | Judge Mazzant |
| OCWEN LOAN SERVICING, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Ocwen Loan Servicing, LLC's Motion for Protective Order to Quash Subpoenas (Dkt. #116) and the New York State Department of Financial Services' (the "NYDFS") Opposed Motion for Protective Order (Dkt. #154). After reviewing the motions, the responses, and the relevant pleadings, as well as considering the oral argument of the parties at a hearing conducted by the undersigned on June 4, 2015, the Court finds that the motions should be denied.

## BACKGROUND

This is a *qui tam* action under the False Claims Act (the "FCA") in which the United States has declined to intervene. Relators assert FCA claims based on false certifications of compliance as part of the Treasury Department's Home Affordable Modification Program ("HAMP"). Relators allege that Ocwen's loan modifications and loss mitigation programs failed to comply with federal and state laws, including, but not limited to, New York state law.

In September 2011, Ocwen and the NYDFS entered into an Agreement on Mortgage Servicing Practices (the "Agreement"), which requires Ocwen to maintain sufficient capacity to manage its portfolio of distressed loans, engage in sound document execution and retention practices, and implement a system of robust internal controls with respect to mortgage servicing practices. In connection with the Agreement, the NYDFS conducted a targeted examination of

Ocwen in June 2012, which resulted in the signing of a Consent Order in December 2012. The 2012 Consent Order provides for "the appointment of an independent monitor to conduct a comprehensive review of Ocwen's mortgage servicing files and practices" (Dkt. #152, Ex. A at 3). The 2012 Consent Order states that the Compliance Monitor "will report directly to the Department to conduct a comprehensive review (the "Compliance Review") of Ocwen's servicing operations, including its compliance program and operational policies and procedures." *Id*. at 4. The Compliance Monitor was tasked with identifying "needed corrective measures to address identified weaknesses and deficiencies in Ocwen's servicing practices, mak[ing] recommendations to the Superintendent, and oversee[ing] their implementation as approved by the Superintendent." *Id.* "[A]ny confidential customer and/or proprietary Ocwen information provided to the Monitor [was to] remain the sole property of Ocwen and [] be treated as confidential information, subject to reporting provisions outlined in [the Consent Order]." *Id*.

As required by the 2012 Consent Order, Ocwen engaged Boston Portfolio Advisors, Inc. ("Boston Portfolio") and StoneTurn Group LLP ("StoneTurn") to serve as compliance monitors. On March 10, 2015, Relators issued subpoenas to Boston Portfolio and StoneTurn, which request essentially all documents pertaining to the compliance monitoring under the consent decrees. The subpoenas at issue request that Boston Portfolio and StoneTurn produce:

1. All OLS borrower electronic or printed loan files produced or provided to you by Ocwen for audits in connection with the 2012 Consent Order at the instance of the NYDFS and arising out of the September 1, 2011 Agreement between Ocwen and NYDFS.

2. All audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by you regarding the violations, complaints, problems, or compliance issues reported or discovered by you during and after the audits of Ocwen borrowers' files pursuant to the 2012 Consent Order.

3. The complete transactional loan files for each of the Ocwen loan files provided to you for the audit pursuant to the 2012 Consent Order.

4. All documents and communications that refer or relate to Michael J. Fisher, individually or as Relator in the instant litigation.

5. All documents and communications that refer or relate to Brian Bullock, individually or as Relator in the instant litigation.

6. All documents and communications that refer or relate to the instant litigation.

7. All communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws; including, but not limited to, the Consent Order executed by the parties in December 2012.

8. All documents or communications, whether electronic or printed, which evidence or relate to William C. Erbey and/or Ron Faris (or their representatives), including without limitation any documents or communications regarding any issue of Ocwen's compliance with federal or state laws or the Consent Order executed by the parties in December 2012.

(Dkt. #116, Ex. D and E).

On March 31, 2015, Ocwen filed its motion for protective order to quash subpoenas (Dkt. #116). On April 21, 2015, Relators filed their response to the motion (Dkt. #128). On May 4, 2015, Ocwen filed its reply to the motion (Dkt. #136). On May 19, 2015, Relators filed their sur-reply (Dkt. #149).

On May 19, 2015, NYDFS filed its unopposed motion to intervene in the proceedings (Dkt. #152), which the Court granted on May 20, 2015 (Dkt. #153). On May 21, 2015, NYDFS filed its motion for protective order (Dkt. #154). On May 25, 2015, the Relators filed their response (Dkt. #156). On June 1, 2015, NYDFS filed its reply (Dkt. #160). On June 2, 2015, Ocwen filed its response (Dkt. #162). Also on June 2, 2015, Relators filed their surreply (Dkt. #163).

## ANALYSIS

Under Federal Rule of Civil Procedure 45(d)(3)(A), a court is required to quash or modify a subpoena that: (1) fails to allow a reasonable time for compliance; (2) requires a person

who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of a privileged or protected matter; or (4) subjects a person to undue burden. *See also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-18 (5th Cir. 2004). Ocwen asserts that the subpoenas should be quashed because they improperly seek documents that are protected from disclosure by New York Banking Law § 36, and alternatively, that the federal bank examination privilege protects the disclosure of the documents sought by Relators. In addition, Ocwen contends that the subpoenas should be quashed because they improperly seek documents pertaining to Ocwen's settlements with the NYDFS.

The NYDFS also argues that New York Banking Law §36 should apply to bar disclosure of the documents, and, at a minimum, the federal banking examination privilege should be extended to these documents.

In an Order entered contemporaneously with this Order, the Court ordered that the subpoenas at issue be quashed as to the documents that Ocwen sent to Boston Portfolio and StoneTurn in connection with the monitorship because production of those documents placed an undue burden on these entities. The only documents remaining to be produced are a limited number of internal reports and other documents created by Boston Portfolio and StoneTurn, and given to the NYDFS, and the Court will consider the privilege arguments as to these documents only.

Turning first to Ocwen's motion for protective order, the Court finds that Ocwen's motion should be denied. Ocwen argues that these subpoenas should be quashed because they improperly seek documents pertaining to Ocwen's settlements with the NYDFS. Federal Rule of Evidence 408 provides that "conduct or a statement made during compromise negotiations about the claim" are inadmissible "to prove or disprove the validity of a disputed claim." Ocwen

contends that although this rule relates to admissibility, many federal courts have recognized a federal settlement privilege for purposes of discovery, as a natural outgrowth from Rule 408's prohibition against admissibility (Dkt. #116 at 12). *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d 976, 977, 981 (6th Cir. 2003). Ocwen argues that the Eastern District of Texas has applied this federal settlement privilege in other cases in which settlement negotiations occurred, and this Court has reasoned that "parties engaged in confidential settlement negotiations are more likely to make the type of important concessions and realistic compromises that lead to settlement, therefore preserving the confidentiality of a settlement negotiation associated with litigation furthers the public policy favoring settlement." *Tessera, Inc. v. Micron Technologies, Inc*., No. 2:05-cv-094, No. 325, slip op. at 3 (E.D. Tex. Apr. 13, 2006) (J. Love).

However, the internal reports created by StoneTurn and Boston Portfolio do not fall in the category of conduct or statements made during compromise negotiations about the claim. While the 2012 Consent Order that required Ocwen to be monitored by StoneTurn and Boston Portfolio may have required the internal reports to eventually be created, these documents were not created as a result of compromise negotiations. Thus, the Court finds that even were it to assume that it should extend the federal settlement privilege, without deciding that issue, these documents would not qualify for the privilege as they were not made during compromise negotiations.

Both Ocwen[1] and NYDFS assert that the internal reports created by the compliance monitors are protected by Federal Banking Law § 36(10), which provides in relevant part:

---

[1] Relators contend that Ocwen lacks standing to assert the bank examination privileges, because "the bank examination privilege belongs solely to the ... banking regulatory entities, and may not be asserted by third parties on behalf of the banking agencies." *Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997). The Court agrees, and finds that for this additional reason, Ocwen's motion should be denied.

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examinations and investigations… shall not be confidential communications, shall not be subject to subpoena and shall not be made public…

By statute, only the superintendent of financial services may make Banking Law § 36(10) material public if "in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication" thereof.

Federal Rule of Evidence 501 provides that the "common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege" unless federal law provides otherwise. Rule 501 also makes it clear that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Relators contend that Rule 501 is clear that state privilege law will apply in diversity cases, and federal privilege law will apply in federal questions cases. While the Court generally agrees that the Fifth Circuit interprets Rule 501 to require the application of federal common law in federal question cases, the Fifth Circuit also allows for the application of a state law privilege based on unique considerations of government policy. When a case involves a privilege that is "not existent in the [federal] common law but enacted by the (state) legislature based on unique considerations of government policy," the Fifth Circuit has recognized that the state law privilege may be applied after "balancing the policies behind the privilege against the policies favoring disclosure." *Am Civil Liberties Union v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981) (citation omitted). Therefore, although this is a federal question case in which Relators' claims arise out of the FCA, the Court will apply the *Finch* balancing test to determine whether the New York Banking Law § 36(10) should be applied in this case.

In *Finch*, the Fifth Circuit found that the balancing test is applied by answering two questions: "(1) whether the fact that the [state] courts would recognize the privilege itself creates

good reason for respecting the privilege in federal court, regardless of our independent judgment of its intrinsic desirability; and (2) whether the privilege is intrinsically meritorious in our independent judgment." *Finch*, 638 F.2d at 1343; *see also Fairchild v. Liberty Indep. Sch. Dist.*, 466 F. Supp. 2d 817, 821 (E.D. Tex. 2006).

> The first question almost always is answered in the negative. "That the courts of a particular state would recognize a given privilege will not often itself justify a federal court in applying that privilege." Courts should apply state privileges when there is no substantial cost to federal substantive policy, but there is almost always such a cost, as privileges hinder the "special federal interest in seeking the truth." When federal questions or issues play a predominant role in the litigation, the federal interest is very strong.

*Fairchild*, 466 F. Supp. 2d at 822 (internal citations omitted). The second question requires the Court to consider four conditions in order for the Court to recognize the privilege: (1) whether the communications originated in a confidence that they will not be disclosed; (2) whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties; (3) whether the relation is one in which the opinion of the community ought to be sedulously fostered; and (4) whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit gained for the correct disposal of litigation. *Finch*, 638 F.3d at 1344; *Fairchild*, 466 F. Supp. 2d at 821.

As to the first question, the Court finds that it should be answered in the negative. The NYDFS asserts that the federal interest here is minimal compared with the state law interests at issue. Relators' claims are brought under the FCA, and a portion of these alleged violations of federal law will be determined through the application of the underlying state law. Among other allegations, Relators assert that Ocwen violated 3 NYCRR § 419.11 by providing "modifications that were not affordable or sustainable," not providing "required written disclosures that state the 'material terms, costs and risks'" of a loan, and by failing to act in good faith (Dkt. #59 at ¶ 1).

However, Relators' claims are primarily federal claims under the FCA, not all of Relators' claims relate to New York state law, and Relators' complaint alleges numerous violations of federal law and regulations. There is a strong federal interest in FCA cases for seeking the truth, and in this case, federal law plays a predominant role in the litigation. Thus, the first *Finch* question is answered "no."

The first factor of the four-part test regarding the second question requires that the communications originate in a confidence that they will not be disclosed. Both the NYDFS and Ocwen intended these documents to be protected by New York Banking Law § 36(10). The Agreement by which Ocwen engaged the monitors provides that:

> Any information provided, and any access to systems granted, to the Compliance Monitor by Ocwen, DFS and any other regulator, as the case may be, for use during the engagement are considered confidential supervisory information pursuant to New York's Banking Law § 36.10… and any other applicable state and federal laws and regulations.

(Dkt. #154 at 7). Clearly, these communications originated under an agreement that they would not be disclosed under state law. However, there is no reason for the NYDFS to assume that these documents would be protected in a FCA action based on federal question, especially given the broad range of permissible discovery. As Relators point out, no federal court has extended the New York Banking Law privilege to a federal question case, much less a FCA action. Accordingly, the Court finds that the documents did not originate in a confidence that they would not be disclosed pursuant to discovery in a FCA case.

The second factor requires that the Court determine whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties. The NYDFS asserts that in order to ensure the cooperation of the entities that it is regulating, it must be able to give the entities confidence that the confidentiality of these documents will be protected. However,

Relators assert that the NYDFS has not been impaired in its ability to require cooperation from entities notwithstanding that federal courts have not adopted the New York privilege as applicable or controlling in FCA cases. The Court agrees and finds that the NYDFS has broad power to require cooperation from the entities that it is regulating, and does not need to rely on the confidentiality of these documents alone to obtain cooperation.

The NYDFS argues that the relation is one in which the opinion of the community ought to be sedulously fostered, and the Relators do not dispute that argument. Turning now to the fourth factor – whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit gained for the correct disposal of litigation – the NYDFS asserts that the potential detriment to its relationship with its regulated entities is greater than the benefit gained. However, the Court finds in light of its prior holdings on the first two factors, this factor is a balancing test that weighs in favor of allowing disclosure for the benefit gained by seeking the truth in this FCA case. Accordingly, the Court finds that the second *Finch* question should also be answered "no."

In the alternative, the NYDFS asserts that the federal common law bank examination privilege should apply. *See, e.g., In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992); *Bank of America Nat'l Trust & Sav. Ass'n v. Douglas*, 105 F.2d 100, 103 (D.C. Cir. 1939) ("According to a practice of long standing, the reports of bank examiners made to the Comptroller have been considered as private."). The NYDFS asserts that applying this privilege would serve the interests of comity and protect information on the same terms that apply to the NYDFS's federal partners.

Relators assert that the NYDFS was granted permission to intervene "for the limited purpose of protecting its bank examination privilege codified under New York Banking Law §

36(10)," and that it should not be allowed to raise this argument. The Court agrees. However, even if the Court were to consider this privilege, the Court finds that it should not be extended in this case. The federal banking privilege is "a discretionary one that depends upon ad hoc considerations of competing policy claims." *Rouson ex. rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734, 2006 WL 2927161, at \*4 (E.D.N.Y. Oct. 11, 2006). "The Court must weigh the government's interest in nondisclosure against those of the litigants and society in 'accurate judicial fact finding.'" *Id*. The Court should consider the following factors: (1) "the relevance of the evidence sought to be protected"; (2) "the availability of other evidence…"; (3) "the 'seriousness' of the litigation and the issues involved…"; (4) "the role of the government in the litigation…"; and (5) "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id*. The NYDFS has not attempted to conduct this analysis, and the Court finds that even if it were to conduct that analysis, it would lead the Court to the conclusion that the privilege should not apply to highly relevant documents in a FCA case, as the Court similarly concluded in its analysis *supra*.

## CONCLUSION

Based on the foregoing, the Court finds that Ocwen Loan Servicing, LLC's Motion for Protective Order to Quash Subpoenas (Dkt. #116) is hereby **DENIED**.

The Court further finds that the New York State Department of Financial Services' Opposed Motion for Protective Order (Dkt. #154) is hereby **DENIED**.

All documents responsive to the subpoenas served upon StoneTurn Group LLP and Boston Portfolio Advisors, Inc. that consist of internal reports and other documents, not provided by Ocwen, but created by these two entities, should be produced to Relators no later than thirty (30) days from the date of this Order.

**SIGNED this 26th day of June, 2015.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE