IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*Ex rel*. Michael J. Fisher, Brian Bullock and<br>Michael Fisher, Individually and Brian<br>Bullock, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>Ocwen Loan Servicing, LLC, and<br>Ocwen Financial Corporation,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:12-CV-543<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**RELATORS' RESPONSE TO OCWEN FINANCIAL CORPORATION'S MOTION TO DISMISS UNDER RULES 8, 9(b), AND 12(b)(6) AND MEMORANDUM IN SUPPORT**

Samuel L. Boyd
sboyd@boydfirm.com
Texas SBN: 02777500
Catherine C. Jobe
cjobe@boydfirm.com
Texas SBN: 10668280
**BOYD & ASSOCIATES**
6440 North Central Expressway, Suite 600
Dallas, Texas 75206-4101
Tel (214) 696-2300

Thomas M. Melsheimer
txm@fr.com
Texas Bar No. 13922550
M. Brett Johnson
johnson@fr.com
Texas Bar No. 00790975
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)

William T. "Tommy" Jacks
jacks@fr.com
Texas Bar No. 10452000
**FISH & RICHARDSON P.C.**
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

*Counsel for Qui Tam Plaintiffs/Relators*


Roger D. Sanders
TX SBN 17604700
J. Michael Young
TX SBN 00786465
Sanders, O'Hanlon, Motley & Young, PLLC
III South Travis
Sherman, TX 75090
(903) 892-9133 (Tel.)
(903 892-4300 (Fax)

**Local Counsel for Relators**

## TABLE OF CONTENTS

I. Summary of Response ................................................................................................ 1

II. Counter-Statement of the Issue ................................................................................. 2

III. Legal Standard ........................................................................................................... 2

IV. Argument .................................................................................................................... 3

    A.    Relators' FAC Adequately Pleads that OFC's Representations in the 2009 Financial Instrument Were False, Material to Government Payment Decisions, and Resulted in Fraudulently Induced HAMP Payments. ...................................... 3

        *1.*    *OFC's Legal and Regulatory Violations on or before April 16, 2009 Contradict OFC's April 2009 SPA false representations and Are Properly Pleaded.* ............................................................................... 5

        *2.*    *Any Reference to OLS's Violations "As Early As April 16, 2009" Can Be Attributed to OFC Given that OLS Has Been OFC's Alter Ego.* ............................................................................................... 6

    B.    If Needed, Relators Should Be Given a Chance to Re-Plead to Cure Any Pleadings Deficiencies or to Obtain Additional Discovery ............................ 8

CONCLUSION AND PRAYER FOR RELIEF ................................................................... 9

## TABLE OF AUTHORTIES

**Cases**          **Page(s)**

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1993) ...............................................................................................2

*Bridas S.A.P.I.C. et al. v. Government of Turkmenistan*,
    447 F.3d 411 (5th Cir. 2006) ...............................................................................................6

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ...............................................................................................3

*FMC Finance Corp. v. Murphree*,
    632 F.2d 413 (5th Cir. 1980) ...............................................................................................6

*Geyer v. Ingersoll*,
    Del. Ch., 621 A.2d 784 (1992) ............................................................................................6

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ..........................................................................................2, 3

*Johnson v. City of Shelby*,
    135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) (per curiam) .....................................................8

*res. Siewick v. Jamieson Science and Eng., Inc.*,
    191 F.Supp. 2d 17 (D.D.C. 2002) .......................................................................................6

**Statutes**

31 U.S.C. § 3729(a)(1)(B) ...........................................................................................................7

**Other Authorities**

Fed. Rules Civ. P. 15(a)(2) ..........................................................................................................8

Fed. Rules Civ. P. 12(b)(6) ..........................................................................................................2

## I.    Summary of Response

Relators have properly pleaded Ocwen Financial Corporation's ("OFC") numerous violations of federal and state mortgage servicing laws and regulations that caused serious harm to struggling borrowers, whom the HAMP program is intended to help. Contrary to OFC's contentions that Relators have failed to identify a single specific instance of OFC's conduct that contradicts its April 16, 2009 Servicer Participation Agreement ("2009 SPA") compliance representation, Relators' allegations in fact far exceed the requirements of Rule 9(b). OFC's Rule 8, 9(b), and 12(b)(6) Motion to Dismiss ("MTD") should be denied for the following reasons:

First, while OFC contends that Relators were required to identify *specific individual instances of* conduct that violated a law or regulation *before* the April 2009 agreement, Relators only had to identify specific *conduct* demonstrating that OFC's compliance representation in April 2009 was false. Therefore, the conduct identified by Relators on (or before) April 16, 2009 is properly pleaded and renders false the representations of compliance in the April 2009 SPA.

Second, in their Fourth Amended Complaint ("FAC"), Relators cite numerous misrepresentations committed by Ocwen Loan Servicing, Inc. ("OLS"), a subsidiary of OFC and its alter ego, "as early as April 16, 2009." Relators adequately plead that OLS is OFC's alter ego, and numerous facts support this conclusion. For example, OFC was the only Ocwen entity that was a member of the HAMP program at that time, and OFC provides mortgage-related services through its subsidiaries like OLS. The Government's HAMP Servicer lists and payment documents do not indicate any change in servicer, despite Mr. Faris's signature as an officer of the two alter ego entities, but instead demonstrate that the Government considered the two entities the same based on its interactions and communications with OFC/OLS.[1] Relators have therefore adequately

---

[1] For instance, the judicially noticeable TARP Housing Transaction Report from December 2010, Exhibit A hereto, lists *OFC* as the "servicer modifying borrowers' loans" (p. 26), and as the "name of institution" in the supplemental

**RELATORS' RESPONSE TO OFC'S MOTION TO DISMISS**                                                              Page 1

pleaded that OLS's actions are attributable to OFC, and the evidence shows that OLS was in fact OFC's alter ego. Accordingly, not only have the Relators properly identified OFC conduct that contradicts the 2009 SPA, they have also properly identified multiple violations committed by OFC given that OLS has been OFC's alter ego.

## II. Counter-Statement of the Issue

Where Relators have provided detailed allegations concerning the ways in which OFC has fraudulently induced the United States to enter the 2009 SPA and the Amended and Restated 2010 SPA, made or used false statements or records material to Government decisions to make payments under the agreements, and influenced or caused the United States to make payments it would not have made if it had been aware of the violations of specific federal and state laws and regulations, does the FAC specifically allege OFC's violations of the False Claims Act that satisfy Rules 8 and 9(b)'s pleading requirements?

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the non-moving party.[2]

---

information indicating the amounts paid for the borrower/lender/servicer (p. 48). This report, however, was issued well after OLS signed the Amended SPA in September 2010. The TARP Housing Transactions Report from March 2011, Exhibit B hereto, lists OFC as "servicer modifying borrowers' loans" (p. 28), and as the "name of institution" in the supplemental information indicating the amounts paid (p. 53). The TARP Housing Transactions Report from February 2012, Exhibit C hereto, lists OFC as "servicer modifying borrowers' loans" (p. 5), but in the supplemental information regarding amounts paid for the borrower/lender/servicer, the "name of institution" is OLS (p. 41). Furthermore, this demonstrates that OFC was in fact *paid*, which is counter to OFC's argument in its Motion to Dismiss.

[2] *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1993).

Pursuant to Rule 9(b), a party alleging fraud or mistake is required to "state with particularity the circumstances constituting fraud or mistake."[3] This particularity requirement "does not 'reflect a subscription to fact pleading.'"[4] Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true."[5] Thus, while Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue,"[6] "Rule 9(b)'s ultimate meaning is context-specific."[7] "Depending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard--it depends on the elements of the claim at hand."[8]

## IV. Argument[9]

### A. Relators' FAC Adequately Pleads that OFC's Representations in the 2009 Financial Instrument Were False, Material to Government Payment Decisions, and Resulted in Fraudulently Induced HAMP Payments.

OFC acknowledges that Relators' FAC identifies the initial representations and warranties by which OFC induced the Government to approve its SPA, including, but not limited to, OFC's

---

[3] Fed. R. Civ. P. 9(b) (emphasis added); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)).
[4] *Grubbs*, 565 F.3d at 186 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).
[5] *Id*. (internal quotations omitted, emphasis added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)).
[6] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002))
[7] *Grubbs*, 565 F.3d. at 188 (quoting *Williams*, 112 F.3d at 178).
[8] *Id*.
[9] OFC also alleges that the FAC fails to state a claim against OFC for the reasons explained in OLS's December 5, 2014 Rule 12(b)(6) and Rule 9(b) Motion to Dismiss ("OLS's MTD"). OFC explains that it is not currently reasserting the arguments from OLS's MTD because (1) the Court already denied OLS's MTD and (2) the Court allegedly does not need to reach the issues from OLS's MTD because the FAC's allegations fail to plead that OFC's representation was false. While Relators disagree that the FAC's allegations fail to plead that OFC's representation was false, there is no reason for Relators to address OFC's allegations as the Court has indeed previously dismissed the very same arguments. OFC asserted that it only presented these arguments for the purpose of preserving the issue for appeal. Moreover, since OLS was the alter ego of OFC, all claims against it stand against OFC.

statement in the 2009 SPA that it was "**in** compliance with, and covenants that all Services **will be** performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements . . . ."[10] The 2009 SPA further specifies that these federal and state laws include those that are designed to prevent unfair, discriminatory or predatory lending practices. OFC argues that Relators must set forth particularized facts showing that when OFC made this statement, Ocwen was violating a law or regulation applicable to loan modifications. Relators have indeed set forth the requisite particularized facts showing that OFC's conduct was inconsistent with the representations/covenants that it falsely made to the United States in the 2009 SPA.

In paragraph 18 of the FAC, Relators initially explain that Ronald Faris executed the 2009 SPA on behalf of OFC. In paragraph 20, Relators set forth the compliance representation (as stated above) that OFC made to induce the United States to approve the SPA. In paragraph 23, Relators state that OFC falsely represented that it was in full compliance with the terms in the 2009 SPA. Relators adequately pleaded that OFC's representation in the 2009 SPA was false, material to Government payment decisions, and resulted in fraudulently induced payments. First, any of Relators' allegations referencing OFC's violations on or before April 16, 2009 contradict OFC's April 2009 SPA false representations and are properly pleaded. Second, OLS's violations "as early as April 16, 2009" are legally attributable to OFC because OLS is an alter ego of OFC.

---

[10] FAC Ex. 1, at 2 (Dkt. No. 126-1).

**RELATORS' RESPONSE TO OFC'S MOTION TO DISMISS**　　　　　　　　　　　　　　　　Page 4

        *1.     OFC's Legal and Regulatory Violations on or Before April 16, 2009 Contradict OFC's April 2009 SPA False Representations and Are Properly Pleaded.*[11]

OFC contends that the FAC does not allege a single specific instance in which OFC or OLS violated a law or regulation before the 2009 SPA certification. First, the FAC *does* allege specific instances in which OFC or OLS violated a law or regulation when the 2009 SPA certification was signed because several paragraphs throughout the FAC (75, 87, 88, 100, 111, 126, 164, 195) refer to violations that occurred as early as April 16, 2009.[12] In other words, the alleged violations in those instances were ongoing on the day that Ocwen signed the 2009 SPA and therefore the compliance certification was false.

Second, Relators do not have to demonstrate that the violation occurred *before* the date of the 2009 certification, because OFC certified that it was "in compliance with, and covenants that all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements . . . ."[13] In other words, OFC certification that "all Services will be performed in compliance with, all applicable Federal, state, and local laws," was knowingly false at the time that it was made as OFC never intended to comply. Additionally, OFC's 2009 representation fraudulently induced the United States to enter the SPA, was material to Government payment decisions, and resulted in fraudulently obtained payments from the Government. Therefore, any of the violations committed by Ocwen "as early as April 16, 2009" and thereafter are properly pleaded.

---

[11] OFC argues that Relator Brian Bullock was not an employee of OLS until 2012 and is therefore in no position to make any "meaningful" allegations concerning events at OFC in 2009. First, Ocwen again fails to acknowledge the information that Bullock uncovered when he moved over from Homeward to Ocwen in 2012. Second, OFC fails to mention Relator Michael Fisher, who had knowledge of Ocwen's violations in 2009 based on his significant involvement in the loan modification process, as discussed in a number of prior briefs throughout this litigation.

[12] Relators refer to OLS committing these violations as early as April 16, 2009, but Section IV.A.2 illustrates why those same violations are also in reference to OFC given that OLS is OFC's alter ego.

[13] FAC Ex. 1 at 2 (Dkt. No. 126-1).

> 2.  *Any Reference to OLS's Violations "As Early As April 16, 2009" Can Be Attributed to OFC Given that OLS Has Been OFC's Alter Ego.*

Throughout the FAC, Relators state that "OLS" committed multiple violations "as early as April 16, 2009." These references to OLS's violations as early as April 16, 2009, incorporate OFC since OLS has been OFC's alter ego.

Relators have demonstrated that OFC is liable under a veil piercing or alter ego theory.[14] Federal common law should be applied in determining whether to pierce the corporate veil in a False Claims Act case.[15] First, the issue of corporate entity disregard is one for the jury.[16] Second, courts will apply the alter ego doctrine and hold a parent liable for the actions of its instrumentality in the name of equity, *inter alia*, when the corporate form is used as a "sham to perpetrate a fraud."[17] The doctrine applies if: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[18] At this stage, Relators do not have to *prove* these two prongs; however, Relators have indeed properly pleaded this doctrine and both prongs.

Regarding the first prong as it relates to control, OFC explains that it is a publicly-traded holding company that *conducts all of its operations (mortgage-related services) through its subsidiaries*, such as OLS. OFC's Motion to Dismiss at 2. Further, OFC directly or indirectly owns all of the outstanding stock of OLS. FAC Ex. 9 at 31, F-9 (Dkt. No. 126-9). Additionally, as stated

---

[14] Note that OFC does not argue that the alter ego theory does not apply in this instance.
[15] *See, e.g.*, *U.S. ex res. Siewick v. Jamieson Science and Eng., Inc.*, 191 F.Supp. 2d 17, (D.D.C. 2002) (noting that "The government's interest in protecting itself from fraud, as embodied in the False Claims Act, makes it reasonable to apply the federal common law standard for piercing the corporate veil"). Delaware follows a similar approach to an alter ego analysis. *Geyer v. Ingersoll*, Del. Ch., 621 A.2d 784, 793 (1992) ("A court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.").
[16] *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 n.5 (5th Cir. 1980) (citing *Byrd v. Blue Ridge R. E. C., Inc.*, 356 U.S. 525 (1958)).
[17] *Bridas S.A.P.I.C. et al. v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988)).
[18] *Id*. (citation omitted).

in the FAC, OFC **signed** the 2009 SPA while OLS **serviced** the loans bound by the 2009 SPA and HAMP program. In paragraph 6 of the FAC, Relators state that OLS is wholly owned by and is an **alter ego** of OFC. In paragraph 8, Relators state that OLS and OFC have a great deal of overlap in terms of leadership and control. Relators then outline that overlap in significant detail. There is no doubt that Relators have met their heightened pleading burden under Rule 9(b) on this prong. Additionally, as stated in OFC's Motion to Dismiss, on April 16, 2009, OFC was the only part of "Ocwen" that (1) had entered into an SPA and (2) had become a participating servicer in HAMP. In OFC's Motion to Dismiss, OFC states: "Ocwen became a participant in HAMP on or about April 16, 2009, when OFC executed the 2009 SPA with Fannie Mae." OFC's Motion to Dismiss at 3. OFC did not state that "OFC" became a participant in HAMP on or about April 16, 2009; rather, "Ocwen" (collectively) became a participant on that date.[19]

Regarding the second prong as it relates to fraud, Relators have properly pleaded that OFC used its control over OLS to commit a "fraud or injustice" on the American taxpayers. In paragraphs 23 and 195 of the FAC, Relators state that OFC falsely represented that it was in full compliance with the requirements set forth in the 2009 SPA at the time that OFC induced the Government to approve its SPA. Additionally, throughout the entire FAC, Relators set forth multiple allegations that OFC used its control over OLS to commit fraudulent loan practices dating back to at least April 16, 2009 (for example, paragraphs 75, 87, 100, 111, 126, 164, and 195).

Accordingly, any reference to the alter ego OLS violating a law or regulation effectively incorporates OFC.[20] This would include the extremely detailed allegations set forth in paragraphs

---

[19] *See supra* FN 1 (further demonstrating how OLS has been OFC's alter ego).
[20] The same logic applies to OFC's point on page 5 of its Motion to Dismiss. The FAC alleges that the United States has paid OLS $1.777 billion in incentive payments under HAMP. OFC contends that the FAC does not allege that OFC received any payments from the Government; however, given that OFC has control of its alter ego OLS, payments received by OLS are received by OFC. *See supra* FN 1. Moreover the False Claims Act does not condition

75, 87, 100, 111, 126, 164, and 195. These paragraphs far exceed the pleading requirements set forth in Rule 9(b) and set forth multiple specific instances of Ocwen conduct contradicting OFC's April 2009 false compliance representation/covenants/warranties.[21]

OFC does not argue that the alter ego theory is inapplicable in this instance. Further, OFC argues that Relators have not stated the basis for their "information and belief" that OLS's conduct dated back to April 16, 2009. Relators thoroughly outline their allegations in the FAC and the Court previously held as such when denying OLS's Motion to Dismiss (otherwise, OLS's Motion to Dismiss would have been granted on the same grounds).

### B. If Needed, Relators Should Be Given a Chance to Re-Plead to Cure Any Pleadings Deficiencies or to Obtain Additional Discovery.

OFC's Motion to Dismiss should be denied for the aforementioned reasons; however, if the Court determines that Relators' FAC is defective, the Court should grant Relators a chance to promptly amend to cure any pleading defect.[22]

---

liability on receipt of payment by the Defendant, but rather upon the Defendant's FCA violations' materiality to a decision of the United States to make payment—whether to the Defendant or to someone else. *See* 31 U.S.C. § 3729(a)(1)(B).

[21] Relators also note that on December 19, 2014, OFC and OLS executed a Consent Order Pursuant to New York Banking Law § 44 where OFC and OLS stipulated that in 2010 and 2011, the multistate examinations of Ocwen and Homeward identified numerous and significant violations of New York State laws and regulations. *See* FAC ¶¶198-202; *see also* NY Consent Order, Exhibit D attached hereto.

[22] *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014) (per curiam) ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation . . . . The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief. (footnotes omitted)); Fed. Rules Civ. P. 15(a)(2) ('The court should freely give leave [to amend a pleading] when justice so requires.').") (citations omitted). In addition, if the Court decides to convert the motion to a motion for summary judgment, upon such notice pursuant to the Rules, Relators will file a Rule 56(d) motion and declaration, as Relators have not obtained discovery from OFC and OLS has failed to meet its production deadlines, and only recently began to produce responsive discovery. Relator has not had a sufficient opportunity to obtain discovery to refute any factual contentions of OFC.

## CONCLUSION AND PRAYER FOR RELIEF

Based on the foregoing, Relators respectfully request that the Court deny Ocwen's motion and grant Relators such other and further relief to which they are entitled.

Dated: August 27, 2015            Respectfully submitted,

By: */s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
M. Brett Johnson
johnson@fr.com
Texas Bar No. 00790975
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

William T. "Tommy" Jacks
Texas Bar No. 10452000
jacks@fr.com
David S. Morris
Texas Bar No. 24032877
dmorris@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

Catherine C. Jobe
Texas State Bar No. 10668280
cjobe@boydfirm.com
Samuel L. Boyd
Texas State Bar No. 02777500
sboyd@boydfirm.com
**BOYD & ASSOCIATES, PC**
6440 North Central Expressway
Suite 600
Dallas, Texas 75206-4101
(214) 696-2300 (Telephone)
(214) 363-6856 (Facsimile)

>Roger D. Sanders
>Texas State Bar No. 17604700
>roger.sanders@somlaw.net
>J. Michael Young
>Texas State Bar No. 00786465
>michael.young@somlaw.net
>**SANDERS, O'HANLONG, MOTLEY & YOUNG, PLLC**
>III South Travis
>Sherman, Texas 75090
>(903) 892-9133 (Telephone)
>(903) 892-4300 (Facsimile)

**Counsel for Relators/*Qui Tam* Plaintiffs**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 27, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

>*/s/ Chad B. Walker*
>Chad B. Walker