# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA <br> *Ex rel.* Michael J. Fisher, Brian Bullock and Michael Fisher, Individually and Brian Bullock, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> Ocwen Loan Servicing, LLC, et al. and Ocwen Financial Corporation, <br><br> Defendants. | § § § § § § § § § § § § § § § | CASE NO. 4:12-CV-543 <br><br><br><br><br> JURY TRIAL DEMANDED |
| UNITED STATES OF AMERICA <br> *Ex rel.* Michael J. Fisher and Brian Bullock, and Michael Fisher Individually, and Brian Bullock Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> HOMEWARD RESIDENTIAL, INC. f/k/a American Home Mortgage Servicing, Inc. ("AHMSI"), and Ocwen Financial Corporation <br><br> Defendants. | § § § § § § § § § § § § § § § § | CASE NO. 4:12-CV-461 <br><br><br><br><br> JURY TRIAL DEMANDED |

### RELATORS' MOTION FOR MODIFICATION OF PROTECTIVE ORDER [ECF # 98] TO ALLOW RELATORS ACCESS TO CONFIDENTIAL INFORMATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..iii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II. FACTUAL BACKGROUND ........................................................................... 3

III. ARGUMENT .................................................................................................... 4

    A. Relators Have Shown Good Cause to Allow the Parties To View Confidential Information ........................................................................................................ 4

    B. A Two-Tiered Protective Order Is Inappropriate Where the Parties Are Not Competitors and the Information Is Not Highly Sensitive or Trade Secrets……...5

    C. Relators' Proposed Modifications Are Sufficient To Address Defendants' Concerns ........................................................................................................ 10

IV. CONCLUSION AND REQUEST FOR RELIEF............................................. 11

CERTIFICATE OF CONFERENCE……………………………………………………….13

CERTIFICATE OF SERVICE…………………………………………………………...13

## TABLE OF AUTHORITIES

Cases

*A/R Roofing, L.L. C. v. Certainteed Corp.,* No. 05-1158-WEB, 2005 U.S. Dist. LEXIS 31145 (D. Kan. Dec. 5, 2005) .................................................................................................................. 6

*Arvco Container Corp. v. Weyerhauser Co.*, No. 1:08-CV-548, 2009 WL 311125 (W.D. Mich. Feb. 9, 2009) ........................................................................................................... 1, 4, 6, 9

*DeFazio v. Hollister, Inc.,* No. Civ–5–04–1358, 2007 WL 2580633, 2007 U.S. Dist. LEXIS 98147, 4-5 (E.D. Cal. Sept.5, 2007) ....................................................................................... 6, 9

*Encyclopedia Brown [Prods. v. Home Box Office]*, 26 F.Supp.2d *[606]* [(S.D.N.Y. 1998)] ........ 6

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). ..................... 4, 6

*In re Bank One Sec. Litig.*, 222 F.R.D. 582 (N.D. Ill. 2004) ...................................................... 6, 9

*In re Parmalat Sec. Litig.*, 258 F.R.D. 236 (S.D.N.Y. 2009) .......................................................... 6

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* No. 05 Civ. 2745 (JGK) (RLE), 2010 U.S. Dist. LEXIS 19510 (S.D.N.Y. Mar. 2, 2010) ..................................................................... 2

*Key Components, Inc. v. Edge Elec., Inc.,* No. 3:07–cv–224, 2008 WL 4937560 (E.D. Tenn. Nov.17, 2008 ............................................................................................................................. 6, 9

*Layne Christensen Co. v. Purolite Co*., 271 F.R.D. 240 (D. Kan. 2010) .............................. 4, 6, 7

*Martinez v. City of Ogden,* No. 1:08CV00087TCDN, 2009 U.S. Dist. LEXIS 12270, 2009 WL 424785 (D. Utah Feb. 18, 2009) ................................................................................................ 7

*Nemir v. Mitsubishi Motors, Corp.,* 381 F.3d 540 (6th Cir.2004) ................................................ 6

*Netquote, Inc. v. Byrd,* Civ. A. No. 07-cv-00630-DME-MEH, 2007 U.S. Dist. LEXIS 62292, 2007 WL 2438947 (D. Colo. Aug. 23, 2007) ............................................................................ 7

*Nycomed v. US, Inc., v. Glenmark Generics, Inc.,* No. 08-CV-5023 (CBA), 2010 U.S. Dist. LEXIS 20788 (E.D.N.Y. Mar. 8, 2010) .................................................................................. 6, 7

*Prescient Acquisition Group, Inc. v. MJ Publ'g Trus*t, 487 F.Supp.2d 374 (S.D.N.Y. 2007) ........ 6

*Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304, 1995 U.S. Dist. LEXIS 13111  (D. Kan. Aug. 31, 1995) ............................................................................................................................ 6

*Raytheon Co. v. Indigo Sys. Corp.,* No. 4:07-cv-109, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, (E.D. Tex. Sept. 17, 2008) ................................................................................ 2, 4

*Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994) ....................................... 5

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc*., 682 F. Supp. 20 (D. Del. 1988) ............................................................................................................................................. …6

*Softel, Inc., v. Dragon Med. & Scientific Commc'ns*, 118 F.3d 955 (2d Cir. 1997) ....................... 7

*Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 U.S. Dist. LEXIS 3968 (N.D. Ill. Jan. 31, 2005) .............................................................................................................................................. ..6, 9

*U.S. ex rel. Daugherty v. Bostwick Labs*., No. 1:08-CV-354, 2013 WL 3270355 (S.D. Ohio June 26, 2013) ............................................................................................................................. 4, 7

*Westbrook v. Charlie Sciara & Son Produce Co., Inc.,* No. 07–2657, 2008 WL 839745 (W.D. Tenn. Mar.27, 2008) ............................................................................................................... 7

**Other Authorities**

J. Christopher Carraway, Discovery Issues in Patent Cases, 982 PLI/Pat 419, 475-76 (Practicing Law Inst. Sept.-Nov. 2009) ....................................................................................................... 6

Restatement of Torts § 757 cmt. b at 5 (1939) .............................................................................. 7

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) ............................................................................................................ 4

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Relators Michael J. Fisher and Brian Bullock ("Relators") file this Motion for Modification of Protective Order [ECF # 98 in both cases] ("P.O.") To Allow Relators Access to Confidential Information, pursuant to the Court's instructions to the parties at the October 19, 2015 teleconference hearing.[1] Relators request that the Court modify the P.O. in the manner reflected in the redline version of the current P.O. attached hereto as **EXHIBIT A** and enter the proposed order [without redline] attached as **EXHIBIT B**.

It is essential for Relators to have access to the evidence in the cases, so that they can assist counsel in preparing for trial and make fully informed decisions based on the facts in the cases. Deprived of key evidence and the ability to discuss it with their counsel, Relators suffer a strategic disadvantage that their proposed modification would rectify. The typical practice in federal litigation, of course, is for the parties to access the evidence, unless a trade secret or the like would put a party at a *competitive business disadvantage*. Here, the parties are indisputably not competitors, and even if they were, Defendants have not identified any trade secrets or the like that warrant heightened protection and exclusion of Relators.

The parties were unable to reach an agreed modified protective order because Defendants insist upon a two-tiered order with a new Attorneys-Eyes-Only ("AEO") designation--"*the most restrictive possible protective order,* confining dissemination of discovery materials to attorneys and expert witnesses only."[2]

---

[1] Order, October 19, 2015, ECF # 192 [Homeward] at 2 ¶ 2, # 255, [Ocwen] at 2 ¶ 2. Relators have conferred with Defendants in good faith as instructed, to create a suitable modification allowing such access, but the parties' positions are irreconcilable.

[2] *Arvco Container Corp. v. Weyerhauser Co*., No. 1:08-CV-548, 2009 WL 311125, at 5 (W.D. Mich. Feb. 9, 2009) (denying request for AEO provision in prospective p.o.).

**Relators' Motion for Modification of Protective Order [ECF # 98]**     -1

An AEO designation is inappropriate here for the same reason the modification requested by Relators is appropriate—the parties are not competitors, so there is no risk of competitive harm from allowing Relators to view the evidence and no need for a two-tiered scheme. Defendants' proposal would effectively undo the purpose of the modification, by initially depriving Relators access to *all* of the information for 30 days, and then (in all likelihood) the lion's share of the evidence for much longer, with the discovery period in this case soon to close.[3] Defendants' proposal would also potentially engender serial motion practice concerning Defendants' inevitable bulk designation of the more than 2.7 million business documents they have produced to date (and, after months of delay, now, finally, continue to produce almost daily).[4]

Finally, in an attempt to address concerns raised by Defendants at the October 19 hearing, Relators' proposal includes language explicitly preventing Relators from discussing Protected Information with certain third parties not previously explicitly addressed in the P.O., in addition to other safeguards that attempt to allay Defendants' concerns as to certain types of use/disclosure[5] (although these restrictions are outside the norm). On the other hand, Defendants have proposed to Relators over-reaching additions that would prevent proper and legitimate communications, including improperly blocking efforts to obtain evidence from witnesses with knowledge of

---

[3] To date, virtually every page of every document produced by Defendants has been designated "Confidential," and substantial parts of deposition transcripts not touching on any proprietary, trade secret or competitive information. The documents do not, however, reflect or contain highly sensitive or trade secret information that could put Defendants at a competitive disadvantage. See Declaration of Chad Walker, ¶ 4. The Court's dispositive motion deadline is December 22, 2015, barely more than a month away, and final pretrial conference is set for April 13, 2016 and trial May 16, 2016. The mischief resulting from enabling the Defendants to designate all of the Confidential Information as Highly Confidential Information is transparent and highly detrimental to the pretrial progress of this case.

[4] Defendants have thus treated the P.O. like an "umbrella" P.O., requiring no god faith screening. Both umbrella and "blanket" P.O.s, which require the parties to screen and specifically designate protected information are susceptible to abuse, as Defendants have abused the P.O. here. *Raytheon Co. v. Indigo Sys. Corp.,* No. 4:07-cv-109, 2008 U.S. Dist. LEXIS 70934, 7-8, 2008 WL 4371679, (E.D. Tex. Sept. 17, 2008); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* No. 05 Civ. 2745 (JGK) (RLE), 2010 U.S. Dist. LEXIS 19510, 16-17 (S.D.N.Y. Mar. 2, 2010) (citing numerous authorities).

[5] Exhibits A, B at ¶¶ 12, 13.

**Relators' Motion for Modification of Protective Order [ECF # 98]** -2

relevant information—*e.g.*, borrowers harmed by Defendants' mortgage servicing practices. The Court should modify the P.O. to allow Relators access to the evidence in the case, as is the law in non-trade secret/non-competitor information cases.

## II.     FACTUAL BACKGROUND

On February 11, 2015 the Court granted[6] the Parties' Joint Motion for Entry of Protective Order[7] and entered the parties' single-tier protective order.[8] At a telephonic hearing on October 19, the parties discussed with the Court a modification to the P.O. to allow the parties to review confidential information. After the hearing, the Court issued the following Order:

> Relators request that the Court modify the current Protective Orders governing the cases to allow Relators the ability to view documents in the present cases. After hearing the argument of the Parties, the Court stated that it did not object to modifying the Protective Orders. The Parties should work together to create a suitable modification, and submit their changes to the Court.[9]

The parties exchanged proposals, but Defendants insist on a new, two-tiered structure that adds an AEO designation, and restrictions on Relators' lawful contacts with certain third parties, including potential borrower witnesses.[10] Because an AEO tier is only warranted in a case involving competitors or trade secret information, it is improper in this case. Further, such a two-tiered scheme would essentially circumvent the purpose of the modification and would likely engender serial motion practice and delay, potentially beyond even the discovery period in these

---

[6] Protective Order, ECF # 98 [both cases].
[7] ECF ## 95 [Ocwen], 96 [Homeward].
[8] ECF # 98 [both cases].
[9] Order, October 19, 2015, ECF # 192 [Homeward] at 2 ¶ 2, # 255, [Ocwen] at 2 ¶ 2.
[10] This proposal came to Relators' counsel via Bill Sushon e-mail, October 26, 2015, 4:46 p.m.. On October 27, Defendants filed their Motions "for Protective Order to Protect the Privacy of their Borrowers" (Homeward ECF # 196; Ocwen ECF # 259), seeking to address this issue piecemeal and asking the Court to require Relators to obtain advance permission to contact persons with knowledge relevant to this action, potential witnesses who are borrowers whose loans Defendants serviced. Relators anticipate that Defendants may also file their proposed modified P.O., in opposition to this Motion.

cases. Relators now file this opposed motion to modify the P.O. by allowing the parties to view confidential information, while maintaining the proper single-tiered structure.

### III. ARGUMENT

#### A. Relators Have Shown Good Cause to Allow the Parties to View Confidential Information.

The general rule in federal litigation is for the parties to have access to the evidence, permitting the parties provide insight and advice to counsel based on the evidence, and to assess the merits of the case in light of the evidence.[11] As such, "good cause" is required for entry of any protective order,[12] which requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[13] Defendants have made no such showing to support entry of a tiered protective order. Moreover, lawyers should not, absent unusual circumstances, be required to keep substantial evidence affecting the merits of the case hidden from their own clients.[14] For these reasons, the P.O. in this case should be modified to restore a level playing field and provide Relators with these basic rights of party litigants.

Relators' access to the evidence is particularly important in these cases because they have specialized knowledge concerning the mortgage servicing industry and can advise their attorneys concerning a variety of relevant issues, including the significance and meaning of mortgage servicing documents and other potential sources of evidence.[15] Relators are also at a strategic

---

[11] *See, e.g.*, *U.S. ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-CV-354, 2013 WL 3270355 at 2 (S.D. Ohio June 26, 2013)

[12] Fed. R. Civ. P. 26(c)(1)(G); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (citing *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[13] *Layne,* 271 F.R.D. at 244 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)).

[14] *See Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at *5 (E.D. Tex. Sept. 18, 2008) (Schell, J.) (granting in part motion to modify stipulated protective order's AEO clause, reasoning that movants "were entitled to distribute enough information so that the witnesses could be prepared for their depositions" and that the parties "must be allowed to confront the allegations made against them.").

[15] See Declaration of Michael J. Fisher, ¶ 2; Declaration of Brian Bullock, ¶ 2; *Arvco*, 2009 WL 311125 at 6.

disadvantage because Defendants have access to the overwhelming majority of the evidence that bears on the merits of the case, but Relators do not. Furthermore, the public policy underlying the False Claims Act (to deter government fraud), also militates in favor of narrow protective orders that facilitate uncovering of the truth.[16] Here, Relators have been deprived of their rights to help their counsel analyze and uncover relevant evidence as they prosecute their fraud case.

The general rule that parties are to have access to the evidence in their case, the need to rectify Relators' strategic disadvantage of being unable to assist or discuss with their counsel the evidence and relevant strategies, and the FCA and general public policy in favor of uncovering the truth, all constitute good cause for modifying the present order to allow all parties to view Protected Information.

> B. A Two-Tiered Protective Order Is Inappropriate Because the Parties Are Not Competitors and the Information Is Not Highly Sensitive or Trade Secrets.

Defendants would not agree to a proposed Protective Order allowing the parties to view the evidence unless the Court adds a second tier of protection that courts reserve for trade secret and competitive business information cases. Specifically, Defendants seek the addition of an AEO tier that would apply to "confidential proprietary and business information, trade secrets or personal borrower information." But an AEO tier is inappropriate here because the parties are not competitors and trade secret or other competitive business information is not in danger of being used against Defendants in the marketplace.[17]

The general rule is that parties have full access to the evidence in their case. However, courts sometimes issue a two-tiered order including a highly confidential AEO tier "[i]n cases

---

[16] *See, e.g.*, *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) ("The purpose of the False Claims Act, of course, is to discourage fraud against the government….")
[17] See Declaration of Michael J. Fisher, ¶ 3; Declaration of Brian Bullock, ¶ 3.

**Relators' Motion for Modification of Protective Order [ECF # 98]** -5

involving patent infringement and other claims relating to sensitive intellectual property."[18] An AEO-protective tier "is usually reserved for more sensitive information, such as trade secret information, future product plans, competitive pricing, customer lists, or competitive business financial information."[19] Thus, a party seeking a special tier of protection for certain materials must first establish that the information sought is a trade secret or similar highly-sensitive, proprietary information. Thereafter, it must also satisfy a burden that the disclosure of this information presents a genuine risk of serious harm such as showing the *competitive harm* that would befall it by virtue of the disclosure of the trade secrets[20] or other highly-sensitive proprietary information to a competitor.[21] Proof as to either element is lacking in this case. Hence AEO protection is not permitted as to the evidence in this case.

---

[18] *Layne Christensen Co. v. Purolite Co*., 271 F.R.D. 240, 246, 247 (D. Kan. 2010).

[19] *Layne,* 271 F.R.D. at 246-247 (citing J. Christopher Carraway, Discovery Issues in Patent Cases, 982 PLI/Pat 419, 475-76 (Practising Law Inst. Sept.-Nov. 2009) ("Most patent cases have two tiers, such as "Confidential" for most information and a more restrictive "Attorneys' Eyes Only" for more sensitive information, such as future product plans, technical trade secrets, and financial information.")).

[20] *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 U.S. Dist. LEXIS 3968, 2-3 (N.D. Ill. Jan. 31, 2005) (citing *In re Bank One Sec. Litig*., 222 F.R.D. 582 (N.D. Ill. 2004)); *see also Arvco Container Corp. v. Weyerhauser Co.*, No. 1:08-CV-548, 2009 WL 311125 at 5 (W.D. Mich. Feb. 9, 2009) (courts have recognized harm that indiscriminate use of "attorney's eyes only" protective orders can cause, particularly in absence of strong showing of probable competitive harm) (citing *Key Components, Inc. v. Edge Elec., Inc.,* No. 3:07–cv–224, 2008 WL 4937560, at * 3–5 (E.D. Tenn. Nov.17, 2008); and quoting *DeFazio v. Hollister, Inc.,* No. Civ–5–04–1358, 2007 WL 2580633, at *2, 2007 U.S. Dist. LEXIS 98147, 4-5 (E.D. Cal. Sept.5, 2007)); *Layne,* 271 F.R.D. at 246-247 (citing *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc*., 682 F. Supp. 20, 22 (D. Del. 1988); *Nycomed*, No. 08-CV-5023 (CBA), 2010 U.S. Dist. LEXIS 20788 at 20 (quoting *In re Parmalat Sec. Litig*., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (collecting cases); and citing *Encyclopedia Brown [Prods. v. Home Box Office]*, 26 F.Supp.2d *[606]* at 613 [(S.D.N.Y. 1998)] ("With respect to proof of competitive harm, vague and conclusory allegations will not suffice. Movant must prove that disclosure would work a clearly defined and very serious injury.") (internal quotations and citations omitted); *Prescient Acquisition Group, Inc. v. MJ Publ'g Trus*t, 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007) (court *sua sponte* required any party seeking to maintain court filings under seal to "identif[y] with particularity (i.e. page and line) the precise information . . . which the party maintains should be kept under seal [and] demonstrat[e] the particular need for sealing the information")); *Nemir v. Mitsubishi Motors, Corp.,* 381 F.3d 540, 550 (6th Cir.2004) (party moving for restrictive AEO designation must detail alleged harm it is likely to suffer absent the requested protection "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.") (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)).

[21] *Layne Christensen Co. v. Purolite Co*., 271 F.R.D. 240, 246, 247 (D. Kan. 2010).(citing *A/R Roofing, L.L. C. v. Certainteed Corp.,* No. 05-1158-WEB, 2005 U.S. Dist. LEXIS 31145, at *9 (D. Kan. Dec. 5, 2005) (finding that disclosure of information that could place one party at a disadvantage in the marketplace supported an attorney-eyes-only provision); *Pulsecard, Inc. v. Discover Card Servs*., No. 94-2304, 1995 U.S. Dist. LEXIS 13111, at *28 (D. Kan. Aug. 31, 1995) (finding that financial information and customer lists deserved attorney-eyes-only protection); *Netquote, Inc. v. Byrd,* Civ. A. No. 07-cv-00630-DME-MEH, 2007 U.S. Dist. LEXIS 62292, 2007 WL 2438947 (D.

To determine whether information constitutes a trade secret, courts have looked to the Restatement of Torts, which defines a trade secret as "any formula, pattern device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over *competitors* who do not know or use it."[22] "In other words, an assertion of confidential business information, without more, will not merit trade secret protection."[23] Parties must show for a genuine threat of *competitive harm.*

Furthermore, where the protection sought is only to prevent certain identified individuals from viewing the materials, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.[24] Here, the potential competitive harm must *outweigh* the likely prejudice to Relators that would result from granting AEO status to Defendant's documents, including "whether prohibiting the individual's access to the information would hamper the party's ability to assess the merits of the litigation."[25]

Defendants have not and cannot make a showing that giving Relators access poses a genuine risk of dissemination of the confidential information that will cause competitive harm, much less that the nonexistent harm outweighs the harm to Relators from being prohibited from accessing the lion's share of relevant evidence. Relator Fisher is semi-retired and has no current

---

Colo. Aug. 23, 2007) (finding attorney-eyes-only protections warranted where parties were direct competitors of each other); *Martinez v. City of Ogden,* No. 1:08CV00087TCDN, 2009 U.S. Dist. LEXIS 12270, 2009 WL 424785, at *2 (D. Utah Feb. 18, 2009) (commenting that "[a]ttorney's-eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor")).
[22] *Nycomed US, Inc. v. Glenmark Generics, Inc*., No. 08-CV-5023 (CBA), 2010 U.S. Dist. LEXIS 20788, 18-19 (E.D.N.Y. Mar. 8, 2010) (citing *Softel, Inc., v. Dragon Med. & Scientific Commc'ns*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b at 5 (1939)); *see also U.S. ex re. Daugherty v. Bostwick Labs*., No. 1:08-CV-354, 2013 WL 3270355, at * 2 (S.D. Ohio June 26, 2013); *Westbrook v. Charlie Sciara & Son Produce Co., Inc.,* No. 07–2657, 2008 WL 839745, at *4 (W.D. Tenn. Mar.27, 2008) (citing cases).
[23] *Nycomed*, 2010 U.S. Dist. LEXIS 20788 at 19-20.
[24] *Layne,* 271 F.R.D. 248-249 (footnotes omitted).
[25] *Dougherty*, 2013 WL 3270355, at * 2.

**Relators' Motion for Modification of Protective Order [ECF # 98]** -7

involvement in the mortgage servicing industry, with his previous involvement limited to helping borrowers navigate mortgage modification difficulties.[26] Relator Bullock does not currently work in the mortgage servicing industries, and at no time was he ever in an executive or policy making position that would give him the ability to use trade secret information to competitively advantage his employer.[27] Thus, even if Defendants have produced actual trade secrets (and they have not), there is no evidence Relators are or ever plausibly could be in a position to use that information in a way that would competitively harm Defendants or in a manner such that the Court's power of contempt cannot remedy.

Because there is no risk of even inadvertent competitive harm to defendants by mere virtue of Relators viewing the evidence, the only potential competitive harm would be the result of a blatant violation of the Protective Order (assuming Defendants have produced trade secrets or the like, which they have not). In this situation, the typical single-tiered P.O. and the Court's contempt powers are adequate protection for Defendants.

In addition to being unnecessary and unjustified, adding a second tier would likely create serial motion practice and further delay in this case. With an AEO designation available, Defendants have the tempting ability designate the great majority of the more than 2.7 million business documents they have produced to date with such a designation. Defendants likely do not wish to expend the time to individually review all 2.7 million documents to independently assess the designation, and doing so would be a massive and unnecessary expense when there is no actual risk of harm that is not cured by the Court's existing power. The danger of a mass AEO designation is particularly acute under Defendants' overly broad definition that includes the catchall term "business information," which would likely capture essentially every non-public document

---

[26] Fisher Decl., ¶ 3.
[27] Bullock Decl., ¶ 3.

**Relators' Motion for Modification of Protective Order [ECF # 98]**                                -8

Defendants have produced. But even a more narrowly tailored definition of AEO information could be subject to abuse or at least used as an occasion for delay. Given that the two-tiered structure is simply unnecessary for this case because there is no risk of competitive harm, this additional potential for delay built into a modified Protective Order should not be permitted in a case where Defendant has already exhibited a pattern of delay.

Defendants will no doubt argue that they would not abuse the ability to designate documents, but this is belied by Defendants' request to Relators that they retroactively designate as AEO for at least 30 days every single page of every single document they have produced to date, of which few, if any, contain a trade secret information or the like, and by Defendants' prior designation of virtually every document as "Confidential."[28] Defendants' proposal would essentially circumvent the modification by precluding Relators from reviewing the great majority of the evidence, and it will likely engender serial and complex motion practice concerning the designations. The Court's schedule does not permit the kind of delay that would be occasioned by this motion practice. Relators have already been prejudiced by not having access to the evidence that Defendants have enjoyed from the beginning of the case, and there is no justification for adding a "loophole" to the modified Protective Order that would essentially undo the change.

    **C.**    **Relators' Proposed Modifications Are More Than Sufficient To Address Defendants' Concerns.**

---

[28] Sweeping use of an AEO designation without a genuine threat or injury is a form of discovery abuse for which courts find a blanket modification of the p.o. and possible sanctions are appropriately considered. *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 U.S. Dist. LEXIS 3968, 2-3 (N.D. Ill. Jan. 31, 2005) (citing *In re Bank One Sec. Litig.*, 222 F.R.D. 582 (N.D. Ill. 2004)); *see also Arvco Container Corp. v. Weyerhauser Co.*, No. 1:08-CV-548, 2009 WL 311125 at 5 (W.D. Mich. Feb. 9, 2009) (courts have recognized harm that indiscriminate use of "attorney's eyes only" protective orders can cause, particularly in absence of strong showing of probable competitive harm) (citing *Key Components, Inc. v. Edge Elec., Inc.*, No. 3:07–cv–224, 2008 WL 4937560, at * 3–5 (E.D. Tenn. Nov.17, 2008); and quoting *DeFazio v. Hollister, Inc.*, No. Civ–5–04–1358, 2007 WL 2580633, at *2, 2007 U.S. Dist. LEXIS 98147, 4-5 (E.D. Cal. Sept.5, 2007)).

During the telephonic hearing, Defendants expressed concerns that Relators could share Protected Information with three groups of third parties—industry analysts, borrowers, and litigation funders. Sharing Protected Information with all three groups would likely be prohibited under the current version of the Protective Order and subject to the Court's contempt powers, but Relators nevertheless added provisions in the present proposal seeking to reasonably address Defendants' concerns.

With respect to industry analysts, Relators' proposed order prohibits not only sharing Protected Information with industry analysts, but also initiating any conversations with the analysts.[29] With respect to borrowers, Relators' proposal includes mandatory disclosures to borrowers that safeguard against the inadvertent misimpression that Defendants voluntarily disclosed borrower information.[30] With respect to litigation funders, in addition to prohibiting the sharing of Protected Information, Relators' proposal prohibits sharing any protected borrower information with any litigation funding entity which is or has a parent/subsidiary involved as a mortgage servicer in the HAMP program (*i.e.*, Defendants' direct competitors).[31]

With the other provisions of the P.O. prohibiting the disclosure of Protected Information and the Court's full-orbed contempt powers, these additional safeguards are more than adequate to address any of Defendants' legitimate concerns while allowing Relators their legally-provided for access to the evidence in the case. Furthermore, the blanket prohibitions on proper communications with these third parties that Defendants seek are unnecessary, and in the case of

---

[29] Relators of course have no control over whether an industry analyst initiates a conversation.

[30] Defendants have filed separate Motions "for Protective Order to Protect the Privacy of their Borrowers" (Homeward ECF # 196; Ocwen ECF # 259), seeking to prevent any communications with borrowers. Relators have responded; in short, the borrowers potentially have highly relevant information, and the current P.O. is sufficient to safeguard against any imagined possible impropriety in the course of communications with these potential witnesses. Chilling Relators' efforts to seek potential evidence from borrowers is plainly improper.

[31] The protected borrower information Defendants have produced is already designated as Confidential, so this is merely a "belt-and-suspenders" provision ensuring the borrower information would not result in a competitive disadvantage to Defendants.

**Relators' Motion for Modification of Protective Order [ECF # 98]** -10

borrowers, inappropriate attempts to prevent the uncovering of relevant evidence from witnesses with actual knowledge of relevant facts. The Court should not entertain further attempts by Defendants to circumscribe Relators ability to uncover the truth about the fraud at issue in this case.

## IV. CONCLUSION AND REQUEST FOR RELIEF

For these reasons, Relators respectfully request that the Court modify the Protective Order[32] in the manner reflected in the accompanying proposed order to provide for parties as well as the parties' counsel of record in this action (including attorneys for the United States) be deemed "qualified persons" to receive confidential information produced herein.

Dated: November 20, 2015

Respectfully submitted,

By: *s/ Catherine C. Jobe*
Texas State Bar No. 10668280
cjobe@boydfirm.com
Samuel L. Boyd
Texas State Bar No. 02777500
sboyd@boydfirm.com
Catherine C. Jobe
**BOYD & ASSOCIATES, PC**
6440 North Central Expressway
Suite 600
Dallas, Texas 75206-4101
(214) 696-2300 (Telephone)
(214) 363-6856 (Facsimile)

---

[32] ECF # 98.

Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
M. Brett Johnson
johnson@fr.com
Texas Bar No. 00790975
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

William T. "Tommy" Jacks
Texas Bar No. 10452000
jacks@fr.com
David S. Morris
Texas Bar No. 24032877
dmorris@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
(512) 472-5070 (Telephone)
(512) 320-8935 (Facsimile)

Roger D. Sanders
Texas State Bar No. 17604700
roger.sanders@somlaw.net
J. Michael Young
Texas State Bar No. 00786465
michael.young@somlaw.net
**SANDERS, O'HANLONG, MOTLEY & YOUNG, PLLC**
III South Travis
Sherman, Texas 75090
(903) 892-9133 (Telephone)
(903) 892-4300 (Facsimile)

**Counsel for Relators/*Qui Tam* Plaintiffs**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred by phone and email with counsel for Defendant in good faith regarding the matters at issue in this motion. Counsel for the parties were unable to resolve the issue relating to this Motion and filed the Motion pursuant to the Court's instruction in reference to the Scheduling Order procedure.

/s/ *Samuel L. Boyd*
Samuel L. Boyd

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 20, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Samuel L. Boyd*
Samuel L. Boyd