# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.* Michael J. Fisher, Brian Bullock and | § | |
| Michael Fisher, Individually and Brian | § | |
| Bullock, Individually | § | |
| | § | |
| v. | § | CASE NO. 4:12-CV-543 |
| | § | Judge Mazzant |
| OCWEN LOAN SERVICING, LLC, and | § | |
| OCWEN FINANCIAL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Ocwen Loan Servicing, LLC and Homeward Residential, Inc.'s Motion for Protective Order to Protect the Privacy of Their Borrowers (Dkt. #259). After reviewing the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

On August 20, 2012, Relator Michael J. Fisher ("Fisher" or "Relator") filed his original complaint under seal (Dkt. #1). In his original complaint, Fisher claimed that Ocwen Loan Servicing LLC's ("Ocwen") Home Affordable Modification Program ("HAMP") modifications violated the federal Truth in Lending Act ("TILA") because Ocwen did not provide a TILA notice of rescission in connection with its loan modifications. (*See* Dkt. #1).

On April 7, 2014, United States Magistrate Judge Don Bush ordered that the complaint be unsealed and served upon Defendant, after the United States declined to intervene (Dkt. #19). On August 1, 2014, Relator filed his Amended Complaint (Dkt. #23). On August 6, 2014, Relator filed his second Amended Complaint (Dkt. #29).

On November 13, 2014, Relators filed their third amended complaint (Dkt. #59). The third amended complaint incorporated allegations including: (1) Federal Housing

1

Administration ("FHA") violations, (2) Dodd-Frank Act violations, (3) Real Estate Settlement Procedures Act ("RESPA") violations, and (4) Texas, New York, and Massachusetts state law violations (Dkt. #59). It also added a new relator, Brian Bullock ("Bullock" or "Relator") (Dkt. #59).

On February 9, 2015, the parties filed their Joint Motion for Entry of Protective Order (Dkt. #95), which Judge Bush granted and entered on February 11, 2015 (Dkt. #98).

On April 17, 2015, Relators filed their Fourth Amended Complaint (Dkt. #126). This complaint added Ocwen Financial Corporation ("OFC") as a defendant, alleging that OFC made false representations to the government that induced the government to enter into Servicer Participation Agreements ("SPA") with OFC (*See* Dkt. #126). The Fourth Amended Complaint also claims that OFC is the parent company of Ocwen (Dkt. #126).

On October 27, 2015, Defendants Homeward Residential, Inc. and Ocwen Loan Servicing, LLC filed their Motion for Protective Order to Protect the Privacy of their Borrowers (Dkt. #259). On November 13, 2015, Relators filed their response (Dkt. #263). On November 23, 2015, Defendants filed their reply (Dkt. #270). On December 3, 2015, Relators filed their sur-reply (Dkt. #275).

**LEGAL STANDARD**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). However, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The "control of discovery is committed to the sound discretion of the trial court…" *Williamson v. United States Dep't of*

*Agric.*, 815 F.2d 368, 382 (5th Cir. 1987) (citing *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986)).

Likewise, "[t]he decision to enter a protective order is within the Court's discretion." *Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *2 (E.D. La. May 2, 2014) (citing *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995)). Federal Rule of Civil Procedure 26(c) states:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken…The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…

FED. R. CIV. P. 26(c). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978)).

## ANALYSIS[1]

Defendants request that the Court prohibit Relators from contacting Defendants'

---

[1] As a preliminary matter, in their response, Relators request that the Court take Judicial Notice of the New York Consent Order dated December 19, 2014. Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, or the facts of a particular case. It provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998). It is unclear to the Court whether Relators seek judicial notice of the fact that the New York Consent Order was issued, or whether they request the Court to take judicial notice of the contents of the New York Consent Order. The concept of Rule 201 is to take judicial notice of a fact whose accuracy cannot be reasonably questioned. Relators have not established that the findings in the New York Consent Order cannot reasonably be questioned, nor do they address the two prongs of the Rule 201(b) test and why they are met in the present case. Therefore, the Court does not believe it would be appropriate to take notice of the contents of the report. If Relators would like to admit certain statements from the New York Consent Order in a later dispositive motion or at trial, they will have to go through the proper evidentiary channels.

borrowers absent leave of Court, or alternatively, the Court should prescribe specific rules that govern Relators' contacts with Defendants' borrowers (Dkt. #259 at p. 1). Defendants assert that that documents produced to Relators include "their customers' nonpublic, personal information[;]" and therefore, Defendants' borrowers should be protected from potential communications with Relators (Dkt. #259 at p. 1). Relators assert that Defendants' motion should be denied for the following reasons:

> (1) Relators have not served discovery requests or subpoenas on the borrowers; (2) Relators are entitled to contact individuals with knowledge relevant to the claims and defenses in [this case]; (3) Defendants lack standing to seek protection on behalf of third parties; and (4) Defendants have not established the good cause necessary for entry of a protective order.

(Dkt. #263 at p. 1). Additionally, Relators allege that "privacy concerns raised by Defendants on behalf of the third-party borrowers are moot because Defendants already produced borrowers' private and confidential information." (Dkt. #263 at p. 1) (emphasis omitted).

First, Relators assert that Defendants lack standing to "raise the legal rights of the borrowers." (Dkt. #263 at p. 8). Under Rule 26(c), only "[a] party or any person from whom discovery is sought may move for a protective order." FED. R. CIV. P. 26(c)(1). Therefore, a party seeking a protective order "must show not only good cause but also—in the case of a party who objects to another party's discovery request aimed at a third party—standing to object on behalf of them." *Southard v. State Farm Fire & Cas. Co.*, No. CV 411-243, 2012 WL 1951652, at *2 n. 3 (S.D. Ga. Mar. 22, 2012) (citations omitted).

Courts have recognized "the general prohibition against litigants raising another person's legal rights." *Heller v. City of New York*, No. 06-cv-2842, 2008 WL 2965474, at *2 (E.D.N.Y. Apr. 11, 2008) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *overruled on other grounds by, Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). The Fifth

Circuit, in *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979), stated that a party to a lawsuit is without standing to attack a third party's "amenability to the compulsory process of the district court[,]" unless the party to the suit possesses the material requested…or asserts a "personal right or privilege with respect to the material." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2008 WL 2509367, at *1 (E.D. Tex. 2008) (quoting *Brown*, 595 F.2d at 967).

Defendants assert that they have standing because "they are obligated to protect their borrowers' information and the borrowers—who do not know that the Court ordered disclosure of their loan files and personal financial information—are unable to meaningfully protect themselves." (Dkt. #270 at p. 2). The Court finds that the issue of whether or not Defendants have standing to assert a claim regarding the disclosure of the borrowers' information is now moot as Defendants have already disclosed the borrowers' information to Relators.

However, even if Defendants could demonstrate that they possess standing in relation to Relators' contacting the borrowers about the present case, the Court finds that Defendants have not demonstrated a "particular and specific demonstration of fact" as to why a protective order is necessary as is required under the federal balancing test. *See In re Terra Int'l, Inc.*, 134 F.3d at 306; *see also Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015) (when resolving a discovery-based privacy objection, a federal court balances the need for the particular information against the claimed privacy right). In the present case, Defendants assert that a protective order is needed in order to keep from disclosing borrowers' non-public personal information because such disclosure "would improperly and unnecessarily compromise borrowers' privacy, especially when less invasive alternatives are available." (Dkt. #259 at p. 1). Defendants further assert that "[b]ecause of its sensitivity, such nonpublic personal information is shielded from discovery unless its relevance far outweighs the privacy interests of financial

institutions' customers." (Dkt. #259 at p. 4). However, Relators assert that no discovery is at issue in the present case; instead, "the only information Defendants purportedly seek 'to protect'—personal borrower information—has already properly been produced to Relators by Defendants (Dkt. #263 at p. 3). Relators further assert that they are entitled to contact the borrowers because the information is relevant to Relators' claims (Dkt. #263 at p. 3).

The Court agrees with Relators. Although federal courts recognize a general right to privacy that can be raised in response to discovery requests, "the right to privacy is not an absolute bar to discovery." *Shaw*, 206 F.R.D. at 301; *see Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011). "The resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right." *Shaw*, 206 F.R.D. at 301. In the present case, Relators are not seeking disclosure of the borrowers' confidential or private information, as that information has already been disclosed by Defendants.[2] Relators are not attempting to contact the individuals as persons with knowledge relevant to Relators' claims, but to discuss what knowledge, if any, they have of the facts relating to this litigation.

The Court also finds that Defendants have not met their burden to show a "particular and specific demonstration of fact" as to why a protective order is necessary. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 n. 16 (1981) (citing *In re Halkin*, 598 F.2d 176, 193 (1979) ("To establish 'good cause' for a protective order under [Rule] 26(c), '[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory

---

[2] Defendants cite numerous cases under the Gramm-Leach-Bliley Act (the "GLBA") for the proposition that a protective order is necessary to protect the borrowers' privacy information (*See* Dkt. #259 at pp. 3-5). However, the GLBA implements procedures for financial institutions to ensure the security and confidentiality of consumer records and information. *See* 15 U.S.C. § 6801(b) (2003). Even if the GLBA did apply in the present case, the statute allows a party to disclose non-public personal information—including contact information—in litigation under the statute's "judicial process" exception. *Marks v. Glob. Mortg. Grp., Inc.*, 218 F.R.D. 492, 496 (S.D. W. Va. 2003) (authorizing discovery under GLBA's "judicial process" exception); *see Choate v. State Farm Lloyds*, No. CIV. A. 3:03-CV-2111-M, 2005 WL 1109432, at *4 (N.D. Tex. May 5, 2005). Therefore, the Court finds that contacting the borrowers would not be improper under the GLBA, and is not prohibited by law.

6

statements…'")). Defendants assert that a protective order is necessary to prevent the disclosure of borrowers' nonpublic personal information (*See* Dkt. #259). Specifically, Defendant allege that Relators' previous contacts with other potential information sources have bred confusion as to whether Ocwen has authorized the Relators' contact (Dkt. #259 at p. 6 n. 12) ("Exs. A (telling former [Ocwen] employee that 'Ocwen gave us your contact information as someone who would potentially have information relevant to the case.')"). Therefore, Defendants assert that

> if Relators use the same approach with borrowers, inadvertent confusion could result in borrowers feeling pressure to discuss private information they would not ordinarily voluntarily disclose, which would harm Defendants' reputations with borrowers who would mistakenly believe that [Ocwen] and Homeward have wrongly disclosed their sensitive personal financial information.

(Dkt. #259 at p. 6). The Court finds that Defendants have only offered conclusory statements regarding how the "proposed contacts are likely to leave the borrowers feeling that their privacy has been compromised" and how "confusion could result in borrowers feeling pressure to discuss private information." (Dkt. #263 at p. 7) (quoting Dkt. #259 at p. 6). The Court finds that these statements are insufficient to establish the good cause necessary for entry of a protective order.

Additionally, Defendants assert that a protective order is necessary because "[t]here is no material benefit to Relators that could outweigh the potentially coercive nature of these communications. The additional information that Relators could obtain from borrowers about their financial affairs would be irrelevant to Relators' claims." (Dkt. #259 at p. 6). Additionally, Defendants allege that "the alleged borrower 'financial and emotional harm' Relators seek to investigate is irrelevant to the claim at issue—whether Defendants falsely certified to the government material complaint with various laws and regulations fraudulently to obtain HAMP incentive payments." (Dkt. #270 at p. 3). Relators assert that "the information Relators seek is relevant to Relators' claim and central to the dispositive issue at stake—whether Defendants

7

knowingly submitted false claims for payment to the government…" (Dkt. #275 at p. 2). Specifically, Relators allege that "the information sought by Relators is relevant to their claims and proportional to the needs in the cases. The borrowers likely can supplement and/or reveal new details in support of Relators' allegations, including details about Defendants' practices that did not comply with relevant laws or regulations…" (Dkt. #275 at p. 3). "Furthermore, borrowers' financial and other harm is relevant to the dispositive issue of whether Defendants submitted false claims for payment to the government because financial and emotional harm is a relevant element of an unfair act or practice under the Dodd Frank Act, which Relators allege in their Complaint that Defendants violated." (Dkt. #275 at p. 3).

The Court finds that the information that Relators could obtain from borrowers is relevant to the claims at hand. The borrowers have dealt with Defendants on loan modifications, and likely have first-hand knowledge about Defendants' practices. Additionally, the borrowers could have information relating to damages they suffered from Defendants' alleged unfair practices. Therefore, the Court finds that the information is relevant to Relators claims.

Additionally, the Court finds that the current Protective Order and the Court's contempt powers are sufficient to provide borrowers with the protection they need. The current Protective Order has provisions that protect borrower information from being disclosed or publicized in any way outside of the litigation. Specifically, the Protective Order states that protected information "shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, except as [in this litigation]" and "parties receiving Protective Information shall not under any circumstances sell, offer for sale, advertise, or publicize Protected Information." (Dkt. #98 at pp. 3, 5). Courts have agreed that such judicial restraints are sufficient. In *Washington v. Thurgood Marshall Acad.*, the court addressed the privacy rights

of third parties with a ruling, which required that "[d]ocuments produced and other information gleaned from the subpoena shall be used only in this case and not otherwise disclosed." 230 F.R.D. 18, 24 (D.D.C.), *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005). Likewise, in *Seattle Times Co. v. Rhinehart*, after an organization was compelled to produce a list of its donors, the trial court issued a protective order prohibiting the parties "publishing, disseminating, or using the [non-party] information in any way except where necessary to prepare for and try the case." 467 U.S. 20, 27 (1984). The same protective measures described in the cases are present in the current Protective Order.[3]

Alternatively, Defendants assert that "Relators should be ordered to comply with the limitations Defendants must observe when contacting their own customers, and to take other steps necessary to mitigate against unnecessary confusion and inadvertent disclosure." (Dkt. #259 at p. 8). Specifically, Defendants allege that Relators should be required to do the following:

> (1) [e]nsure that borrowers' information is only discussed with the borrower to whom the information belongs; (2) [c]ease communications with borrowers at any time upon request; (3) [c]omply with the same privacy and data security obligations imposed on Defendants; (4) [c]omply with Texas's information security requirements; (5) [a]uthenticate the identity of any person with whom they speak over the phone before discussing any borrower's personal information; (6) [a]void calling borrowers before 8 a.m. or after 9 p.m. local time or at borrowers' places of employment, sending letters suggesting the communications are from debt collectors, and implying that their communications with borrowers are vouched for or approved by the United States; (7) [o]nly contact borrowers by landline telephone or mail sent to a borrowers' primary residence, absent prior consent; (8) [l]imit the persons who can contact borrowers directly to counsel of record, counsel's employees, and Relators' retained experts…; (9) [d]isclose that borrowers' financial information may be discussed, that borrowers are not obligated to provide such information to Relators, that borrowers are not under

---

[3] As explained in the Court's Order regarding Relators' Motion for Modification of Protective Order [ECF #98] to Allow Relators Access to Confidential Information (Dkt. #267), Relators propose the changes to the Protective Order, including the following language: (1) requiring Relators to disclose that borrowers are not required to speak to them and (2) stating that the Defendants did not voluntarily disclose borrower information. The Court finds that these additional safeguards provide protection against any possible impropriety when contacting the borrowers.

9

investigation, and that Relators' communications with borrowers are made under a process intended to protect borrowers' privacy; (10) [a]void making any false or misleading representation regarding the status of [*Ocwen*] or *Homeward* or the United States' participation or intervention in the cases; (11) [p]romptly identify any borrowers with whom they have communicated and produce any documents provided to them by borrowers, and to treat as 'Protected Information' under the Protective Order any documents or information borrowers provide.

(Dkt. #259 at pp. 8-9). The Defendants' proposed procedures are not necessary to protect the borrowers' private information as the Court has already entered a Protective Order that protects the borrowers' nonpublic, private information. Additionally, the proposed procedures are not applicable to Relators because they govern (1) a financial institution's duty to safeguard its customers' financial information, and (2) protocols for debt collectors. The Court finds that the current Protective Order, combined with Relators' proposed changes as outlined in Relators' Motion for Modification of Protective Order [ECF #98] to Allow Relators Access to Confidential Information (Dkt. #267) ensure the protection of the borrowers' nonpublic, confidential information.

## CONCLUSION

It is therefore **ORDERED** that Ocwen Loan Servicing, LLC and Homeward Residential, Inc.'s Motion for Protective Order to Protect the Privacy of their Borrowers (Dkt. #259) is hereby **DENIED**.

**SIGNED this 22nd day of January, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE