# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| *Ex rel.* Michael J. Fisher, Brian Bullock and § | | |
| Michael Fisher, Individually and Brian § | | |
| Bullock, Individually § | | |
| § | | |
| v. § | | CASE NO. 4:12-CV-543 |
| § | | Judge Mazzant |
| OCWEN LOAN SERVICING, LLC; ET. AL. § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ocwen Loan Servicing and Ocwen Financial Corporation's Motion to Compel Production of Documents and Information (Dkt. #260). After reviewing the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

On August 20, 2012, Relator Michael J. Fisher ("Fisher" or "Relator") filed his original complaint under seal (Dkt. #1). In his original complaint, Fisher claimed that Ocwen Loan Servicing LLC's ("Ocwen") Home Affordable Modification Program ("HAMP") modifications violated the federal Truth in Lending Act ("TILA") because Ocwen did not provide a TILA notice of rescission in connection with its loan modifications. (*See* Dkt. #1).

On April 7, 2014, United States Magistrate Judge Don Bush ordered that the complaint be unsealed and served upon Defendant, after the United States declined to intervene (Dkt. #19). On August 1, 2014, Relator filed his Amended Complaint (Dkt. #23). On August 6, 2014, Relator filed his second Amended Complaint (Dkt. #29).

On November 13, 2014, Relators filed their third amended complaint (Dkt. #59). The

1

third amended complaint incorporated allegations including: (1) Federal Housing Administration ("FHA") violations, (2) Dodd-Frank Act violations, (3) Real Estate Settlement Procedures Act ("RESPA") violations, and (4) Texas, New York, and Massachusetts state law violations (Dkt. #59). It also added a new relator, Brian Bullock ("Bullock" or "Relator") (Dkt. #59).

On February 9, 2015, the parties filed their Joint Motion for Entry of Protective Order (Dkt. #95), which Judge Bush granted and entered on February 11, 2015 (Dkt. #98).

On April 17, 2015, Relators filed their Fourth Amended Complaint (Dkt. #126). This complaint added Ocwen Financial Corporation ("OFC") as a defendant, alleging that OFC made false representations to the government that induced the government to enter into Servicer Participation Agreements ("SPA") with OFC (*See* Dkt. #126). The Fourth Amended Complaint also claims that OFC is the parent company of Ocwen (Dkt. #126).

On November 2, 2015, Defendants filed their Motion to Compel Production of Documents and Information (Dkt. #260). On November 16, 2015, Relators filed their response (Dkt. #264). On November 25, 2015, Defendants filed their reply (Dkt. #272; Dkt. #273). On December 3, 2015, Relators filed their sur-reply (Dkt. #277).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…" FED. R. CIV. P. 26(b)(1). "[A] party claiming privilege must (1) expressly claim privilege and (2) sufficiently describe the nature of documents or communications, without revealing the protected information, such that the opposing party is able 'to assess the claim.'" *SmartPhone Tech. LLC*

*v. Apple, Inc.*, No. 6:10-cv-74 LED-JDL, 2013 WL 789285, at *1 (E.D. Tex. Mar. 1, 2013) (quoting FED. R. CIV. P. 26(b)(5)(A)).

"Work product is not a substantive privilege within the meaning of Federal Rule of Evidence 501." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 476 (N.D. Tex. 2004) (citing *Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969, at *4 (N.D. Tex. Sept. 22, 1998)); *see also Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Co.*, 123 F.R.D. 198, 201 (M.D.N.C. 1998) (work product doctrine is merely qualified immunity from discovery "not having an intrinsic value outside the litigation arena."). "The work product doctrine insulates a lawyer's research, analysis, legal theories, mental impressions, notes and memoranda of witness' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 510 (N.D. Miss. 1988) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). Therefore, the resolution of whether the documents fall within the work product doctrine is governed by federal law. *Navigant*, 220 F.R.D. at 476 (citing *Interphase*, 1998 WL 667969, at *4; *Varuzza by Zarrillo v. Bulk Materials, Inc.*, 169 F.R.D. 254, 257 (N.D.N.Y. 1996); *In re Combustion, Inc.*, 161 F.R.D. 51, 52 (W.D. La. 1995)).

Federal Rule of Civil Procedure 26(b)(3) provides that only documents prepared "in anticipation of litigation" are exempt from discovery. *Navigant*, 220 F.R.D. at 476; *see Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 WL 21653414, at *4 (E.D. Tex. July 9, 2003); *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003). Rule 26(b)(3) states in relevant part:

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.) But…those materials may be discovered if: (i) they are otherwise

> discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3)(A). The Fifth Circuit has stated that the protection "can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation was to aid in possible future litigation.'" *Mondis Tech., Ltd. v. LG Elec.*, Nos. 2:07-CV-565-TJW-CE, 2:08-CV-478-TJW, 2011 WL 1714304, at *2 (E.D. Tex. May 4, 2011) (quoting *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted)).

"The work-product doctrine provides qualified protection of documents and tangible things prepared in anticipation of litigation, including 'a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements.'" *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003) (quoting *Dunn*, 927 F.2d at 875). Rule 26(b)(3) distinguishes between opinion work product, which consists of the "mental impressions, conclusions, or legal theories of any attorney or other representative of a party," and ordinary work product, which consists of the "factual material prepared in anticipation of litigation or trial." *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D. Cal. 2003); *see, e.g., United States ex. rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 684 (S.D. Cal. 1996); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 401 (D. Colo. 1992).

"A party asserting work-product protection over particular materials must demonstrate: (1) the materials sought are tangible things; (2) the materials sought were prepared in anticipation of litigation or trial; (3) the materials were prepared by or for a party's representative." *Mondis Tech., Ltd.*, 2011 WL 1714304, at *2 (E.D. Tex. May 4, 2011) (citing *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2009)). "If a party proves that materials merit

work-product protection, the party seeking discovery must prove why those materials should still be produced." *Ferko*, 219 F.R.D. at 400 (citing *Hodges, Grant, & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). The party seeking production must establish (1) a substantial need of the privileged materials and (2) an inability to obtain the substantial equivalent of the material through other means without undue hardship. *Id.* However, "[a]bsent a waiver, opinion work product enjoys nearly absolute protection and is discoverable only in 'rare and extraordinary circumstances.'" *Bagley*, 212 F.R.D. at 559 (citing *Burroughs*, 167 F.R.D. at 683-84).

The work product doctrine is not "an umbrella that shades all materials prepared by a lawyer, or agent of the client[,]" and the doctrine excludes materials assembled in the ordinary course of business. *Elec. Data Sys. Corp.*, 2003 WL 21653414, at *4 (citing *El Paso Co.*, 682 F.2d 530). It also does not extend to the underlying facts relevant to the litigation. *Id.*; *see generally Upjohn*, 449 U.S. at 395-96.

Therefore, "[t]he threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial." *Elec. Data Sys. Corp.*, 2003 WL 21653414, at *4; *see Upjohn*, 449 U.S. at 400. The Fifth Circuit has described the standard for determining whether a document has been prepared in anticipation of litigation as follows:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the *primary motivating purpose* behind the creation of the document was to aid in the possible future litigation.

*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981) (citations omitted) (emphasis added). "Among the factors relevant to determining the primary motivation for creating a document are 'the retention of counsel and his involvement in the generation of the

document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Navigant*, 220 F.R.D. at 477 (quoting *Elec. Data Sys. Corp.*, 2003 WL 21653414, at *5 (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000)). If the document would have been created without regard to whether litigation was expected, it was made in the ordinary course of business and is not protected by the work product doctrine. *Id.*

## ANALYSIS

Defendants request that the Court compel Relators to do the following: (1) amend their responses to Interrogatories numbers seven and eight to identify Fisher's actual or potential investors; (2) produce all documents relating to Fisher's litigation-investing efforts, except those documents or portions of documents that are protected by attorney-client privilege or work protect protection that has not been waived; (3) log all withheld or redacted documents or information on an appropriately detailed privilege log; (4) provide all withheld or redacted litigation investing-related documents to the Court for *in camera* review to determine whether they are discoverable (Dkt. #260 at p. 3). Relators assert the following: (1) the material that Defendants seek is protected by the work product doctrine; (2) the privilege has not been waived; and (3) any documents that are not privileged are not relevant to the claims and defenses of the present action (Dkt. #264 at p. 1).

*In Camera Review*

As a preliminary matter, Defendants assert that the Court should compel Relators to "provide all withheld or redacted litigation investing-related documents to the Court for *in camera* review to determine whether they are discoverable." (Dkt. #260 at p. 14). Federal courts

maintain broad discretion in discovery maters. *United Inv'r Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006) (citing *Grand Oaks, Inc. v. Anderson*, 175 F.R.D. 247, 249 (N.D. Miss. 1997)). The election to conduct an *in camera* review of documents is well within the bounds of that discretion. *Id.*

When a party asserts a claim of privilege as to otherwise discoverable information, "the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5). Blanket assertions of privilege are unacceptable, as the Court and other parties must be able to test the merits of a privilege claim. *El Paso Co.*, 682 F.2d at 541 (citing *Davis*, 636 F.2d at 1044 n. 20). "The Federal Rules essentially dictate that when a party claims privilege, it must provide a log that provides facts that 'would suffice to establish each element of the privilege or immunity that is claimed.'" *SmartPhone Tech. LLC v. Apple, Inc.*, 2013 WL 789285, at *3 (quoting *Taylor Energy Co., L.L.C. v. Underwriters at Lloyd's London Subscribing to Ins. Coverage Evidence by Policy No. HJ109303*, No. 09-6383, 2010 WL 3952208, at *1 (E.D. La. Oct. 7, 2010) (internal citation omitted)).

At this time, the Court will not grant an *in camera* inspection where, as in the present case, there are potentially hundreds of communications that would require review. To inspect the documents at issue would constitute a great and unnecessary expenditure of judicial resources. However, the Court will enforce the terms of Rule 26.[1] Therefore, the Court orders

---

[1] In their motion to compel, Defendants also requested that the Court compel Relators to "log all withheld or redacted documents or information on an appropriately detailed privilege log[.]" (Dkt. #260 at p. 14). However, in their response, Relators asserted that Defendants' arguments are moot as "Relators will produce a new privilege log that lists the NDAs and separately itemizes each document and communication at issue…" (Dkt. #264 at p. 1 n. 1). The Court finds that Relators' second supplemental privilege log does not contain sufficient detail as to the privileged communications and to the identities of the sender/creator and/or addressees/recipient, and therefore, Relators should supplement their privilege log to provide sufficient information to allow the Defendants and the

Relators to revise their privilege log entries to include each element of a claimed privilege or protection so that the Court and Defendants are able to "test the merits" of the privilege itself. Relators should reveal the identity and position of all senders/creators and addressees/recipients. Additionally, Relators should provide a description of each communication or document withheld with sufficient detail that Defendants can readily assess the claim of privilege.

*Interrogatories Numbers Seven and Eight and Disclosure of Fisher's Litigation Funding Efforts:*

Defendants request that the Court compel Relators to amend their responses to Interrogatories numbers seven and eight to include the identity of Fisher's actual or potential investors (Dkt. #260 at p. 3). Defendants allege that the evidence is relevant "'because Relator [Fisher] will testify at trial, [and] Defendants are permitted to raise to the jury any challenges to [his] credibility' to examine '[t]he motivation of a witness in testifying, including [his] possible self-interest and any bias or prejudice against the defendant.'" (Dkt. #260 at p. 7) (citing *United States ex rel. Feldman v. Van Gorp*, No. 03 CIV 8135 (WHP), 2010 WL 2911606, at *5 (S.D.N.Y. July 8, 2010)). Specifically, Defendants assert that "[c]ommunications with investors and funding agreements showing that Fisher received upfront payments or a salary from litigation funders…would reflect an incentive to make unfounded allegations for personal gain." (Dkt. #260 at p. 7).[2]

Relators assert that the materials "are not relevant to any claim or defense in [the] cases and are therefore not subject to discovery." (Dkt. #264 at p. 7). Specifically, Relators allege that "[w]here a litigation funder will not be witness in a case or the amount a litigation funder may receive from a case does not touch on any issue in the case, documents relating to the litigation

---

Court make a decision as to whether the work product doctrines applies in the present case. *See SmartPhone Tech. LLC*, 2013 WL 789285, at *3.

[2] Defendants assert that the claims are relevant because Fisher "*may have* already financially benefited from his claims." (Dkt. #277 at p. 5). Defendant have offered no credible evidence to support their allegations; therefore, the Court will not rely on those assertions when making its relevancy determination.

funder…are simply not relevant or discoverable." (Dkt. #264 at p. 7) (*See Miller*, 17 F. Supp. 3d at 721-24) (emphasis omitted).

In regards to the answers to Interrogatories numbers seven and eight, the Court finds that Relators should amend their responses to include the identity of Fisher's actual or potential investors. Local Rule CV-26(d) states:

> The following observations are provided for counsel's guidance in evaluating whether a particular piece of information is "relevant to any party's claim or defense."
> (1) it includes information that would not support the disclosing parties' contentions;
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
> (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

L.R. CV-26(d). The Court finds that the names of the litigation funders are relevant to the claim under the Local Rules. Therefore, the Court finds that Relators should file amended responses to Interrogatories numbers seven and eight with the identities of their prospective and actual litigation funders.

Defendants also assert that Relators should be required to "produce all documents relating to Fisher's litigation-investing efforts, except those documents or portions of documents that are protected by attorney-work product that has not been waived[.]" (Dkt. #260 at p. 3). "Work-product protection is not automatically waived by disclosure to a third party." *Ferko*, 219 F.R.D. at 400 (citing *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 n. 2 (E.D. Tex. 1993) (citing *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). Disclosure of work product waives protection "only if work-product is given to adversaries or treated in a

manner that substantially increases the likelihood that an adversary will come into possession of the material." *Ferko*, 219 F.R.D. at 400-401; *Mondis Tech. Ltd.*, 2011 WL 1714304, at *2; *see High Tech Comm'n, Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 83614, at *8 (E.D. La Feb. 24, 1995) (citations omitted). The burden of proving waiver of work product protection falls on the party asserting waiver. *Ferko*, 219 F.R.D. at 401.

The common interest privilege is an extension of the attorney-client privilege and of the work product doctrine. *Ferko*, 219 F.R.D. at 401. It is not a separate privilege, in and of itself, but is instead "a rule of non-waiver." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014); *Ferko*, 219 F.R.D. at 401. It is "an exception to the general rule that the [] privilege is waived upon disclosure of privileged information with a third party." *Ferko*, 219 F.R.D. at 401 (quoting *Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D. Pa. 2000)).

"The common interest doctrine 'is rooted in criminal proceedings against multiple defendants.'" *Id.* (quoting *Power Mosfet Tech. v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. 2000) (citing *Chahoon v. Commonwealth*, 62 Va. 822 (1871))). The common interest doctrine has emerged in the in civil context "[b]ecause co-defendants or multiple defendants in civil cases have joint or similar objectives[.]" *Id.; see In re LTV Sec. Litig.*, 89 F.R.D. 595, 604 (N.D. Tex. 1981). In the civil context, the common interest privilege protects two types of communications:

> (1) communications between co-defendants in actual litigation and their counsel; and
> (2) communications between *potential* co-defendants and their counsel.

*Ferko*, 219 F.R.D. at 401 (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Therefore, the common interest doctrine protects communications between two parties or attorneys that share a common legal interest. *Id.*; *see Hodges, Grant & Kaufmann*, 768 F.2d at 721; *Aiken*, 151 F.R.D. at 623. "A shared rooting interest in the 'successful outcome of a

case'…is not a common *legal* interest." *Miller UK Ltd.*, 17 F. Supp. 3d at 732; *see In re Pacific Pictures Corp.*, 679 F.3d at 1129-1130 (9th Cir. 2012); *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 473 (S.D.N.Y. 2003).

The Court finds that the litigation funding information is protected by the work product doctrine. The litigation funding documents were between Fisher and actual or potential litigation funders and were used to possibly aid in future or ongoing litigation. The Fifth Circuit has held that "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation[,]" the documents are considered prepared in anticipation of litigation, and thus constitute work product (Dkt. #277 at p. 5) (citing *El Paso Co.*, 682 F.2d at 542).

Additionally, the Court finds that the protected information was not waived by disclosure to the possible or actual litigation funders. Litigation funders have an inherent interest in maintaining the confidentiality of potential clients' information, therefore, Relators had an expectation that the information disclosed to the litigation funders would be treated as confidential. The Northern District of Illinois observed in *Miller UK Ltd.*, that "[w]ith or without a confidentiality agreement, it could be argued that a prospective funder would hardly advance his business interests by gratuitously informing an applicant's adversary in litigation about funding inquiries from that company." 17 F. Supp. 3d 711, 738 (N.D. Ill. 2014). Additionally, at least one court in this district has held that the presence of a written nondisclosure agreement preserves work product protection. *Mondis Tech., Ltd.*, 2011 WL 1714304, at *3. Relators assert that work product protection was not waived because "[n]o documents regarding the [] cases were exchanged with any actual or potential litigation funder before an agreement

11

regarding non-disclosure was made with a litigation funder." (Dkt. #264, Exhibit A at p. 2). Therefore, although the documents were disclosed to third parties, the disclosures did not constitute a waiver because they were disclosed subject to non-disclosure agreements, and thus, did not substantially increase the likelihood that an adversary would come into possession of the materials. *See Mondis Tech., Ltd.*, 2011 WL 1714304, at *3. Therefore, the Court finds that the documents remain protected under the work product doctrine.

Finally, the Court finds that Defendants have not demonstrated a "substantial need" for the documents. Defendants assert that "any agreement under which Fisher has monetized unproved claims by receiving upfront payments or a stipend from litigation funders…would be relevant to the integrity of [Relators'] allegations." (Dkt. #272 at p. 4).[3] Relators assert "[w]here a litigation funder will not be a witness in a case or the amount a litigation funder may receive from a case does not touch on any issue in the case, documents relating to the litigation funder…are simply not relevant or discoverable." (Dkt. #264 at p. 7) (*See Miller*, 17 F. Supp. 3d at 721-24) (emphasis omitted).

The Court finds that Defendants have not demonstrated that a substantial need exists for the documents at this time. Defendants have not stated that they plan on calling or deposing any of the litigation funders, or that they plan to make an issue of the litigation funding agreements at trial. To the extent that Defendants wish to question Relators about their alleged bias in the case

---

[3] Defendants also assert that Fisher's discussions with investors during the statutory seal period are relevant to whether he violated the statutory seal. (Dkt. #272 at p. 3). Specifically, Defendants assert that Fisher's communications with non-party investors during the seal period would "potentially violate the seal, thereby likely subjecting Fisher to sanctions and cross-examination on this potential bad-faith conduct." (Dkt. #272 at p. 3). Relators assert that Fisher did not have any public communications regarding these cases and "did not disclose any information…to the public." (Dkt. #277 at p. 3). The Court finds that this argument should be denied at this time. The Court has ordered Relators to supplement their privilege log with the appropriate information. Should Defendants determine that they believe the statutory seal was violated, they can file the appropriate motion at that time.

they are free to do so, but Defendants have not presented any credible evidence that demonstrates their need for that documentation at this time.

## CONCLUSION

It is therefore **ORDERED** that Defendants Homeward Residential, Inc. and Owen Financial Corporation's Motion to Compel Production of Documents and Information (Dkt. #260) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Relators should produce their supplemental privilege log, which conforms to the Court's Order, to Defendants by no later than Tuesday, March 29, 2016.

It is further **ORDERED** that Relators should supplement their answers to Interrogatories numbers seven and eight, pursuant to the Court's Order, to Defendants by no later than Tuesday, March 29, 2016.

**SIGNED this 15th day of March, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE