# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| *Ex rel.*, Michael J. Fisher and Brian Bullock, | * | CASE NOS.   4:12-CV-543 |
| and Michael Fisher Individually, and Brian Bullock | * | 4:12-CV-461 |
| Individually, | * | |
| | * | JUDGE AMOS L. MAZZANT |
| Plaintiffs, | * | |
| | * | |
| OCWEN LOAN SERVICING, LLC and OCWEN | * | |
| FINANCIAL CORPORATION, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| ********************************************* | | |
| | * | |
| UNITED STATES OF AMERICA | * | |
| *Ex rel.*, Michael J. Fisher and Brian Bullock, | * | |
| and Michael Fisher Individually, and Brian Bullock | * | |
| Individually, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| HOMEWARD RESIDENTIAL, INC. f/k/a | * | |
| American Home Mortgage Servicing, Inc. | * | |
| and OCWEN FINANCIAL CORPORATION, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| ********************************************* | | |

**OCWEN LOAN SERVICING, LLC, OCWEN FINANCIAL CORPORATION, AND HOMEWARD RESIDENTIAL, INC.'S CONSOLIDATED EMERGENCY MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Richard A. Sayles
Texas State Bar No. 17697500
DSayles@swtriallaw.com
Darren P. Nicholson
Texas State Bar No. 24032789
DNicholson@swtriallaw.com
**Sayles Werbner PC**
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787


David Jeffrey Leviss
Washington, D.C. Bar No. 1003724
dleviss@omm.com
**O'Melveny & Myers LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5282
Facsimile: (202) 383-5414

Jonathan Rosenberg
New York State Bar No. 1992890
jrosenberg@omm.com
William J. Sushon
New York State Bar No. 2742328
wsushon@omm.com
Asher L. Rivner
New York State Bar No. 4283438
arivner@omm.com
**O'Melveny & Myers LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061


Elizabeth Lemond McKeen
California State Bar No. 216690
emckeen@omm.com
**O'Melveny & Myers LLP**
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: (949) 823-7150
Facsimile: (949) 823-6994

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

QUESTIONS TO BE CERTIFIED FOR APPEAL UNDER 28 U.S.C. § 1292(b) ..................... 5

ARGUMENT ........................................................................................................................... 5

I.   Each Of The Three Questions Presented Is A "Controlling Question Of Law" ............... 6

    A.   Each Question Is Purely Legal, And Reversal As To Any One Would Result In Dismissal Of Relators' False-Certification Claims As A Matter Of Law ........................................................................................................... 6

        1.   Whether Certification Of General Legal Compliance Can Support An FCA Claim ..................................................................................... 7

        2.   Whether The Existence Of Nonmonetary Remedies For Noncompliance Precludes A Finding That Compliance Is A Condition Of Payment .............................................................................. 7

        3.   Whether Continued Government Payment After Publicly Stating Its Belief That The Defendant Is Not In Compliance Precludes A False-Certification Claim .......................................................................... 7

    B.   Dismissal Of Relators' False-Certification Claim Would Either End Or Drastically Narrow These Proceedings .................................................................... 8

        1.   Other Certifications ....................................................................... 8

        2.   Fraudulent Inducement ................................................................. 10

II.   Immediate Appeal Of Each Question "Would Materially Advance The Ultimate Termination Of The Litigation" .................................................................................. 10

III.  There Is "Substantial Ground For Difference Of Opinion" Over The Questions Presented Here ............................................................................................................ 11

    A.   Whether Certification Of General Legal Compliance Can Support An FCA Claim ........................................................................................................ 11

    B.   Whether The Existence Of Nonmonetary Remedies For Noncompliance Precludes A Finding That Compliance Is A Condition Of Payment .................. 12

    C.   Whether Continued Government Payment After Publicly Stating Its Belief That The Defendant Is Not In Compliance Precludes A False-Certification Claim .................................................................................................................. 13

IV.   IMMEDIATE APPEAL IS PARTICULARLY APPROPRIATE HERE ....................... 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
   2015 WL 585641 (S.D.N.Y. Feb. 10, 2015)..................................................... 4, 15

*In re Denar Rests., LLC*,
   2010 WL 150161 (N.D. Tex. Jan. 14, 2010) ..................................................... 2, 5

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974)............................................................................. 5, 10

*Oasis Research LLC v. EMC Corp.*,
   2015 WL 5318119 (Sept. 11, 2015)...................................................................... 3

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ........................................................................... 6, 11

*U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*,
   104 F.3d 1453 (4th Cir. 1997) ............................................................................. 14

*U.S. ex rel. Bishop v. Wells Fargo & Co.*,
   __ F.3d __, 2016 WL 2587426 (2d Cir. 2016) ............................................... 10, 11

*U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*,
   543 F.3d 1211 (10th Cir. 2008) ...................................................................... 12, 13

*U.S. ex rel. Feldman v. City of N.Y.*,
   808 F. Supp. 2d 641 (S.D.N.Y.2011)................................................................... 12

*U.S. ex rel. Longhi v. U.S.*,
   575 F.3d 458 (5th Cir. 2009) ............................................................................... 10

*U.S. ex rel. Marcy v. Rowan Cos.*,
   520 F.3d 384 (5th Cir. 2008) ............................................................................... 12

*U.S. ex rel. Marshall v. Woodward, Inc.*,
   812 F.3d 556 (7th Cir. 2015) ............................................................................... 14

*U.S. ex rel. Maxwell v. Kerr-McGee Chem. Worldwide*, *LLC*,
   2006 WL 2869515 (D. Colo. Oct. 6, 2006) ......................................................... 10

*U.S. ex rel. Spicer v. Westbrook*,
   751 F.3d 354 (5th Cir. 2014) .......................................................................... 12, 13

*U.S. ex rel. Stephenson v. Archer W. Contractors, LLC*,
   548 F. App'x 135 (5th Cir. 2013) ................................................................... 11, 13

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
   625 F.3d 262 (5th Cir. 2010) ............................................................................... 12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
    735 F.3d 202 (5th Cir. 2013) ................................................................................. 12

*U.S. v. Sanford-Brown, Ltd.*,
    788 F.3d 696 (7th Cir. 2015) ................................................................................. 11

*U.S. v. Southland Mgmt. Corp.*,
    326 F.3d 669 (5th Cir. 2003) ................................................................................. 13

## <u>STATUTES</u>

28 U.S.C. § 1292(b) ............................................................................................. passim

## <u>OTHER AUTHORITIES</u>

16 Wright & Miller, *Federal Practice & Procedure* ............................................... 6, 10

## PRELIMINARY STATEMENT[1]

Relators' FCA claim is principally predicated on the assertion that, when they entered HAMP and annually thereafter, the Companies falsely certified that they were in compliance with "all applicable laws."  The Companies argued that summary judgment was required as a matter of law based on three undisputed facts, each of which (the Companies contended) requires judgment as a matter of law:  (i) the SPA requires initial and subsequent annual certification of compliance with "all applicable Federal, state and local laws," Ex. A at 12; (ii) the SPA allows Treasury to address noncompliance with nonmonetary remedies, *id.*; and (iii) the government has *never* permanently withheld payment from the Companies (or any other servicer) despite publicly expressing its view that the Companies (and other servicers) violated both state and federal law, and even continuing HAMP payments after Relators made the government aware of the evidence supporting their claims in this case.

This Court denied summary judgment on legal grounds:

- The Court declined to hold that an FCA false-certification claim fails as a matter of law when it is based on a broad, general certification of compliance with "all applicable laws."  *E.g.*, Ex. A at 13 n.4.

- The Court held that the government's option to invoke nonmonetary remedies for noncompliance does not, at least as a matter of law, require concluding that legal compliance is a prerequisite to payment under HAMP.  Ex. A at 10–12.

- The Court concluded that Relators' false-certification claim may proceed even though the government has continued making HAMP payments to the Companies (and other servicers) despite (i) repeatedly and publicly announcing its belief that the Companies

---

[1] Abbreviated terms are defined as in the Companies' Motion for Summary Judgment. *See* Ocwen Dkt. No. 292 at 1 n.1.  The Court's order denying that motion is attached as Exhibit A to this brief.  The Fifth Circuit's opinion in *In re Trinity Industries, Inc.*, No. 14-41067 (5th Cir. Oct. 10, 2014), is attached as Exhibit B.  All docket citations are to the *Ocwen* case docket unless otherwise noted.  All emphasis is added and all citations and quotations are omitted unless otherwise noted.

(and other servicers) were not in compliance, and (ii) the fact that Relators have presented it with the evidence supporting their claims.[2]  Ex. A at 13.

The Companies respectfully seek an expedited determination that the Court's order should be certified for interlocutory appeal under 28 U.S.C. § 1292(b), because each of the preconditions for immediate appeal under that provision are satisfied:[3]

*First*, the summary judgment order involves three "controlling question of law."  28 U.S.C. § 1292(b).  That order turns on three purely legal question: (i) whether a certification of compliance with "all applicable laws" is too broad to support an FCA false-certification claim; (ii) whether a certification of legal compliance can support an FCA false-certification claim when the government has the ability to redress noncompliance with remedies other than withholding payment, and (iii) whether a false-certification claim fails as a matter of law when the government has never withheld a single payment under HAMP despite repeatedly and publicly stating its belief that the contractor was not in compliance (and continuing payment even after the relator has provided the government with evidence of the alleged fraud).  A legal question is "controlling" if it "could materially affect the outcome of the case."  *In re Denar Rests., LLC*, 2010 WL 150161, at *12 (N.D. Tex. Jan. 14, 2010).  Here, a successful appeal as to any one of these questions would end the case, or, at the very least, significantly narrow it.

_____

[2] This Court denied in one paragraph the Companies' motion for summary judgment as to Relators' FHA-based claims—which were based on alleged false certifications of compliance with "all applicable HUD FHA regulations, handbooks, Mortgagee Letters, Title I Letters, and policies," Dkt. 339 at 23—for "the same reasons" as it denied the Companies' motion as to Relators' HAMP-based claims.  Ex. A at 14.  Thus, while this brief (like the Court's opinion) focuses on the HAMP-based claims, the analysis applies equally to Relators' FHA-based claims.

[3] The Companies respectfully request expedited treatment of this motion, as there are only five weeks remaining before trial.  The issues presented in this motion are case determinative and, at a minimum, bear directly on the presentation of the evidence before the jury.  Defendants therefore request that the Court order Relators to respond within 4 days and allow the parties 2 days each to file any reply or sur-reply so that this matter be expeditiously decided and preparation for trial (if any) can continue.

*Second*, immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  A successful appeal as to any of the three questions would either avoid or significantly simplify not one but *two* trials (i.e., *Ocwen* and *Homeward*).

*Third*, there is "substantial ground for difference of opinion" as to each of the three questions.  That standard is satisfied when reasonable jurists could disagree with the Court's conclusion.  Here, reasonable jurists *have* disagreed with the Court's conclusion:

- Numerous courts, including the Fifth Circuit, have held a certification of general compliance with "all applicable laws" cannot support an FCA false-certification claim.  *See infra* at 11.

- The Fifth Circuit has held that the government's choice between monetary and nonmonetary remedies for noncompliance precludes holding that compliance is a prerequisite to payment.  This Court distinguished that precedent on the ground that it applies in implied, not express, false-certification cases.  But there is substantial ground for difference of opinion as to whether that distinction makes a difference as to this legal question.  And other courts—including the Tenth Circuit—have adopted the Companies' position.  *See infra* at 12–13.

- The Fifth Circuit has rejected express false-certification cases when the government has continued payment despite knowledge of noncompliance, even when the government's knowledge of noncompliance was only partial, and even when that partial knowledge was *pleaded*, not proven.  Thus, to the extent this Court held that the government's "full knowledge" of the alleged noncompliance is required, there is substantial ground for difference of opinion as to that question.  Moreover, Relators have cited no case in any court that has allowed an FCA case to continue when, as here, the government has continued making payments *even after the relator provided the government with its evidence of alleged fraud.  See infra* at 13–14.

Interlocutory appeal is, of course, the exception, not the rule.  *See Oasis Research LLC v. EMC Corp.*, 2015 WL 5318119, at *3–4 (Sept. 11, 2015).  But it is warranted here.  Not only is each § 1292(b) statutory precondition satisfied, but allowing the Fifth Circuit to decide these purely legal issues now could avoid two highly complex and expensive trials.  Moreover, as the Fifth Circuit explained in denying an eve-of-trial mandamus petition in *U.S. ex rel. Harman v. Trinity Industries, Inc.*, No. 12-cv-89 (E.D. Tex.), a case that Relators have repeatedly argued

presents the same legal issues presented here,[4] "the litigation stakes—the potential for a $1 billion adverse judgment—are unusually high."  Ex. B at 1.   And while the Court was unwilling to issue a writ of mandamus, "certification for interlocutory appeal" was "a course that seems prudent."  *Id.* at 2.  The same "unusually high" litigation stakes are implicated here, and interlocutory appeal of the purely legal questions presented would similarly be prudent.

Interlocutory appeal is also appropriate here because this Court's opinion will have a significant impact beyond this case.  Under this Court's order, every HAMP servicer that has failed to comply with the law and HAMP guidelines—i.e., every major HAMP servicer—is potentially subject to FCA suit on a false-certification theory.  Indeed, Relator Fisher has *already* brought HAMP-related FCA complaints against other servicers, including (i) a recently unsealed case before this Court, (ii) a case recently transferred to this Court from the Southern District of New York, and (iii) a second Southern District of New York case that Fisher has moved to transfer to this Court.[5]  Because the "controlling question[s] of law" here will "have precedential value for a large number of cases," interlocutory appeal is appropriate because "authoritative guidance from the [court of appeals] will help resolve those actions quickly and consistently."  *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015).

The Court should certify its summary judgment order for immediate appeal.

---

[4] Dkt. 339 at 32–33; Dkt. 383 at 1, 6–7, 14; Dkt. 408 at 2.

[5] *See U.S. ex rel. Fisher v. OneWest Bank FSB*, 4:14-cv-00833-ALM (E.D. Tex.); ECF No. 20, *U.S. ex rel. Fisher v. Bank of Am., N.A.*, No. 1:13-cv-01913 (S.D.N.Y. Aug. 6, 2014) (motion to transfer case to E.D. Tex.); *U.S. ex rel. Fisher v. Wells Fargo Bank, N.A.*, Dkt. 1:13-cv-01460-LTS (S.D.N.Y. June 17, 2014); *id.* (Docket entry of May 20, 2016) (case transferred to E.D. Tex.).

## QUESTIONS TO BE CERTIFIED FOR APPEAL UNDER 28 U.S.C. § 1292(b)

1.  Can a general certification of compliance with "all applicable laws" provided at the outset of the multi-year program and annually thereafter, but not in connection with any payment request of submission, support an FCA false-certification claim?

2.  Does the government's ability to redress legal noncompliance with remedies other than withholding payment compel the conclusion, as a matter of law, that compliance is not a prerequisite to payment under the government program?

3.  Does the undisputed fact that the government has continued to make payments under a government program after repeatedly and publicly stating its belief that the contractor has violated the law, and even after the relator has presented the government with the evidence supporting his claims,  preclude an FCA false-certification claim as a matter of law?

## ARGUMENT

Section 1292(b) provides that immediate appeal is authorized from a non-final order if the district court concludes that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Thus, immediate appeal is appropriate if the following three preconditions are satisfied:

*First*, the order must present "a controlling question of law," 28 U.S.C. § 1292(b), i.e., a question whose resolution "could materially affect the outcome of the case."  *In re Denar Rests.*, 2010 WL 150161, at *12.  A successful appeal need not dispose of the litigation completely; it is enough that the question is "serious to the conduct of the litigation, either practically or legally." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc).

*Second*, immediate appeal is appropriate if it "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), such as by avoiding or narrowing trial.  *See* 16 Wright & Miller, *Federal Practice & Procedure* § 3930 ("Wright & Miller").

*Third*, there must be "substantial ground for difference of opinion," 28 U.S.C. § 1292(b)—e.g., when appeal "involves an issue over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion on the issue."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

Each of those statutory preconditions is satisfied here.

## I.      Each Of The Three Questions Presented Is A "Controlling Question Of Law"

### A.      Each Question Is Purely Legal, And Reversal As To Any One Would Result In Dismissal Of Relators' False-Certification Claims As A Matter Of Law

As this Court explained, "[u]nder the express false certification theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds."  Ex. A at 9.[6]  Thus, to prevail here, "the [Relators] must prove that the claimant knowingly falsely certified that it complied with a statute or regulation of which compliance is a condition for Government payment," *id.* at 8—i.e., that the Companies knowingly and falsely certified compliance with all applicable laws, and that compliance with all applicable laws is a condition of payment under HAMP.  Each of the three questions presented here is a "controlling question of law," because each is a pure question of law, and appellate reversal as to any question will result in dismissal of Relators' false-certification claims.

---

[6] The Companies have preserved the argument that Relators' theory is better viewed as implied, not express, certification.  Dkt. 292 n.18.

1.     *Whether Certification Of General Legal Compliance Can Support An FCA Claim*

Relators' principal FCA claim is based on the Companies' initial and annual certification that they were "in compliance with . . . all applicable Federal, state and local laws . . . ." Ex. A at 12.[7] Thus, if the Companies were correct that a certification of compliance with "all applicable laws" cannot, as a matter of law, support an FCA false-certification claim, then Relators' false-certification claim would have to be dismissed.

2.     *Whether The Existence Of Nonmonetary Remedies For Noncompliance Precludes A Finding That Compliance Is A Condition Of Payment*

The Companies' position is that the existence of nonmonetary governmental remedies for noncompliance compels the conclusion, as a matter of law, that compliance is not a condition of payment.  *See* Dkt. 292 at 30–31.  This Court rejected that *legal* theory, Ex. A at 11, but there is no factual dispute—the government has (and has repeatedly exercised) remedial options for noncompliance other than withholding payment. Ex. A at 12.  If the Companies were to prevail on their legal theory, Relators' false-certification claims would fail as a matter of law.

3.     *Whether Continued Government Payment After Publicly Stating Its Belief That The Defendant Is Not In Compliance Precludes A False-Certification Claim*

So too with the Companies' independent contention that the government's continued payment despite its belief that the Companies were not in compliance requires rejecting Relators' false-certification claim as a matter of law.  See Dkt. 292 at 31–34.  The Court rejected the Companies' legal argument, Ex. A at 13, but the relevant facts are not in dispute—the government repeatedly stated its belief that the Companies and other servicers were not in compliance.  For example:

---

[7] The Court's opinion quotes the Initial SPA.  Treasury altered the language in the subsequent annual certifications, but not in a manner material to the question presented here.  *See* Dkt. 292 at 17 n.9.

- Assistant Treasury Secretary Massad testified before Congress in January 2011 that "servicer performance" under HAMP "has been abysmal." Dkt. 292.2, Ex. Y, at 35.

- In its April 2011 MHA-C assessment, Treasury concluded that Ocwen "has areas requiring substantial improvement." Dkt. 292.2, Ex. S.

- In December 2013, CFPB stated in a press release at the time of its settlement with the Companies that "[w]e believe that Ocwen [and Homeward] *violated federal consumer financial laws* at every stage of the mortgage servicing process." Dkt. 292.3, Ex. DD at 2.

- Indeed, Relators provided the government with the material evidence supporting their currently constituted complaints beginning in 2014 and as late as December 2015.[8]

Yet the government never withheld a single incentive payment from Ocwen (or permanently withheld incentive payments from any servicer). *See* Dkt. 292 at 22–23. If the Companies' legal position were correct, Relators' false certification claim would fail as a matter of law.

### B.    Dismissal Of Relators' False-Certification Claim Would Either End Or Drastically Narrow These Proceedings

Relators argued in opposition to summary judgment that even if their claim based on the "all applicable laws" certification were dismissed, this suit would continue based on (i) several other allegedly false representations made in the initial and annual compliance certifications, and (ii) Relators' fraudulent-inducement claim. That is both wrong and irrelevant

#### 1.    *Other Certifications*

In opposition to the Companies' summary judgment motion, Relators contended that additional initial and annual representations beyond the "all laws" certification supported their false-certification claim. Dkt. 339 at 4–7, 18. As the Court recognized, the Companies did not separately mention those certifications in their summary judgment motion, because Relators' complaints *do not rely on those certifications* as a basis for their FCA claims. Ex. A at 7 n.1.[9]

---

[8] Dkt. 292 at 21–22 & nn.14–15, 32; Dkt. 369.2, Ex. A ¶ 204.

[9] The relevant paragraph (¶ 195) of the Ocwen complaint describing their FCA claims provides in full (*see also* Homeward Compl. ¶ 141):

But in any event, even if these other certifications *could* support Relators' false-certification claims, at least the second and third questions presented here encompass claims based on those certifications, and Relators' claims would thus fail as a *matter of law* if the Court's order were successfully appealed, for two reasons.  *First*, the government has exactly the same nonmonetary remedial options for violations of these other representations as for the "all laws" representation.  Ex. A at 12.  *Second*, Treasury has continued making incentive payments after (i) repeatedly stating its belief that the Companies had violated these additional covenants, *see* Dkt. 369 n.28, and (ii) Relators provided the government with their evidence that these certifications were false.  Thus, if the Companies were to prevail on appeal at least as to the second or third question presented, Relators' false-certification claims based on these additional certifications would also fail.[10]

_____

OFC falsely certified/represented in its original, standard form SPA on or around April 16, 2009, that it was in full compliance with *all relevant laws, including but not limited to TILA*, at the time of its execution of the SPA and Financial Instruments.  OLS falsely certified, again, on or about September 9, 2010, and annually thereafter, that they were in *full compliance with all relevant laws, including but not limited to TILA*, at the time of their execution of the Amended and Restated Commitment to Purchase Financial Instrument and SPAs.  *By these individual material false certifications and false statements*, OFC fraudulently induced the United States, through its Financial Agent, to enter the SPA Agreement with OLS and to purchase the overarching Financial Instrument.  OLS made false Subsequent Certifications to the United States annually, on or about June 1, 2010, June 1, 2011, June 1, 2012, and June 1, 2013 in the form set forth in the SPA, that it [past] and would [future] comply with *all relevant laws, including but not limited to TILA and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices*, when it had not done so.  OLS has however, knowingly failed to provide required TILA/Regulation Z notices of right of rescission to borrowers for the secured additional advances, both in and out of the HAMP program, and failed to comply with the state laws set forth above.

[10] The additional, vague representations Relators cite would also likely fail under the first question presented, but the dispositive effect of the second and third questions is self-evident.

2.    *Fraudulent Inducement*

The Companies also did not separately discuss Relators' fraudulent-inducement claim

separately in their summary judgment motion, Ex. A at 7 n.1, because that claim is based entirely

on the proposition that the Companies' "all laws" certification was false, Ocwen Compl. ¶ 195,

Homeward Compl. ¶ 141, so that claim would fail for the same reason as their principal false-

certification claim.  *See* Dkt. 369 at 14–15; *U.S. ex rel. Bishop v. Wells Fargo & Co.*, __ F.3d __,

2016 WL 2587426, at *12–18 (2d Cir. 2016).  But in any event, even if that claim were to

survive, dismissal of the false-certification claims would *drastically* narrow this case, because

Relators' claims would be limited *only* to the truth or falsity of the Companies' initial SPA

certifications, Ocwen Compl. ¶ 195; Homeward Compl. ¶ 141, with Relators required to prove

(among other things) that the Companies never intended to comply with their contractual

obligations at the time they entered into the SPA.  *See U.S. ex rel. Longhi v. U.S.*, 575 F.3d 458,

468 n.5 (5th Cir. 2009).  Thus, the question whether Relators' false-certification claims can

survive is "serious to the conduct of the litigation, practically [and] legally," *Katz*, 496 F.2d at

755, which satisfies the "controlling question of law" precondition.

**II.    Immediate Appeal Of Each Question "Would Materially Advance The Ultimate Termination Of The Litigation"**

Immediate appeal of any of the questions presented here will "materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "The possibility of avoiding trial

proceedings, or at least curtailing and simplifying pretrial or trial," 16 Wright & Miller § 3930, is

a recognized basis for granting immediate appeal.  For example, one court certified a question in

an FCA case "where a ten-day jury trial currently scheduled [less than two months later] may be

avoided."  *U.S. ex rel. Maxwell v. Kerr-McGee Chem. Worldwide, LLC*, 2006 WL 2869515, at

*8 (D. Colo. Oct. 6, 2006).  And here, immediate appeal, if successful, would avoid not one but

*two* trials—one in the *Ocwen* case and one in the *Homeward* case.  Indeed, expert discovery is still open in both cases, and the *Homeward* trial is not scheduled until November 2016.[11]

A successful immediate appeal would thus preclude the need for significant and expensive trial preparation on the part of the parties, not to mention conserve judicial resources. At the very least, immediate appeal would drastically narrow the issues to be tried, which is enough to satisfy this precondition.[12]

### III.    There Is "Substantial Ground For Difference Of Opinion" Over The Questions Presented Here

Finally, there is "substantial ground for difference of opinion" as to each question presented.  28 U.S.C. § 1292(b).  That standard is satisfied when an order "involves an issue over which reasonable judges might differ."  *Reese*, 643 F.3d at 688.  Here, reasonable judges *have* differed over each question presented.

#### A.    Whether Certification Of General Legal Compliance Can Support An FCA Claim

There is substantial ground for difference of opinion as to whether a broad certification of compliance with "all applicable laws" can support an FCA false-certification claim:  Numerous courts—including the Fifth Circuit—have rejected as a matter of law false-certification claims based on materially identical certifications.[13]

---

[11] Dkt. 389.

[12] *See Reese*, 643 F.3d at 688 ("neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation.").

[13] *See U.S. ex rel. Stephenson v. Archer W. Contractors, LLC*, 548 F. App'x 135, 137–38 (5th Cir. 2013) (express certification of compliance "with all 'Federal, state, and municipal laws, codes and regulations applicable to the performance of the work'" does not support FCA claim because if a claim based on such "boilerplate language stating that the company would follow the law" were allowed, "the FCA would here become a general enforcement device for traffic infractions"); *Bishop*, __ F.3d __, 2016 WL 2587426, at *7–8 (certification of compliance with "any laws or regulations" is "too broad to give rise to a claim under the FCA"); *U.S. v. Sanford-*

- 11 -

**B.** **Whether The Existence Of Nonmonetary Remedies For Noncompliance Precludes A Finding That Compliance Is A Condition Of Payment**

The Fifth Circuit has held that when the government can remedy legal noncompliance *either* by withholding payment *or* through nonmonetary remedies, legal compliance is not a prerequisite for payment as a matter of law.[14]  The Court distinguished those cases because it concluded that they involved implied, not express, certification theories.  Ex. A at 11.  Yet as the Court also recognized, the underlying question under *either* type of theory is the same, i.e., whether "the claimant knowingly falsely certified that it complied with a statute or regulation *of which compliance is a condition for Government payment*."  *Id.* at 8.[15]  Indeed, as a matter of logic, "compliance with" specified statutes or regulations *cannot* be a "*prerequisite*" for payment under the contract," *Steury II*, 735 F.3d at 205, when (as here) the government is authorized to remedy noncompliance through nonmonetary remedies.  There is thus substantial ground for difference of opinion whether the distinction between express and implied theories matters here.

Moreover, other circuit precedents have agreed with the Companies' position.  For example, the Tenth Circuit in *Connor* held that compliance is not a condition of payment when (as here, Ex. A at 12) "the government has . . . created a complex monitoring and remedial

---

*Brown, Ltd.*, 788 F.3d 696, 711 (7th Cir. 2015) (it is "unreasonable … to hold that an institution's continued compliance with the thousands of pages of federal statutes and regulations incorporated by reference into the [SPA] are conditions of payment for purposes of liability under the FCA"); *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008) (similar); *U.S. ex rel. Feldman v. City of N.Y.*, 808 F. Supp. 2d 641, 652 (S.D.N.Y.2011) (similar).

[14] *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 366 (5th Cir. 2014); *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) ("*Steury I*"); *U.S. ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 389–90 (5th Cir. 2008).

[15] *See also U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 205 (5th Cir. 2013) ("*Steury II*") (explaining in express certification case that Fifth Circuit precedent requires "the dismissal of false-certification claims (*implied or express*) when a contractor's *compliance with* federal statutes, regulations, or contract provisions was not a 'condition' or 'prerequisite' for payment under a contract." (quoting *Steury I*, 625 F.3d at 268)).

- 12 -

scheme that ends . . . payments only as a last resort." *Conner*, 543 F.3d at 1222.  In those

circumstances, "[i]t would . . . be curious to read the FCA, a statute intended to protect the

government's fiscal interests, to undermine the government's own regulatory procedures."  *Id.*

So too here.  Certainly, reasonable jurists could agree with the Tenth Circuit on this point.

      C.      **Whether Continued Government Payment After Publicly Stating Its Belief That The Defendant Is Not In Compliance Precludes A False-Certification Claim**

      The Fifth Circuit has on several occasions held that an express false certification claim

cannot proceed when the government has continued paying despite knowledge of

noncompliance.  *See U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669, 677 (5th Cir. 2003) (en

banc); *Westbrook*, 751 F.3d at 366; *Stephenson*, 548 F. App'x at 137.  The Court appears to have

held that these cases require the Companies to show "that Treasury had full knowledge of the

alleged violations or the extent to which Defendants were allegedly falsely certified within the

SPA or the annual certifications."  Ex. A at 13 & n.3.  There is substantial ground for

disagreement over whether government payment can result in dismissal only when the

government has "full knowledge" of the alleged violation.

      For example, the Court has twice dismissed express false-certification claims as a matter

of law based on only *partial* government knowledge of noncompliance gleaned *from the

pleadings*.  *See Westbrook*, 751 F.3d at 366 (dismissal was required when the pleadings showed

that the government exercise nonmonetary remedies in "some" cases); *Stephenson*, 548 F. App'x

at 137–38 (dismissal required because the government knew that "*some* trucks" violation

applicable regulations, yet continued making payments).  Nor was "full knowledge" required in

*Southland*.  The Court relied on the government's conclusion that "the property had fallen below

the *decent, safe, and sanitary* standard" with which the defendant had certified compliance,

without mention of the extent of the government's knowledge.  *Southland*, 326 F.3d at 677.

But in all events, even if "full knowledge" by the government were as a general matter required to compel dismissal based on continued government payment, there is at the very least substantial ground for difference of opinion over whether an FCA false-certification claim can proceed when the government continues making payment *after Relators have provided the government with evidence supporting the alleged fraud.* As late as December 2015, Relators swore that they presented the government with "a disclosure statement of material evidence and information related to and supporting the[ir] allegations."[16]  Relators have never even attempted to explain how an FCA case can proceed when the relator makes the government aware of the material allegations supporting its claim, but the government continues making payments under the contract.  Indeed, in *Trinity*—which Relators have repeatedly cited as presenting the same question as is at issue here, *see supra* n.4—the Fifth Circuit noted that even an extraordinary eve-of-trial mandamus petition presented "a close case," citing *Southland* and approvingly citing the Eighth Circuit for the proposition that no FCA claim could lie "when an agency continues to make payments after receiving notice of the false statements."  Ex. B at 1–2.[17]  Relators have certainly never cited a case allowing an FCA claim to proceed in those circumstances, so there is substantial ground for difference of opinion as to this question.

## IV.    Immediate Appeal Is Particularly Appropriate Here

Immediate appeal is particularly warranted here for two additional reasons:

---

[16] Dkt. 292 at 21–22 & nn.14–15, 32; Dkt. 369.2, Ex. A ¶ 204.

[17] *See also U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563 (7th Cir. 2015) (dismissing FCA claim, in part, because "[t]o this day, the government continues to pay for and use the T2 sensor"); *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1462 n.3 (4th Cir. 1997) (dismissing FCA claim, in part, because "at the time of trial, well after all of [the relator's] allegations had been repeatedly probed, [the government] continued to fund UAB under the grant").

*First*, as the Fifth Circuit recently recognized in the *Trinity* case, certification for immediate appeal is "a course that seems prudent" when, as here, "the litigation stakes—the potential for a $1 billion adverse judgment—are unusually high," Ex. B at 1–2, especially when the viability of the claims turns on purely legal issues.

*Second*, the impact of the Court's holding is that mortgage servicers may be liable under the FCA for certifying compliance with the law when they in fact were not complying.  And as the Companies' summary judgment motion set forth in detail, the government has repeatedly recognized that the top HAMP servicers generally were not in compliance with the law and HAMP guidelines.  Dkt. 292 at 20–21.  Thus, because the Court's decision recognizes a basis to challenge the conduct of major HAMP servicers, other HAMP servicers "will undoubtedly be sued in follow-on actions."  *Flo & Eddie, Inc.*, 2015 WL 585641, at *2.  Indeed, Relator Fisher has *already* filed several HAMP-related FCA actions against other servicers (including a complaint recently unsealed before this Court, another recently transferred to this Court, and a third with a motion to transfer here pending).  *See supra* at 4.  Judge McMahon recently certified an interlocutory appeal in similar circumstances, recognizing that when (as here) a "controlling question of law" may "have precedential value for a large number of cases," interlocutory appeal is appropriate because "authoritative guidance from the [court of appeals] will help resolve those actions quickly and consistently."  *Flo & Eddie, Inc.*, 2015 WL 585641, at *2.  Particularly because the Court's decision is based on a contested interpretation of Fifth Circuit precedent, immediate appellate guidance on the important questions presented here is warranted.

## CONCLUSION

For the foregoing reasons, this Court should certify the three questions presented here for immediate appeal under 28 U.S.C. § 1292(b).

Respectfully submitted this 26th day of May, 2016.

Richard A. Sayles
Texas State Bar No. 17697500
DSayles@swtriallaw.com
Darren P. Nicholson
Texas State Bar No. 24032789
DNicholson@swtriallaw.com
**Sayles Werbner PC**
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787

David Jeffrey Leviss
Washington, D.C. Bar No. 1003724
dleviss@omm.com
**O'Melveny & Myers LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5282
Facsimile: (202) 383-5414

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg
New York State Bar No. 1992890
Jrosenberg@omm.com
William J. Sushon
New York State Bar No. 2742328
wsushon@omm.com
Asher L. Rivner
New York State Bar No. 4283438
arivner@omm.com
**O'Melveny & Myers LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Elizabeth Lemond McKeen
California State Bar No. 216690
emckeen@omm.com
**O'Melveny & Myers LLP**
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: (949) 823-7150
Facsimile: (949) 823-6994

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Emergency Motion For Certification Of Interlocutory Appeal Under 28 U.S.C. § 1292(B) was served upon all counsel of record, via the Court's CM/ECF system and electronic mail, this 26th day of May, 2016.

*/s/ Jonathan Rosenberg*
Jonathan Rosenberg


**LOCAL RULE CV-7 CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7, I certify that I and Relators' counsel Brett Johnson personally conferred on May 26, 2016, and we were unable to reach agreement on the subject of this motion.

*/s/ Darren Nicholson*
Darren Nicholson