# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher | § | |
| Individually, and Brian Bullock, and Brian | § | |
| Bullock, Individually | § | |
| | § | CIVIL ACTION NO 4:12-CV-543 |
| v. | § | Judge Mazzant |
| | § | |
| OCWEN LOAN SERVICING, LLC and | § | |
| OCWEN FINANCIAL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Relators' Emergency Motion for Privilege Determination Regarding West Virginia Banking Documents (Dkt. #434). After reviewing the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

The above-referenced case is a *qui tam* action under the False Claims Act (the "FCA"), in which the United States has declined to intervene. Relators assert their FCA claims based upon false certifications of compliance allegedly made as part of the Treasury Department's Home Affordable Modification Program ("HAMP"). In particular, with respect to this motion, Relators allege that the loan servicing, modifications, and loss mitigation practices of Defendants Ocwen Loan Servicing, LLC ("OLS") and Ocwen Financial Corporation ("OFC," collectively with OLS, "Ocwen" or "Defendants") failed to comply with federal and state law, in violation of Ocwen's certifications of compliance and applicable servicing laws. Relators also allege that Ocwen made other representations for which the West Virginia Division of Financial Institutions (the "WVDFI") findings are relevant, including representing that Ocwen performed its services as a "well-managed operation," taking steps to ensure it had a sufficient capacity to comply with

1

HAMP requirements, and complying with various documentation requirements (Dkt. #434 at p. 3).

The documents at issue fall into two categories: (1) communications to Ocwen from the WVDFI; and (2) Ocwen's internal documents discussing and/or relating to the WVDFI's findings and supervision. The subject matters of these documents focus primarily on two reports issued by the WVDFI, one in 2007 and the other in 2012. Relators assert that the reports at issue address pervasive weaknesses in Ocwen's overall organization, and specifically, address its lack of control and lack of compliance with West Virginia's law and regulations protecting borrowers (Dkt. #434 at p. 1).

The WVDFI was created by the West Virginia Legislature in 1901. (Dkt. #434 at p. 4) (citing "About," WEST VIRGINIA DIVISION OF FINANCIAL INSTITUTIONS (available at http://ww.dfi.wv.gov/about/Pages/default.aspx)). The WVDFI describes itself as "a state regulatory agency responsible for the oversight of [West Virginia]'s financial services industry in order to foster and promote a sound and dynamic climate for the citizens and businesses of West Virginia." (Dkt. #434 at p. 4). Thus, the WVDFI is a state regulatory force that seeks to protect borrowers in West Virginia from harm from financial services companies (Dkt. #434 at p. 4).

On multiple occasions, the WVDFI has communicated with and investigated Ocwen for failing to comply with West Virginia's laws protecting borrowers. Specifically, for example, on April 30, 2007, the WVDFI sent a letter to Ocwen's Chief Executive Officer, Ron Faris ("Faris") (Dkt. #434 at p. 4; *see* Dkt. #434, Exhibit B). The letter related to WVDFI's review of Ocwen (Dkt. #434 at pp. 4-5). In the letter, the WVDFI informed Ocwen that it had identified various violations of West Virginia law that required "management's immediate attention." (Dkt. #434 at p. 5; Dkt. #434, Exhibit B at p. 8). Additionally, in December 2012, the WVDFI's

investigation culminated in the assessment of $1,918,000 in civil penalties against Ocwen for non-compliance with the state's laws (Dkt. #434 at p. 3; *see* Dkt. #434, Exhibit A).

In addition to the direct communications between Ocwen and WVDFI, Ocwen generated internal documents and communications based on the discussions between the WVDFI and Ocwen regarding the WVDFI investigations and discussions, and seeks to claw back those documents as being privileged (Dkt. #434 at p. 6).

On April 6, 2015, the Court entered the parties' Agreed Clawback Order, which states that

> [p]ursuant to Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(d), the Receiving Party hereby agrees to return, sequester, or destroy any assertedly Privileged Information disclosed or produced by a Producing Party or Disclosing Party upon request, subject to the Receiving Party's *right to "promptly present the information to the Court under seal for a determination of the claim."*

(Dkt. #120 at p. 2) (emphasis added).

On December 29, 2015, Relators attached, as exhibits to its motion for partial summary judgment, the examination reports issued by the WVDFI in December 2012 (Dkt. #299, Exhibit 12). On January 21, 2016, after completing its investigation into privilege issues, Defendants informed Relators that they had intended to withhold and log all reports and communications regarding the WVDFI and Maryland Department of Labor, Licensing, and Regulation (the "MDLLR") examinations pending those regulators providing their consent to disclosure (Dkt. # 452 at p. 5). On that same day, Defendants wrote both the WVDFI and MDLLR[1], informing them that (1) Defendants had endeavored to withhold their confidential documents pending the regulators' consent; (2) the Court had declined to recognize New York's state banking

---

[1] On February 2, 2016, the MDLLR informed Defendants' counsel that it consented to production of its confidential documents (Dkt. #452 at p. 6). After it consented, Defendants began producing those documents on February 11, 2016 (Dkt. #452 at p. 6).

3

examination privilege; and (3) Defendants had inadvertently produced the confidential documents attached to Relators' summary judgment motion (Dkt. #452 at pp. 5-6). Defendants then asked whether the entities would "consent to their [confidential information's] production, or require[] that Ocwen assert th[e] privilege on behalf of the [regulator]." (Dkt. #452 at p. 6).

On March 4, 2016, Defendants completed their privilege log, which contained 204 WVDFI documents, 96 of which were withheld based of West Virginia Code § 31A-2-4(b)(1) (Dkt. #452 at p. 6). Defendants contacted the WVDFI several times regarding the privilege issue, and on May 19, 2016, the WVDFI emailed Defendants stating that after "carefully consider[ing]" the issue, the WVDFI had concluded that "neither the WVDFI nor its licensee, Ocwen Loan Servicing, LLC, [could] 'consent' to disclosure of the subject information." (Dkt. #452 at pp. 6-7). Furthermore, the WVDFI asserted that § 31A-2-4(b)(1) "provides clear and unequivocal codification of an important multifaceted public policy," as "[c]onfidentiality of the subject information…encourages cooperation and compliance with the regulatory process and facilitates the open and unfettered exchange of information between financial institution and their regulators…." (Dkt. #452 at p. 7). On May 20, 2016, Defendants informed Relators of the WVDFI's decision, and requested under the Agreed Clawback Order that Relators destroy their copies of eight document families containing inadvertently-produced WVDFI information (Dkt. #452 at p. 7).

On May 24, 2016, Relators filed their Emergency Motion for Privilege Determination Regarding West Virginia Banking Documents (Dkt. #434). On May 27, 2016, Defendants filed their response (Dkt. #452). On May 30, 2016, Relators filed their reply (Dkt. #455). On June 1, 2016, Defendants filed their sur-reply (Dkt. #471).

**ANALYSIS**

Relators seek an expedited determination that: (1) Ocwen's attempt to claw back documents has "no basis" in case law or statute; and (2) the documents may be fairly discovered and utilized in the case (Dkt. #434 at p. 1). Defendants assert that West Virginia Code § 31A-2-4(b)(1) should apply to bar disclosure of the documents, and as the documents were inadvertently disclosed to Relators during document production, those documents should be clawed back to preserve privilege (Dkt. #452 at p. 1).

Ocwen[2] asserts that the documents are protected by West Virginia Code § 31A-2-4(b)(1), which provides that WVDFI's "records relating to the financial condition of any financial institution and any information contained in the records shall be confidential for the use of the commissioner and authorized personnel of the Division of Banking." The statute also provides that "[n]o person shall divulge any information contained in any records except as authorized in this subdivision in response to a valid subpoena or subpoena duces tecum issued pursuant to law in a criminal proceeding or in a civil enforcement action brought by the state or federal regulatory authorities." W. Va. Code Ann. § 31A-2-4(b)(1).

Federal Rule of Evidence 501 provides that the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless federal law provides otherwise. Rule 501 also makes it clear that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." When a case involves a privilege that is "not existent in the [federal] common law but enacted by the (state) legislature based on unique considerations of government policy," the Fifth Circuit has

---

[2] Relators contend in their reply, that Ocwen lacks standing to assert the bank examination privileges, because "the bank examination privilege belongs solely to the…banking regulatory entities, and may not be asserted by third parties on behalf of the banking agencies." *Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997); (Dkt. #455 at p. 1 n. 1). The Court agrees; however, as Relators have filed their motion seeking a privilege determination, the Court will address the merits of the WVDFI's privilege.

5

recognized that the state law privilege may be applied after "balancing the policies behind the privilege against the policies favoring disclosure." *Am. Civil Liberties Union v. Finch*, 638 F.2d 1336, 1343 (5th Cir. Unit A 1981) (citation omitted). Therefore, although this is a federal question case in which Relators' claim arise out of the FCA, the Court will apply the *Finch* balancing test to determine whether the West Virginia Code § 31A-2-4(b)(1) should be applied in this case.

In *Finch*, the Fifth Circuit found that the balancing test is applied by answering two questions: "(1) whether the fact that the [state] courts would recognize the privilege itself creates good reason for respecting privilege in federal court, regardless of our independent judgment of its intrinsic desirability; and (2) whether the privilege is intrinsically meritorious in our independent judgment." *Finch*, 638 F.2d at 1343; *see also Fairchild v. Liberty Indep. Sch. Dist.*, 466 F. Supp. 2d 817, 821 (E.D. Tex. 2006).

> The first question almost always is answered in the negative. "That the courts of a particular state would recognize a given privilege will not often itself justify a federal court in applying that privilege." Courts should apply state privileges when there is no substantial cost to federal substantive policy, but there is almost always such a cost, as privileges hinder the "special federal interest in seeking the truth." When federal questions or issues play a predominant role in the litigation, the federal interest in very strong.

*Fairchild*, 466 F. Supp. 2d at 822 (internal citations omitted). The second question requires the Court to consider four conditions in order for the Court to recognize the privilege: (1) whether the communications originated in a confidence that they will not be disclosed; (2) whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties; (3) whether the relation is one in which the opinion of the community ought to be sedulously fostered; and (4) whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit gained for the correct disposal of the litigation.

6

*Finch*, 638 F.3d at 1344; *Fairchild*, 466 F. Supp. 2d at 822-23.

As to the first question[3], the Court finds that it should be answered in the negative. Relators' complaint alleges numerous violations of federal law and regulations. There is a strong federal interest in FCA cases for seeking the truth, and in this case, federal law plays a predominant role in the litigation. Therefore, the first *Finch* factor question is answer "no."

The first factor of the four-part test regarding the second question requires that the communications originate in a confidence that they will not be disclosed. The communications between the WVDFI and Ocwen do indicate that the parties expected confidentiality. Ocwen asserts that the WVDFI has a strong confidentiality interest, and "neither Defendants nor WVDFI could have anticipated that these documents would be disclosed in *private civil litigation* (Dkt. #452 at p. 10) (emphasis added). However, the West Virginia Code explicitly states that information can be disclosed "in a civil enforcement action brought by the state or federal regulatory authorities." § 31A-2-4(b)(1). In the present case, Relators stand in the shoes of the state or federal regulatory authorities to which the statute expressly permits disclosure. *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person *and for the United States Government*.") (emphasis added); *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1154 (2nd Cir. 1993) ("[T]he *qui tam* relator *stands in the shoes of the government*, which is the real party in interest.") (emphasis added); *see also United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993).

Clearly, these communications originated with an understanding that they would not be

---

[3] Ocwen asserts that "[t]his motion requires a fresh examination of the *Finch* balancing test the Court applied in the June 26, 2015 Order because the West Virginia statute differs from the New York statute." (Dkt. #452 at p. 9). Ocwen asserts that a new examination is need as Relators have argued that "the Court has already held that any state regulatory agency's interest in confidentiality over its documents must yield to Relator's interest in discovery…." (Dkt. #452 at p. 9). The Court finds that Ocwen overstates Relators' contentions. After reviewing the related pleadings, it appears to the Court that Relators assert that the two states' statutes are similar, and therefore, the Court's reasoning would apply equally in both circumstances. However, because the Court's previous motion dealt with the New York statute, the Court will re-examine the *Finch* balancing test for the West Virginia statute.

7

disclosed under state law. However, there is no reason for WVDFI to assume that these document would be protected in an FCA action based on a federal question, especially given the broad range of permissible discovery. Additionally, as Relators point out, no federal court has extended West Virginia Code § 31A-2-4(b)(1) privilege to a federal question case, much less a FCA action. Accordingly, the Court finds that the document did not originate in a confidence that they would be not be disclosed pursuant to discovery in a FCA case.

The second factor requires that the Court determine whether confidentiality is essential to the full and satisfactory maintenance of the relation between the parties. Ocwen asserts that the "WVDFI's 1995 interpretive ruling that § 31A-2-4(b)(1) 'requires that *examination reports* of the WV Division of Banking be kept confidential.'" (Dkt. #452 at p. 8) (quoting Interpretive Ruling, 1995 WL 17804185, at *1). However, the Court finds that the WVDFI has not been impaired in its ability to require cooperation from entities notwithstanding that federal courts have not adopted the § 31A-2-4(b)(1) privilege as applicable or controlling in FCA cases.

The third factor for the Court to consider is whether the relation is one in which the opinion of the community ought to be sedulously fostered. Relators do not dispute that this factor weighs in favor of the WVDFI (Dkt. #434 at p 10). Therefore, the Court finds that this factor weighs slightly in favor of the WVDFI.

The fourth factor for the Court to consider is whether the injury that would inure to the relation by the disclosure of the communications is greater than the benefit gained for the correct disposal of the litigation. The WVDFI has explained that "'West Virginia law weighs and carefully balances' the competing interests in public disclosure and confidentiality in the regulatory process, and it struck that balance in favor of confidentiality in virtually all circumstances." (Dkt. #452 at p. 10). The Court finds that in light of its prior holdings on the

first two factors, this factor is a balancing test that weighs in favor of allowing disclosure for the benefit gained by seeking the truth in this FCA case. Therefore, the Court finds that the second *Finch* question should also be answered "no."

Therefore, the Court finds the following as to the WVDFI documents: (1) the documents between the WVDFI and Ocwen are not privileged; (2) Ocwen's internal documents discussing WVDFI findings, communications, or otherwise related to the WVDFI are not privileged; and (3) Relators may use the WVDFI-related documents at trial. Furthermore, the Court finds that any and all WVDFI-related documents that Ocwen is currently withholding must be produced to Relators.[4]

## CONCLUSION

It is therefore **ORDERED** that Relators' Emergency Motion for Privilege Determination Regarding West Virginia Banking Documents (Dkt. #434) is hereby **GRANTED**.

It is further **ORDERED** that (1) the documents between the WVDFI and Ocwen are not privileged; (2) Ocwen's internal documents discussing WVDFI findings, communications, or otherwise related to the WVDFI are not privileged; and (3) Relators may use the WVDFI-related documents at trial.

It is further **ORDERED** that any and all WVDFI-related documents that Ocwen is currently withholding must be produced to Relators within seven days of this Order.

---

[4] Ocwen asserts that "Relators unfairly suggest, without support, that Defendants browbeat the WVDFI into objecting to disclosure." (Dkt. #452 at p. 10). To the extent Relators claim that Ocwen acted inappropriately in its dealings with the WVDFI, after reviewing the relevant pleadings, the Court finds that Defendants acted appropriately in their communications with the WVDFI.

**SIGNED this 7th day of June, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE