# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher | § | |
| Individually, and Brian Bullock, and Brian | § | |
| Bullock, Individually | § | |
| | § | CIVIL ACTION NO 4:12-CV-543 |
| v. | § | Judge Mazzant |
| | § | |
| OCWEN LOAN SERVICING, LLC and | § | |
| OCWEN FINANCIAL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Relators Michael J. Fisher and Brian Bullock's Motion for Protective Order to Quash Notice of Deposition of Victor O'Laughlen (Dkt. #418). After reviewing the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

Victor O'Laughlen ("O'Laughlen") works for the expert consulting firm, Investors Consulting Group ("ICG"), a firm that Relators hired as experts in the above-referenced case. On July 7, 2015, O'Laughlen executed a declaration in support of Relator's motion to compel Ocwen to produce its loan files, which it explained the documentation that was missing from the fourteen sample loan files provided by Ocwen (Dkt. #453, Exhibit A). The affidavit stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…. (Dkt. #453, Exhibit A at p. 1). On July 13, 2015, O'Laughlen executed a declaration in support of Relators' reply to its motion to compel Ocwen to produce its loan files, which he explained that some documentation provided by Ocwen was "either not provided, or [was] inexplicably redacted and made incomprehensible." (Dkt. 453,

Exhibit B at p. 2). The affidavit stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…. (Dkt. #453, Exhibit B at p. 1).

On December 21, 2015, O'Laughlen provided another declaration in support of Relators' motion for leave to file an amended complaint, in which he discussed his knowledge of the importance of the Servicemembers Civil Relief Act (the "SRCA") and how Ocwen's missing documentation had implications under the SRCA (Dkt. #418 at p. 2, *see* Dkt. #453, Exhibit C). The affidavit stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…. (Dkt. #453, Exhibit C at p. 1). On December 29, 2015, O'Laughlen submitted another declaration, which supported Relators' motion for partial summary judgment, and discussed Ocwen's violations of various law and regulations (Dkt. #418 at pp. 2-3, *see* Dkt. #453, Exhibit D). The affidavit stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…. (Dkt. #453, Exhibit D at p. 1).[1] Also, on December 29, 2015, the Court entered an Amended Scheduling Order, which laid about the following deadlines: (1) Relators' disclosure of expert testimony was set for March 4, 2016; (2) Defendants' disclosure of expert testimony was set for April 19, 2016; (3) all discovery (except expert discovery) was to be commenced by February 29, 2016; and (4) all expert discovery was to be commenced by April 27, 2016 (Dkt. #297).

---

[1] In its May 24, 2016, the Court struck O'Laughlen's declaration as conclusory. In their response to the present motion, Defendants state that "the Court took up Relators' invitation in their Opposition…to treat O'Laughlen's declaration as expert testimony…." (Dkt. #453 at p. 3). The Court based its order on the case law provided by *both* parties. Defendants should note that they also referred to O'Laughlen's declaration as "*an expert declaration*[.]" (Dkt. #327 at p. 6) (emphasis added). Additionally, Defendants' analysis in their motion to strike included references to improper expert testimony. *See Snap-Drape, Inc. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996) (Rule 704(a) "does not allow an expert to render conclusions of law."). Therefore, the Court based its analysis on the representations of both parties. Its decision to strike O'Laughlen's declaration was based on it containing conclusory statements; the Court did not make a determination as to O'Laughlen's qualifications as an expert witness, as was stated within its Order (*See* Dkt. #438 at p. 15 n. 2).

On January 29, 2016, O'Laughlen filed another declaration in support of Relators' response to Defendants' summary judgment motion, in which he consistently referenced the documentation issues present in Ocwen's production of loan files (Dkt. #418 at p. 3; *see* Dkt. #340, Exhibit 12). The affidavit stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…. (Dkt. #340, Exhibit 12 at p. 1).

On February 5, 2016, Relators referenced O'Laughlen in their Second Supplemental Rule 26(a) Initial Disclosures, as a person with knowledge (Dkt. #453, Exhibit E at p. 32). On February 16, 2016, Relators referenced O'Laughlen again in their Third Supplemental Rule 26(a) Initial Disclosures, as a person with knowledge (Dkt. #453, Exhibit F at p. 32). Specifically, Relators disclosed that O'Laughlen possessed the following relevant information:

> Mr. O'Laughlen has knowledge about (1) the laws and regulations that govern mortgage servicing; (2) the general servicing industry practice and the standard of care in the industry; (3) MHA programs and the HAMP program (along with their guidelines, procedures, requirements, and practices); (4) the MHA auditing practices and limitations including scope of review, budgetary limitations, and other effects of limited budgets and resources; (5) Ocwen and Homeward's historical mortgage servicing practices and audits by MHA; and (6) the importance of annual certifications and MHA's reliance on self-reporting by the servicers.

(Dkt. #453, Exhibit F at p. 32).

On March 3, 2016, the Court entered an Amended Scheduling Order, which contained the following deadlines: (1) Relators' disclosure of expert testimony was set for March 18, 2016; (2) Defendants' disclosure of expert testimony was set for May 20, 2016; and (3) the expert discovery deadline was set for May 31, 2016 (Dkt. #389).

On March 18, 2016, Relators' expert, David Pawlowski ("Pawlowski"), served his expert report (Dkt. #453, Exhibit G). Pawlowski also works for ICG, which is O'Laughlen's employer,

and the company that was retained by Relators' counsel (*see* Dkt. #453 at p. 5). Specifically, in Pawlowski's report he states,

> [t]he ICG loan review project was managed by Victor O'Laughlen, along with James Heslin. Mr. O'Laughlen has over thirty years of experience in mortgage finance and compliance, and as a financial services industry executive….Recently, he led the start-up of a de novo regulatory compliance organization at Freddie Mac (as Agent for the Department of the Treasury), known as Making Home Affordable-Compliance (MHA-C). He was subsequently charged with monitoring compliance activities of the nation's largest mortgage servicers.

(Dkt. 453, Exhibit G at p. 32).

On May 6, 2016, Relators filed a motion seeking relief under Federal Rule of Civil Procedure 37 for Ocwen's alleged failure to provide complete loan files, in violation of the Court's orders and Relators' request (*See* Dkt. #400). O'Laughlen submitted another declaration in support of Relators' motion regarding Ocwen's "faulty" document production (Dkt. #418 at p. 3; *see* Dkt. #453, Exhibit H). The declaration stated that O'Laughlen "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…." (Dkt. #453, Exhibit H at p. 1).

On May 11, 2016, Ocwen served Relators with a subpoena and notice of deposition directed to O'Laughlen, and requiring him to appear for deposition and to produce documents on May 20, 2016 in New York, New York (Dkt. #418 at p. 4). The subpoena requested documents and testimony regarding every declaration that O'Laughlen submitted in the case, not just O'Laughlen's latest declaration regarding the motion for sanctions (Dkt. #418 at p. 4; Dkt. #418, Exhibit A). Prior to requesting O'Laughlen's deposition on May 11, 2016, Ocwen had not requested to take his deposition at other time, or at any time prior to the close of fact discovery. On May 18, 2016, Ocwen took the deposition of Pawlowski regarding O'Laughlen's declaration and the Rule 37 motion (Dkt. #418 at p. 4).

4

On May 20, 2016, Relators filed their Motion for Protective Order to Quash Notice of Deposition of Victor O'Laughlen (Dkt. #418). On May 23, 2016, the Court entered an order stating that it would take up the motion on an expedited basis, and set up a briefing schedule for the parties (Dkt. #423). On May 27, 2016, Defendants filed their response (Dkt. #453). On May 31, 2016, Relators filed their reply (Dkt. #461). On June 1, 2016, Defendants filed their sur-reply (Dkt. #472).

## LEGAL STANDARD

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). However, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The "[c]ontrol of discovery is committed to the sound discretion of the trial court…" *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987) (citing *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986)).

Likewise, "[t]he decision to enter a protective order is within the Court's discretion." *Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *2 (E.D. La. May 2, 2014) (citing *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995)). Federal Rule of Civil Procedure 26(c) states:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken…The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…

FED. R. CIV. P. 26(c). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978)). "A party may demonstrate good cause, within the meaning of [Rule] 26(c), to prohibit a deposition by showing it would violate the deadline for discovery." *Sithon Maritime Co. v. Holiday Mansion*, No. Civ. A. 96-2262-KHV, 1999 WL 66216, at *1 (D. Kan. Feb. 8, 1999); *see also Grey v. Dall. Ind. School Dist.*, 265 F. App'x 342, 347-48 (5th Cir. 2008) (upholding district court's grant of protective order to quash depositions that were untimely noticed). Additionally, discovery may be limited if (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source or (2) the party seeking discovery has had ample opportunity to obtain the information sought. FED. R. CIV. P. 26(b)(2)(c); *see also Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 209 (5th Cir. 1992) (holding that the district court did not abuse its discretion when it denied plaintiff's request to conduct even potentially dispositve discovery, "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [plaintiff's] failure to request an inspection earlier.").

Additionally, under Federal Rule of Civil Procedure 45(d)(3)(A), a court is required to quash or modify a subpoena that: (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of a privileged or protected matter; or (4) subjects a person to undue burden. *See also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-18 (5th Cir. 2004). The moving party has the burden of proof to demonstrate "'that compliance with the subpoena

would be 'unreasonable and oppressive.'" *Id.* at 818. The Court must consider the following factors to determine whether the subpoena presents an undue burden: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the undue burden imposed." *Id.* "[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* "A court may find that a subpoena present an undue burden when the subpoena is facially overbroad." *Id.* The Eastern District of Texas has also considered "whether the request is cumulative and duplicative, the time and expense required to comply with the subpoena (relative to the responder's resources), and the importance of the issues at stake in the litigation." *Carroll v. Variety Children's Hosp.*, No. 4:07-MC-033, 2007 WL 2446553, at *1 (E.D. Tex. Aug. 23, 2007) (quoting *Linder v. Calero-Portacarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998)).

## ANALYSIS

Relators request that the Court grant a protective order to quash the subpoena and notice of deposition issued for the deposition of O'Laughlen (Dkt. #418 at p. 10). Relators also request that the Court quash Ocwen's subpoena *duces tecum* to O'Laughlen and find that he need not produce any documents in response to Ocwen's requests (Dkt. #418 at p. 10). Alternatively, Relators request that the Court should limit the deposition to one hour to the subject matter of O'Laughlen's declaration supporting the Rule 37 motion and the deposition should take place in Washington, D.C. or telephonically (Dkt. #418 at p. 10 n. 5).

First, Relators argue that the Court should prohibit Ocwen from deposing O'Laughlen because the subpoena and notice of deposition were served after the close of fact discovery (Dkt.

#418 at p. 6). Specifically, Relators assert that "Ocwen could have noticed and deposed O'Laughlen prior to the close of fact discovery but chose not to do so." (Dkt. #418 at p. 6). Therefore, Relators assert that "[t]he Court should…prohibit Ocwen's attempt to take a deposition that was…untimely noticed." (Dkt. #418 at p. 6).

Defendants assert that they believed O'Laughlen was an expert witness, and "[u]ntil [they] sought expert discovery from O'Laughlen, Relators never suggested he was anything but an expert." (Dkt. #453 at p. 7). The Court agrees. O'Laughlen executed five declarations on behalf of Relators, the latest on May 4, 2016, in support of Relators' motion for sanctions, and he represented that he "work[ed] for expert consulting firm Investors Consulting Group…that has been retained by counsel for Relators…." (*See* Dkt. #453, Exhibits A, B, C, D, H). Additionally, Pawlowski's report states that "[t]he ICG loan review project was managed by Victor O'Laughlen, along with James Heslin." (Dkt. #453, Exhibit G at p. 32). Although Relators did not list O'Laughlen as an expert witness, he was included as a "person with knowledge," and it appears that Relators have utilized him, until recently, in an expert capacity. Although Defendants could have subpoenaed O'Laughlen earlier, but because they believed O'Laughlen was an expert, the Court finds that they complied with the Court-ordered expert discovery deadline when they subpoenaed O'Laughlen for his deposition.

Additionally, Relators assert that good cause does not exist to entitle Ocwen to the discovery (Dkt. #461 at p. 4). Specifically, Relators assert that "even if [they] had intended to use [O'Laughlen] as an expert…they were entitled to de-designate him at any time, and at that point, Ocwen would not be entitled to depose him." (Dkt. #461 at pp. 4-5). For its proposition, Relators cite to *Ross v. Burlington Northern Railroad Co.*, 136 F.R.D. 638, 639 (N.D. Ill. 1991), in which the court denied defendant's attempt to depose a de-designated expert witness because

8

"[s]ince plaintiff changed his mind before any expert testimony was given [], the witness never actually acted as a testifying expert witness." However, in the present case, O'Laughlen has executed five declarations on behalf of Relators in which he cites various propositions in support of Relators' contentions (*See* Dkt. #453, Exhibits A, B, C, D, H). Although Relators now contend that O'Laughlen will only be utilized as a fact witness, Defendants should be given the opportunity to investigate his claims. Therefore, the Court finds that Defendants should be allowed to take O'Laughlen's deposition.

Additionally, Relators assert that deposing O'Laughlen is duplicative of other discovery that Ocwen has already obtained (Dkt. #418 at pp. 7-9). Specifically, Relators assert that "[they] allowed Ocwen to depose Relators' expert, David Pawlowski, on May 18, 2016, for approximately two hours on the issues of document production, document retention, and the contents of Mr. O'Laughlen's fifth declaration." (Dkt. #418 at p. 8; *see* Dkt. #418, Exhibit E). However, the Court agrees with Defendants that "[n]o one else can supply what Ocwen seeks from O'Laughlen—his testimony concerning the facts he knows." (Dkt. #453 at p. 9).

During Pawlowski's deposition, Defendants questioned him about O'Laughlen's declaration, and Pawlowski answered:

> Q: [Questioning Pawlowski about Victor O'Laughlen's declaration] Is there something in here that didn't tie out or correspond to numbers that you had previously claimed in the case?
> A: I'd have to look at the information that this would go to. I can't answer the question just from the face of the document.
> Q: Okay.
> What would you need to do to figure it out?
> A: I need a copy of my original expert report.

(Dkt. #453, Exhibit L at 648:16-649:2).[2] After reviewing the relevant pleadings, the Court finds

---

[2] Relators assert that O'Laughen's deposition is also duplicative because Ocwen knows what documents it does and does not have (Dkt. #418 at pp. 7-8). However, after reviewing the notice and subpoena supplied by Ocwen, the Court finds that Ocwen is requesting to take O'Laughlen's deposition on more than just "Ocwen's missing loan

9

that Ocwen should have the opportunity to take O'Laughlen's deposition to determine his personal knowledge as it relates to the declarations he has submitted in the present case as was noticed by Ocwen on May 11, 2016 (*See* Dkt. #453, Exhibit I).

Alternatively, Relators request the following:

If the Court is inclined to allow the deposition at all, the deposition should be limited to one hour, and to the subject matter of Mr. O'Laughlen's declaration supporting the Rule 37 motion. Additionally, the deposition should occur in the Washington, D.C. area, where Mr. O'Laughlen resides, not New York as noticed. To avoid further waste of the parties' resources, Relators suggest the deposition be taken, if at all, telephonically. The subpoena for documents should be denied completely.

(Dkt. #418 at p. 10 n. 5). The Court will allow the deposition to take place in the Washington, D.C. area, as Defendants noticed the deposition to take place in an area more than 100 miles of where O'Laughlen resides or is employed, and he is not a party to this lawsuit. *See* FED. R. EVID. 45(c). The Court will also limit the subject matter to O'Laughlen declaration supporting the Rule 37 motion. Ocwen had the opportunity to depose O'Laughlen regarding his earlier declarations prior to the close of fact discovery, but chose not to do so. Although Ocwen believed O'Laughlen would be utilized as an expert by Relators, they should not now have a chance to go back and depose O'Laughlen on material, for which they chose not to depose him at an earlier date. However, the rest of the deposition should be conducted in accordance with the Defendants' notice and subpoena. Additionally, the Court will not quash Defendants' subpoena for O'Laughlen to produce documents at the deposition.

## CONCLUSION

It is therefore **ORDERED** that Relators' Motion for Protective Order to Quash Notice of Deposition of Victor O'Laughlen (Dkt. #418) is hereby **GRANTED IN PART AND DENIED**

---

files[,]" and as such, O'Laughlen would be "[t]he party most knowledgable" with the information that he supplied within his declarations. (*See* Dkt. #418 at p. 7).

**IN PART**.

It is further **ORDERED** that Defendants should provide a new notice of deposition and subpoena in accordance with the Court's Order by no later than seven days of this Order.

**SIGNED this 7th day of June, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE