# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *Ex rel.,* Michael J. Fisher, and Michael Fisher | § | |
| Individually, and Brian Bullock, and Brian | § | |
| Bullock, Individually | § | |
| | § | CIVIL ACTION NO 4:12-CV-543 |
| v. | § | Judge Mazzant |
| | § | |
| OCWEN LOAN SERVICING, LLC and | § | |
| OCWEN FINANCIAL CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Relators Michael J. Fisher and Brian Bullock's Motion for

Relief Under Federal Rule of Civil Procedure 37 Against Defendants Ocwen Loan Servicing,

LLC, and Ocwen Financial Corporation (Dkt. #400).  After reviewing the relevant pleadings, the

Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

The above-referenced case is a *qui tam* action under the False Claims Act (the "FCA"), in

which the United States has declined to intervene.  Relators assert their FCA claims based upon

false certifications of compliance allegedly made as part of the Treasury Department's Home

Affordable Modification Program ("HAMP").   In particular, Relators allege that the loan

servicing, modifications, and loss mitigation practices of Defendants Ocwen Loan Servicing,

LLC ("OLS") and Ocwen Financial Corporation ("OFC," collectively with OLS, "Ocwen" or

"Defendants") failed to comply with federal and state law, in violation of Ocwen's certifications

of compliance and applicable servicing laws.  For purposes of the present motion, Relators allege

that Ocwen has either withheld relevant documents in violation of the Court's orders or failed to

create and maintain documents in violation of federal law (Dkt. #400 at p. 1).

Relators first requested production of loan file documents from Ocwen on January 15, 2015 (Dkt. #400 at p. 3; *see* Dkt. #400, Exhibit F at pp. 14-15).  On June 10, 2015, Ocwen produced the first "sample" of only fourteen loan files, which were heavily redacted and were missing numerous documents (Dkt. #400 at p. 3).

On June 25, 2015, Relators filed their Emergency Motion to Compel 30(b)(6) Testimony and the Predicate Document Production (Dkt. #175).  On July 6, 2015, the Court granted Relators' Emergency Motion to Compel, and it ordered Ocwen to produce "all documents reasonably bearing on any claim or defense" within thirty days (Dkt. #188).  The Court also stated that "[t]he pace of discovery must increase and the Court enters this Order to accomplish that goal."  (Dkt. #188 at p. 2).

On July 7, 2015, Relators filed their Emergency Motion to Compel Defendants to Produce Loan Files, in which they specifically sought requested loan files (Dkt. #193).  On July 17, 2015, the Court granted Relators' Emergency Motion to Compel, and ordered Ocwen to provide data files within twenty days containing "basic information, including loan numbers" for all loans Ocwen has serviced since 2009, allowed Relators to select and request a sample of up to 3,000 "complete loan files," and ordered Ocwen to produce the complete loan files within twenty days of Relators' request (Dkt. #215 at pp. 2-3).  Once again, the Court stated that "[t]he pace of discovery must increase and the Court enters this Order to accomplish this goal."  (Dkt. #215 at p. 2).

On August 3, 2015, Defendants filed an Emergency Motion to Extend Document Production and Rule 30(b)(6) Deposition Deadlines, and requested that the Court extend the deadline from its July 6, 2015 and July 17, 2015 Orders by 30 days to September 4, 2015, and requested an extension of the 30(b)(6) deadline to September 30, 2015 (Dkt. 218 at p. 7).  On

August 5, 2015, the Court granted in part and denied in part Defendants' emergency motion, and extended both deadlines by twenty-one days (Dkt. #223 at p. 2).

On August 6, 2015, Ocwen provided responsive data files for almost four million loans serviced by Ocwen and Homeward since 2009 (Dkt. #412 at p. 3; *see* Dkt. #232, Exhibit 2 at ¶ 8). Relators asserted that the data files were missing fields, which they needed to select a sample of loans for expert analysis (Dkt. #412 at p. 3). Ocwen worked with Relators, and produced 132 spreadsheets containing more than 2.5 billion cells of loan-related data (Dkt. #412 at p. 3).

On August 23, 2015, Defendants filed an Emergency Motion to Extend the Document Production Deadlines, in which it requested that the Court grant another three week extension to comply with the Court's July orders (Dkt. #232 at p. 7). On September 2, 2015, Relators agreed to an extension of the deadline within their sur-reply (*See* Dkt. #243). On September 2, 2015, the Court held a hearing on this issue, and following the hearing, the Court denied the motion as moot (Dkt. #244).

On September 8, 2015, the Court entered an Amended Scheduling Order, which provided for the following dates: (1) the deadline for complete production under the July 6 Order was extended to September 23, 2015; and (2) the 30(b)(6) deposition period was extended to October 16-30, 2015 (Dkt. #246).

On October 8, 2015, Relators made a request for 250 Ocwen loan files under the Court's order (Dkt. #412 at p. 3, *see* Dkt. #412, Exhibit C). It then followed-up with additional requests for 695 loan files between October 13 and October 23, 2015 (Dkt. #412 at p. 3; *see* Dkt. #412, Exhibit D).

On October 19, 2015, the Court held a hearing, in which the parties discussed the production of "complete" loan files. During the hearing, Ocwen outlined five categories of

information it would include:

1. All borrower correspondence and agreements and related documents that are imaged on Ocwen's systems of record—Vault, ResWare (which contains images of Ocwen documents concerning foreclosures and bankruptcies), and Mail Merge files.
2. The entire comment log for each loan from Ocwen's system of record, RealServicing.
3. The complete transaction history for each loan from RealServicing.
4. The complete complaint file for each OLS loan.
5. Income worksheets for each OLS loan, as stored in the Stage Five system, a data warehouse environment from which Real Servicing queries and pulls loan data.

(Dkt. #412 at p. 4). Ocwen also stated that it would produce capitalization data (Dkt. #412 at p. 4). Following the parties' argument, the Court stated:

> THE COURT: Well, all I can say is the Court entered an order that requires the complete files to be produced within 20 days, so when you give them this case information—and I don't know what else you want me to do other than say that I stand by my order, and if the complete loan files aren't produced, and that includes the capitalization, then I'll take appropriate sanctions at the appropriate time.

(Dkt. #400, Exhibit G at 20:14-20).

On October 23, 2015, Defendants filed their Unopposed Motion to Extend Document Production Deadlines, in which they requested an extension of the Amended Scheduling Order deadlines for producing document to November 9, 2015, "except for the e-mails of Nicole Darden discovered [on October 22, 2015]," for which Defendants requested an extension of November 16, 2015 (Dkt. #256 at p. 7). On October 26, 2015, the Court granted Defendants' motion (Dkt. #258).

Ocwen asserts that they produced the loan files, which totaled more than 250,000 documents, within twenty days of each request (Dkt. #412 at p. 4; *see* Dkt. #412, Exhibit F). It produced the loan file documents in TIFF format, as they were kept in the ordinary course of business and extracted from Ocwen's systems (Dkt. #412 at p. 4). Ocwen also tasked a team of

employees to conduct a manual QC using RealServicing comment logs and transaction histories to identify documents that should have been in each loan's image files and to the extent any of those documents were missing, attempt to locate them (Dkt. #412 at p. 5). Ocwen asserts that the QC process yielded approximately 8,600 documents, or three percent of the loan file production, that Owen produced between December 8, 2015, and January 8, 2016 (Dkt. #412 at p. 6; *see* Dkt. #412, Exhibit H).

On December 30, 2015, Relators demanded that Ocwen commit by January 5, 2016, that it would complete its supplemental loan file production by January 8, 2016 (Dkt. #412 at p. 5; *see* Dkt. #412, Exhibit I). Ocwen confirmed by e-mail on January 8, 2016, that the QC process had concluded and production was complete (Dkt. #412 at p. 5; Dkt. #412, Exhibits J, K).

On March 18, 2016, Ocwen received the expert report of Relators' expert witness, David Pawlowski ("Pawlowski") (Dkt. #412 at p. 7). Ocwen's counsel tasked its experts at CrossCheck with analyzing Pawlowski's findings, and on May 2, 2016, CrossCheck completed its preliminary analysis (Dkt. #412 at p. 7). In analyzing Pawlowski's findings, CrossCheck determined that comment codes and payment history data from FiServ was missing, and determined that it affected the comment codes and payment history for the period from February 15, 2013, through September 30, 2014 (Dkt. #412 at p. 7). Ocwen (1) informed Realtors that same day that Ocwen would be producing additional documents that following week; and (2) began collecting the data (Dkt. #412 at p. 7). On May 13, 2016, Ocwen produced all FiServ data, including data from before the February 2013 Ocwen acquisition, for the loans Relators requested (Dkt. #412 at p. 7; *see* Dkt. #412, Exhibit L).

On May 6, 2016, Relators filed their Motion for Relief under Federal Rule of Civil Procedure 37 Against Defendants Ocwen Loan Servicing, LLC, and Ocwen Financial

Corporation (Dkt. #400). On May 12, 2016, the Court entered an order stating that it would take

up the motion on an expedited basis, and entered an expedited briefing schedule (Dkt. #409). On

May 17, 2016, Defendants filed their response (Dkt. #412). On May 20, 2016, Relators filed

their reply (Dkt. #419). On May 23, 2016, Defendants filed their sur-reply (Dkt. #427). On May

25, 2016, Relators filed a response to Defendants' sur-reply (Dkt. #441). On May 31, 2016,

Defendants filed their reply to their sur-reply (Dkt. #462).

## LEGAL STANDARD

"Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with

discovery orders." *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL

2683184, at *3 (E.D. Tex. July 11, 2011); *see Chilcutt v. United States*, 4 F.3d 1313, 1319-20

(5th Cir. 1993). Rule 37(b)(2) states, in relevant part:

> If a party or a party's officer, director, or managing agent—or a witness
> designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or
> permit discovery, including an order under Rule 26(f), 35, or 37(a), the court
> where the action is pending may issue further just orders. They may include the
> following: (i) directing that the matters embraced in the order or other designated
> facts be taken as established for purposes of the action, as the prevailing party
> claims; (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated matters in
> evidence; (iii) striking pleadings in whole or in part; (iv) staying further
> proceedings until the order is obeyed; (v) dismissing action or proceeding in
> whole or in part; (vi) rending default judgment against the disobedient party; (vii)
> treating as contempt of court the failure to obey any order except an order to
> submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A). "The following factors should guide a districts court's exercise of

its discretion to impose sanctions for a discovery violation: '(1) the reasons why disclosure was

not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such

prejudice with a continuance of the trial; and (4) any other relevant circumstances.'" *United*

*States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) (quoting *United States v. Garrett*, 238 F.3d

293, 298 (5th Cir. 2000)); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004). "Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders." *Dvorin*, 817 F.3d at 453. The district court is given broad discretion in conducting this "fact-intensive inquiry." *Id.* (citing *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). However, the court's discretion is not "unlimited." *Chilcutt*, 4 F.3d at 1320 (citing *Marshall v. Segona*, 621 F.2d 763, 767 (5th Cir. 1980); *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976)).

The Supreme Court has stated that the district court must be guided by the following considerations when determining whether to impose sanctions under Rule 37(b): (1) the sanction must be just; and (2) it must "specifically relate[] to the particular 'claim' which was at issue in the order to provide discovery." *Chilcutt*, 4 F.3d at 1320-21 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 697 (1982)); *Compaq Comput. Co. v. Ergonome, Inc.*, 387 F.3d 403, 413-14 (5th Cir. 2004). Extreme sanctions are "'remed[ies] of last resort' which should be applied only in extreme circumstances." *Butler v. Cloud*, 104 F. App'x 373, 374 (5th Cir. 2004) (per curiam) (quoting *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985)). The Fifth Circuit has stated that extreme sanctions, such as dismissing a claim or default judgment, are proper when the discovery misconduct resulted from willfulness or bad faith, when the deterrent value of Rule 37 could not be substantially achieved by the use of less drastic sanctions, or when the discovery misconduct was plainly attributable to an attorney rather than a "blameless client," or because of "confusion or a sincere misunderstanding of the court's order." *Batson*, 765 F.2d at 514.

## ANALYSIS

Relators request that the Court grant the following relief pursuant to Federal Rule of Civil

Procedure 37(b)(2)(A) and 37(c)(1):

A.  The Court should bar Ocwen and its expert from using or relying on any documents or evidence relating to borrower loan files that Ocwen did not produce on or before the Court's deadline of November 11, 2015, including electronic information accessed through Ocwen's or any Ocwen-related vendor's systems.

B.  The jury should be instructed that it may presume that Ocwen failed to comply with its record-keeping obligations, and that the missing documents would have demonstrated Ocwen's failure to comply with its loan servicing requirements under the law.

C.  As an alternative to a jury instruction, the Court should find (and should so inform the jury) that Ocwen has violated its record-keeping obligation under federal law, and that the missing documents would have shown Ocwen's failure to comply with servicing requirements.

D.  In addition, the Court should order Ocwen to pay Relators the reasonable attorney's fees, expert witness fees, and other expenses and costs resulting from Ocwen's failure to comply with the Court's orders and with its discovery obligations.

(Dkt. #400 at pp. 2-3). Ocwen assert that they "believed in good faith that [they] had produced complete loan files as stored in its systems of record in the ordinary course of business," and their failure to include some historical comment logs and transaction histories from FiServ was inadvertent (Dkt. #412 at p. 1). Therefore, Ocwen argues that the Court should not grant sanctions because they did not act "willful[ly] or [in] bad faith" and "Relators have not been prejudiced." (Dkt. #412 at p. 2).

Relators assert that "[p]reclusion of late or undisclosed evidence is well within the Court's discretion under Rule 37(b), in light of Ocwen's failure to comply with the Court's previous orders…." (Dkt. #400 at p. 10). Relators assert that Ocwen was ordered to complete their production of loan files by November 11, 2015, and Ocwen has offered no substantial justification for its failure to do so (Dkt. #400 at p. 10). Additionally, Relators assert that Ocwen's production has been "disorganized, untimely, and incomplete[,]" which caused Relators to incur considerable amount of work and expense (Dkt. #400 at p. 10). Defendants assert that if Relators were prejudiced, they should have raised this issue when Ocwen had time to address it,

instead of "filing an eleventh-hour motion[.]" (Dkt. #412 at p. 14). Additionally, Ocwen asserts that they produced the files to Relators as they were maintained in the ordinary course of business, which Relators were aware (Dkt. #412 at p. 14). Defendants also assert that the FiServ data should not be precluded (Dkt. #412 at p. 14). Alternatively, Defendants assert that "Relators should be afforded more time to supplement their expert reports with additional analysis relating to the FiServ data…." (Dkt. #412 at p. 15).

After reviewing the relevant pleadings, the Court finds that Ocwen should be precluded from using the FiServ data at trial. The Court finds that Ocwen failed to obey the Court's orders to disclose to Relators the complete loans files as was ordered within the Court's July 6, 2015 Order and July 17, 2015 Order. Additionally, this failure was not justified. While it is possible that Ocwen did not know that the FiServ data existed until its experts investigated Pawlowski's findings, the Court finds that it was Ocwen's duty to disclose complete loan files to Relators, which included the FiServ data.

The Court finds that this case is similar to the case cited by Relators, *Personal Audio, LLC v. Apple, Inc.*, Civ. A. No. 9:09CV111, 2011 WL 6148587 (E.D. Tex. June 16, 2011). In *Personal Audio*, the district court found that sanctions were necessary for late-produced documents and MP3 players, as the defendant did not demonstrate that its failure to produce the evidence was substantially justified or harmless. 2011 WL 6148587, at *1. The district court found that the plaintiff was free to use the newly-produced evidence at trial; however, the defendant could not use the evidence, except to the extent that the plaintiff used it, and then the defendant could utilize the evidence for cross-examination of the witness. 2011 WL 6148587, at *2.

Given the history of this case, the Court finds that this is an appropriate sanction. The

9

Court has addressed the issue of Ocwen's production of complete loan files on numerous occasions, as set forth above. Specifically, in its hearing on the loan files on October 19, 2015, the Court addressed the issue of production of complete loans files, and stated:

> [T]he Court entered an order that requires the complete files to be produced within 20 days, so when [Relators] give [Ocwen] this case information – and I don't know what else you want me to do other than say that I stand by my order, and if the complete loan files aren't produced, and that includes the capitalization, then I'll take appropriate sanctions at the appropriate time.

(Dkt. #400, Exhibit G at 20:14-20). Ocwen has been aware that they were required to produce complete loan files to Relators since at a minimum July 2015. Although they assert that they were not aware of the "historical comment logs and transaction histories from….FiServ[,]" the Court finds that Ocwen had a duty under the Federal Rules of Civil Procedure and the Local Rules to disclose relevant information, and has not demonstrated that its failure to comply was substantially justified.

Ocwen asserts that, alternatively, the Court should afford Relators more time to supplement their expert reports with additional analysis relating to the FiServ data. Relators assert that they, and their experts, do not have sufficient time to address the newly produced data (*See* Dkt. #419 at pp. 5-6). The Court agrees. The parties are less than one month before the trial is scheduled to begin in this case. Relators do not have a sufficient amount of time to adequately address the FiServ data, which Ocwen just provided, and thus, would be prejudiced if the data was allowed to be used at trial.

However, the Court finds that only the recently produced FiServ data should be precluded at trial. Although there is evidence that Ocwen produced documents after the November 11, 2015 deadline, it appears that, in some instances, if not all, Relators were aware of the late production (*See* Dkt. #412, Exhibits I, J, K). The Court agrees with Ocwen that if Relators were

prejudiced by other instances of late-production, Relators should have requested relief at that time.[1]

Therefore, the Court finds that the following sanctions are appropriate:

(1) All of the newly-produced FiServ data is admissible for Relators' use at trial; and

(2) Ocwen may not use or introduce the newly-produced FiServ data as evidence at trial; Ocwen's experts shall not rely on or discuss any of the newly-produced FiServ data. Ocwen may, however, cross-examine Relators' witnesses about the FiServ data, if introduced by Relators.[2]

Relators also assert that the Court should order Ocwen to pay Relators' fees, expenses, and costs (Dkt. #400 at p. 15). Defendants assert that they are not responsible for Relators' costs and fees (Dkt. #412 at p. 15). Alternatively, Defendants assert that the Court "should address the effects of Ocwen's error[, and] Relators should be afforded more time to supplement their expert reports with additional analysis (Dkt. #412 at p. 15). For reasons stated above, the Court finds that there is not sufficient time before trial for Relators to supplement their expert reports. The Court finds that Ocwen should pay Relators' fees, expenses, and costs, to the extent that Relators have incurred costs regarding the newly-produced FiServ data only.[3]

---

[1] In their sur-reply, Ocwen asserts that "Relators have repeatedly failed to meet their expert discovery deadlines, even producing expert reliance materials *after* an expert's deposition." (Dkt. #427 at p. 6) (emphasis in original). The Court finds that this is not relevant to the issue of the present motion—whether sanctions should be imposed against Ocwen based upon their failure to comply with the Court's order. Therefore, the Court will not consider this evidence.

[2] Relators also assert that the Court should instruct the jury that it may presume Ocwen violated its record-keeping obligations and that the missing documents would show Ocwen's non-compliance, or alternatively, the Court should find that Ocwen failed to comply with MHA requirements (Dkt. #400 at pp. 11, 14). The Court finds that these requests are not appropriate at this time. However, the Court will take these issues under advisement, and hold these issues for determination during trial.

[3] In their reply, Relators assert that Ocwen's "experts should not be allowed to rebut the conclusions by Relators' experts on missing documents and violations related thereto—*or they should be barred from testifying at all*." (Dkt. #419 at p. 7). To the extent that Relators are asserting a new request for relief, the Court will not address that claim, as it was not properly raised. *See* Local Rule CV-7; *see also Chambers v. Stalder*, 62 F.3d 396, 1995 WL 449670, at *1 n. 3 (5th Cir. July 14, 1995) (declining to address new claim for relief because "any issue raised for the first time in the reply brief is waived.").

**CONCLUSION**

It is therefore **ORDERED** that Relators Michael J. Fisher and Brian Bullock's Motion for Relief Under Federal Rule of Civil Procedure 37 Against Defendants Ocwen Loan Servicing, LLC, and Ocwen Financial Corporation (Dkt. #400) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that:

(1) All of the newly-produced FiServ data is admissible for Relators' use at trial;

(2) Ocwen may not use or introduce the newly-produced FiServ data as evidence at trial; Ocwen's experts shall not rely on or discuss any of the newly-produced FiServ data. Ocwen may, however, cross-examine Relators' witnesses about the FiServ data, if introduced by Relators.

(3) Ocwen shall pay Relators' fees, costs, and expenses incurred by the newly-produced FiServ data.

**SIGNED this 8th day of June, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE